**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | |
| OAK STREET HEALTH, INC., MICHAEL PYKOSZ, and TIMOTHY COOK, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Reginald T. Allison ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Oak Street Health, Inc. ("Oak Street" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Oak Street; and (c) review of other publicly available information concerning Oak Street.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Oak Street securities between August 6 2020, and November 8, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Oak Street purportedly operates primary care centers within the United States. Oak Street claims that it "engages Medicare eligible patients through the use of an innovative community outreach approach." The Company claims it contracts with health plans to generate medical costs savings and realize a return on its investment in primary care. As of December 31, 2020, the Oak Street claims to have operated 79 centers in 16 markets across 11 states, which provided care for approximately 97,000 patients.

3. On November 8, 2021, Oak Street filed its third quarter quarterly report with the SEC on Form 10-Q for the quarter ended September 30, 2021. Therein, the Company, in relevant part, disclosed that on November 1, 2021 the Company received a civil investigative demand ("CID") from the United States Department of Justice ("DOJ"). According to the CID, the DOJ

was is investigating whether the Company violated the False Claims Act. The CID also requests documents and information related to the Oak Street's relationships with "third-party marketing agents" and Oak Street's "provision of free transportation to federal health care beneficiaries."

4.      On this news, the Company's share price fell $9.75, or more than 20%, to close at $37.14 per share on November 9, 2021, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Oak Street maintained relationships with third-party marketing agents likely to provoke law enforcement scrutiny; (2) that Oak Street was providing free transportation to federal health care beneficiaries in a manner that would provoke law enforcement scrutiny; (3) that these activities may be violations of the False Claims Act; (4) that, as such, Oak Street was at heightened risk of investigation by the DOJ and/or other federal law enforcement agencies; (5) that, as a result, Oak Street was subject to adverse impacts related to defense and settlement costs and diversion of management resources; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Reginald T. Allison, as set forth in the accompanying certification, incorporated by reference herein, purchased Oak Street securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Oak Street is incorporated under the laws of Delaware with its principal executive offices located in Chicago, Illinois. Oak Street's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "OSH."

13.     Defendant Michael Pykosz ("Pykosz") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Timothy Cook ("Cook") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Pykosz and Cook (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Oak Street purportedly operates primary care centers within the United States. Oak Street claims that it "engages Medicare eligible patients through the use of an innovative community outreach approach." The Company claims it contracts with health plans to generate medical costs savings and realize a return on its investment in primary care. As of December 31, 2020, the Oak Street claims to have operated 79 centers in 16 markets across 11 states, which provided care for approximately 97,000 patients.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on August 6, 2020, the day the Company's stock began trading on the public market. The previous day, August 5, 2020, Oak Street filed an amendment

to its common stock registration statement (the "Amendment"). Therein, under a section titled "Our Competitive Advantages," Oak Street stated:

### Organic, Community-Based Marketing and Patient Recruitment

*We employ a multichannel marketing strategy that goes directly to our target customer. We fundamentally control our own destiny and can scale the number of centers on our platform rapidly and fill them with any interested patients we attract.*

18.     In the Amendment, under a section titled "Key Factors Affecting Our Performance," the Company stated:

We utilize a proactive strategy to drive growth to our centers. We employ a grassroots approach to patient engagement led by our Outreach team and supplemented by more traditional marketing, including television, digital and social media, print, mail and telemarketing. We leverage our Outreach Team to ensure we are connecting with Medicare-eligible patients across a number of channels to make them aware of their healthcare choices and the services we offer. These efforts have historically included hosting events within our centers and participating in community events. Each of our centers has a community room; a space designated and available for our patients' use whenever the center is open. We also utilize this space to provide fitness and health education classes to our patients and often open-up events to any older adults in the community regardless of their affiliation with Oak Street Health. In 2019, we hosted approximately 18,700 local events in the communities surrounding our centers. At the present time, we are leveraging our community centers as extra waiting room space as needed which allows easier social distancing for patients or their companions. We are continuing to leverage our community-based marketing approach with less focus on in-person interactions and more focus on working with our community partners to identify older adults who need our services. It is our belief that the enhanced awareness of the importance of managing chronic illnesses as well as patient varied preferences on preferred method to interact with providers will continue to drive demand for Oak Street Health amongst older adults. The ultimate effect of our marketing efforts is increased awareness of Oak Street Health and additional patients choosing us as their primary care provider, regardless of whether that patient is covered under MA or traditional Medicare. We believe that our outreach efforts also help to grow our payor partners' membership base as we grow our own patient base and help educate patients about their choices on Medicare, further aligning our model with that of healthcare payers.

19.     With Respect to the False Claims Act, Oak Street did not claim it was involved in any wrongdoing, but the Amendment stated:

We also may be subject to lawsuits under the False Claims Act (the "FCA") and comparable state laws for submitting allegedly fraudulent or otherwise inappropriate bills for services to the Medicare and Medicaid programs. These lawsuits, which may be initiated by government authorities as well as private party relators, can involve significant monetary damages, fines, attorney fees and the award of bounties to private plaintiffs who successfully bring these suits, as well as to the government programs. In recent years, government oversight and law enforcement have become increasingly active and aggressive in investigating and taking legal action against potential fraud and abuse.

20.     On September 16, 2020, Oak Street published a press release titled "Oak Street Health Reports Second Quarter 2020 Financial Results." Therein, Oak Street, in relevant part, stated:

Oak Street Health, Inc. (NYSE: OSH) (the "Company"), a network of value-based, primary care centers for adults on Medicare, today reported financial results for its second quarter ended June 30, 2020.

"We were pleased with our second quarter financial results, which highlighted both our strong organic revenue growth and the resiliency of our model despite the impact from the COVID-19 pandemic. I credit our team members, all of whom acted swiftly to implement adjustments to our operations while maintaining our commitment to exceptional patient care," said Mike Pykosz, Chief Executive Officer of Oak Street Health. "Looking forward, we expect the proceeds from our recently completed initial public offering to help us execute on our vision of extending our value-based care platform to Medicare beneficiaries across the country."

**Second Quarter 2020 Financial Highlights**

- Total revenue was $214.4 million, up 69% year over year
- The Company cared for approximately 57,500 at-risk patients, representing 67% of its total patients
- Loss from operations was ($24.4) million, compared to ($18.4) million in the second quarter 2019
- Platform contribution was $19.4 million, up 81% year over year
- Net loss was ($26.8) million, compared to ($20.3) million in the second quarter 2019
- Adjusted EBITDA was ($17.6) million, compared to ($16.0) million in the second quarter 2019
- As of June 30, 2020, the company operated 54 centers, compared to 44 centers at June 30, 2019

"Since the end of the second quarter, we have executed several strategic initiatives," commented Tim Cook, Chief Financial Officer of Oak Street Health. "First, on August 6, our successful initial public offering raised $351.7 million in net proceeds. Second, on September 1, we announced a strategic collaboration with Walmart to bring Oak Street Health centers to three Walmart locations in the Dallas-Fort Worth area later this year. Lastly, although COVID-19 caused us to temporarily pause new center openings during the second quarter, we are pleased to report that we have opened 12 new centers in the last six weeks alone, expanding our total footprint to 66 centers."

(Footnotes omitted.)

21.     On September 16, 2020, Oak Street filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended June 30, 2020. The Company's 10-Q was signed by Defendant Cook and reaffirmed the Company's financial results previously announced the same day.

22.     The Company's Form 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendants Pykosz and Cook, who certified:

1.  I have reviewed this Quarterly Report on Form 10-Q of Oak Street Health, Inc.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

c)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

23.  On November 9, 2020, Oak Street published a press release titled "Oak Street Health Reports Third Quarter 2020 Financial Results." Therein, Oak Street, in relevant part, stated:

Oak Street Health (NYSE: OSH) (the "Company"), a network of value-based, primary care centers for adults on Medicare, today reported financial results for its third quarter ended September 30, 2020.

"Our strong third quarter results were highlighted by 38% growth in at-risk patients, 57% revenue growth, and the resumption of new center openings, as we opened 13 centers during the quarter amidst continued uncertainty related to the COVID-19 pandemic," said Mike Pykosz, Chief Executive Officer of Oak Street Health. "Since the end of the third quarter, we have opened four additional standalone centers, including our first locations in New York City and Mississippi, as well as the first of three Walmart pilot locations in Texas. Looking ahead, we continue to be excited by the ample opportunity to drive continued de novo expansion across both new and existing markets, as well as the complementary growth opportunities presented by our Walmart collaboration and CMS' Direct Contracting program."

Third Quarter 2020 Financial Highlights

- Total revenue was $217.9 million, up 57% year over year
- Capitated revenue totaled $211.8 million, up 59% year over year
- The Company cared for approximately 59,500 at-risk patients, representing 66% of its total patients
- Loss from operations was ($55.3) million, compared to ($31.6) million in the third quarter of 2019
- Platform contribution was $20.1 million, up 387% year over year
- Net loss was ($59.2) million, compared to ($33.4) million in the third quarter of 2019
- Adjusted EBITDA was ($22.8) million, compared to ($28.1) million in the third quarter 2019
- As of September 30, 2020, the Company operated 67 centers, compared to 46 centers as of September 30, 2019

(Footnotes omitted.)

24.     On November 10, 2020, Oak Street filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended September 30, 2020. The Company's Form 10-Q was signed by Defendant Cook, and reaffirmed the Company's financial results previously announced on November 9, 2020. The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Pykosz and Cook, substantially similar to the certifications described in ¶ 22, *supra*. With respect to marketing, the 10-Q, in relevant part, stated:

> We grow our patient base through our own internal sales and marketing efforts, which drives most of our new patient growth, as well as assignments from our MA plan partners. We grew our patient base from approximately 80,000 patients as of December 31, 2019 to approximately 86,500 as of June 30, 2020. Our growth during this period was more modest than we would have anticipated due to the measures we took to limit our outreach and marketing activities in response to the COVID-19 pandemic (see — *Impact of COVID-19 on our Business*).

25.     On March 9, 2021, Oak Street published a press release titled "Oak Street Health Reports Fourth Quarter 2020 Financial Results." Therein, Oak Street, in relevant part, stated:

> Oak Street Health, Inc. (NYSE: OSH) (the "Company"), a network of value-based, primary care centers for adults on Medicare, today reported financial results for its fourth quarter ended December 31, 2020.

"We are incredibly proud of the impact the Oak Street team made on our patients and communities in 2020 and the accompanied operational and financial results, and we could not be more excited to continue our performance in 2021 and beyond," said Mike Pykosz, Chief Executive Officer of Oak Street Health. "In 2020, we delivered record revenue of $883 million, representing growth of 59%, despite significant challenges related to the COVID-19 pandemic. We opened a record 28 new centers during the year, including 12 in the fourth quarter, allowing us to bring our outstanding quality of care and patient experience to thousands of new older adults. In addition to our rapid growth, we continued to innovate our care model to meet our patients' needs during the pandemic, including deploying telehealth capabilities, mobilizing and providing last mile food delivery, offering free COVID-19 testing, and now operating clinics to vaccinate our patients and communities. In what has been the most challenging year in the history of Oak Street Health, our results underscore the power of our model, the ingenuity and agility of our tenacious team, and our commitment to rebuild healthcare as it should be."

Mr. Pykosz continued, "Our prospects for 2021 are equally appealing. Our center cohort performance continues to improve over time, with newer vintages ramping faster than the already strong center ramps from our earlier vintages. Based on our continued and consistent strong unit economics in 2020, we will accelerate our pace of new centers even further in 2021, with a goal of opening 38-42 additional centers, an increase from the expectations of 25-30 that we communicated following our initial public offering. As our communities continue to reopen, there is a tremendous opportunity to re-energize our community outreach model, which we believe positions us well to deliver a strong year of patient growth. While 2020 was a remarkable year, we are enthusiastic about all that we intend to accomplish in 2021, further enhancing our leading position in the value-based, primary care market."

**Fourth Quarter 2020 Financial Highlights**

- Total revenue was $248.7 million, up 43% year over year.
- The Company cared for approximately 64,500 risk-based patients, representing 66% of its total patients.
- Loss from operations[1] was $(90.7) million, compared to $(44.0) million in the fourth quarter of 2019.
- Platform contribution[2] was $12.1 million, up 397% year over year.
- Net loss[1] was $(90.7) million, compared to $(45.9) million in the fourth quarter of 2019.
- Adjusted EBITDA[3] was $(43.5) million, compared to $(36.2) million in the fourth quarter of 2019.
- As of December 31, 2020, the Company operated 79 centers[4], compared to 51 centers as of December 31, 2019.

(Footnotes omitted.)

26.     On March 10, 2021, Oak Street filed its Annual Report with the SEC on Form 10-K for the annual period ended December 31, 2020. The Company's Form 10-Q was signed by Defendants Pykosz and Cook, and reaffirmed the Company's financial results previously announced on March 9, 2020. The Form 10-K contained certifications pursuant to SOX, signed by Defendants Pykosz and Cook, substantially similar to the certifications described in ¶ 22, *supra*. With respect to marketing, the 10-K, in relevant part, stated:

> We employ a multichannel marketing strategy that goes directly to our target customer. We fundamentally control our own destiny and can scale the number of centers on our platform rapidly and fill them with any interested patients we attract.

> \*     \*     \*

> We grow our patient base through our own internal sales and marketing efforts, which drive most of our new patient growth, as well as assignments from our MA plan partners. We grew our patient base from approximately 79,000 patients as of December 31, 2019 to approximately 97,000 as of December 31, 2020. Our growth during this period was more modest than we would have anticipated due to the measures we took to limit our outreach and marketing activities in response to the COVID-19 pandemic (see — *COVID-19 Update on our Business*).

> \*     \*     \*

> We expect to continue to focus on long-term growth through investments in our centers, care model and sales and marketing. In addition, we expect our corporate, general and administrative expenses to increase in absolute dollars for the foreseeable future to support our growth and because of additional costs of being a public company.

27.     On May 10 2021, Oak Street published a press release titled "Oak Street Health Reports First Quarter 2021 Financial Results." Therein, Oak Street, in relevant part, stated:

> Oak Street Health, Inc. (NYSE: OSH, or the "Company"), a network of value-based primary care centers for adults on Medicare, today reported financial results for its quarter ended March 31, 2021.

> "We were pleased with another strong quarter of results. Most importantly, we are proud of the impact we made on our patients and our communities, including continuing to provide them with outstanding care while also administering over

150,000 vaccine doses, predominantly to older adults from underserved communities," said Mike Pykosz, Chief Executive Officer of Oak Street Health. "In the first quarter we generated revenue growth of 47%. Our execution was further highlighted by the opening of seven new centers, including four new markets, during the quarter. As of March 31, we operated 86 clinics across 20 markets in 13 states. Our patient growth in the first quarter demonstrated the continued demand for Oak Street Health's innovative model in all our markets. We are encouraged by our early traction with the CMS Direct Contracting program as we enrolled approximately 6,500 participants for the April 1st launch and are optimistic about the opportunity this program represents over the coming years. We remain committed to our mission and are excited about our growth opportunities."

First Quarter 2021 Financial Highlights

- Total revenue was $296.7 million, up 47% year over year
- Capitated revenue totaled $291.2 million, up 48% year over year
- The Company cared for approximately 75,500 risk-based patients, representing 69% of its total patients
- Loss from operations was ($63.8) million, compared to ($13.0) million in the first quarter of 2020
- Platform contribution was $36.7 million, up 43% year over year Net loss was ($64.0) million, compared to ($15.4) million in the first quarter of 2020
- Adjusted EBITDA was ($17.4) million, compared to ($8.7) million in the first quarter of 2020
- As of March 31, 2021, the Company operated 86 centers, compared to 54 centers as of March 31, 2020

(Footnotes omitted.)

28.     On the same day, May 10, 2021, Oak Street filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended March 31, 2021. The Company's Form 10-Q was signed by Defendant Cook, and reaffirmed the Company's financial results announced the same day. The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Pykosz and Cook, substantially similar to the certifications described in ¶ 22, *supra*. The Form 10-Q also stated the following with respect to marketing:

We grow our patient base through our own internal sales and marketing efforts, which drive most of our new patient growth, as well as assignments from our MA plan partners. We grew our patient base from approximately 85,500 patients as of March 31, 2020 to approximately 109,500 as of March 31, 2021.

\*     \*     \*

We expect to continue to focus on long-term growth through investments in our centers, care model, and sales and marketing. In addition, we expect our corporate, general and administrative expenses to increase in absolute dollars for the foreseeable future to support our growth and because of additional costs of being a public company.

29.     On August 9, 2021, Oak Street published a press release titled "Oak Street Health Reports Second Quarter 2021 Financial Results." Therein, Oak Street, in relevant part, stated:

Oak Street Health, Inc. (NYSE: OSH, or the "Company"), a network of value-based primary care centers for adults on Medicare, today reported financial results for its quarter ended June 30, 2021.

"We were pleased with another quarter of strong growth in light of continued uncertainty navigating the COVID-19 pandemic. We remain committed to our patients and communities, as we have throughout the pandemic, and are particularly proud of the more than 180,000 vaccine doses we have administered this year to predominantly older adults in underserved communities," said Mike Pykosz, Chief Executive Officer of Oak Street Health. "In the second quarter, we generated at-risk patient growth of 54% and total revenue growth of 65% and continued our national expansion, opening 9 new centers in four new markets. On August 5th, we opened our 100th center compared to just 54 when the pandemic began in March 2020. We did encounter medical cost headwinds during the quarter related to COVID-19 hospitalizations, a significant increase in non-acute utilization, and historically high medical costs for new patients, resulting in an Adjusted EBITDA loss of $53.5 million compared to the low end of our prior guidance of $40.0 million. However, based on the strong performance across the majority of the drivers of business performance, our belief that the increase in medical costs will be temporary, and the expectation that we will receive an increase in per patient revenue in 2022 based on the increasing disease burden of our patient population, we are confident in the economics of our business in 2022 and beyond. Because of this confidence, we are increasing our new center guidance from 38-42 to 46-48 new centers for full year 2021." Tim Cook, Chief Financial Officer of Oak Street Health added, "We recognized revenue and incurred medical claims expense of approximately $14.5 million and $19.0 million, respectively, in the second quarter related to prior periods. In light of our strong growth, we are increasing our revenue guidance for the full year to $1.37 billion to $1.40 billion, representing an increase of 5% at the midpoint compared to our prior full year guidance, but we are increasing our Adjusted EBITDA loss for the year to a range of $240 million to $220 million given the medical cost trends we experienced in the first half of the year and the assumed continuation of those costs for the remainder of the year as well as the increase in the number of new centers in the second half of 2021."

<u>Second Quarter 2021 Financial Highlights</u>

- Total revenue was $353.1 million, up 65% year over year
- Capitated revenue totaled $346.7 million, up 67% year over year
- The Company cared for approximately 88,500 risk-based patients, representing approximately 73% of its total patients
- Net loss was ($100.3) million, compared to ($26.8) million in the second quarter of 2020
- Adjusted EBITDA was ($53.5) million, compared to ($17.5) million in the second quarter of 2020
- As of June 30, 2021, the Company operated 95 centers, compared to 54 centers as of June 30, 2020

(Footnotes omitted.)

30.     On August 9, 2021, Oak Street filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended June 30, 2021. The Company's Form 10-Q was signed by Defendant Cook, and reaffirmed the Company's financial results announced the same day. The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Pykosz and Cook, substantially similar to the certifications described in ¶ 22, *supra*. With respect to marketing, the Form 10-Q, in relevant part, stated:

> We grow our patient base through our own internal sales and marketing efforts, which drive most of our new patient growth, as well as assignments from our MA plan partners. We grew our patient base from approximately 86,500 patients as of June 30, 2020 to approximately 122,000 as of June 30, 2021.
>
> *     *     *
>
> We expect to continue to focus on long-term growth through investments in our centers, care model, and sales and marketing. In addition, we expect our corporate, general and administrative expenses to increase in absolute dollars for the foreseeable future to support our growth and because of additional costs of being a public company.

31.     The above statements identified in ¶¶ 17-30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Oak Street maintained relationships with third-party marketing agents likely to provoke law enforcement

scrutiny; (2) that Oak Street was providing free transportation to federal health care beneficiaries in a manner that would provoke law enforcement scrutiny; (3) that these activities may be violations of the False Claims Act; (4) that, as such, Oak Street was at heightened risk of investigation by the DOJ and/or other federal law enforcement agencies; (5) that, as a result, Oak Street was subject to adverse impacts related to defense and settlement costs and diversion of management resources; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

32.     On November 8, 2021, Oak Street filed its third quarter Quarterly Report with the SEC on Form 10-Q for the quarter ended September 30, 2021. Therein, the Company, in relevant part, disclosed:

> ***On November 1, 2021, the Company received a civil investigative demand ("CID") from the United States Department of Justice***. According to the CID, ***the Department of Justice is investigating whether the Company may have violated the False Claims Act***, 31 U.S.C. §§ 3729-3722. ***The CID requests certain documents and information related to the Company's relationships with third-party marketing agents and related to the Company's provision of free transportation to federal health care beneficiaries and requests information and documents related to such matters***. We intend to cooperate with the Department of Justice and produce information and documentation in response to the CID. We are currently unable to predict the outcome of this investigation or whether litigation is probable. Regardless of the outcome, this inquiry has the potential to have an adverse impact on us due to any related defense and settlement costs, diversion of management resources, and other factors.

(Emphasis added.)

33.     On this news, the Company's share price fell $9.75, or more than 20%, to close at $37.14 per share on November 9, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Oak Street securities between August 6, 2020, and November 8, 2021, inclusive (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous and geographically dispersed so that joinder of all members is impracticable.  Throughout the Class Period, Oak Street's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time but can be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Oak Street shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Oak Street or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Oak Street; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.     The market for Oak Street's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Oak Street's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Oak Street's securities relying upon the integrity of the market price of the Company's securities and market information relating to Oak Street, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Oak Street's securities, by publicly issuing false and/or misleading statements

and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Oak Street's business, operations, and prospects as alleged herein.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Oak Street's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

43. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44. During the Class Period, Plaintiff and the Class purchased Oak Street's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Oak Street, their control over, and/or receipt and/or modification of Oak Street's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Oak Street, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Oak Street's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Oak Street's securities traded at artificially inflated prices during the Class Period.  On February 12, 2021, the Company's share price closed at a Class Period high of $64.99 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Oak Street's securities and market information relating to Oak Street, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Oak Street's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Oak Street's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Oak Street and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Oak Street's securities was an efficient market for the following reasons, among others:

(a)     Oak Street shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Oak Street filed periodic public reports with the SEC and/or the NYSE;

(c)     Oak Street regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Oak Street was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Oak Street's securities promptly digested current information regarding Oak Street from all publicly available sources and reflected

such information in Oak Street's share price. Under these circumstances, all purchasers of Oak Street's securities during the Class Period suffered similar injury through their purchase of Oak Street's securities at artificially inflated prices and a presumption of reliance applies.

50.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Oak Street who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Oak Street's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Oak Street's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Oak Street's financial well-being and prospects, as specified herein.

56.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Oak Street's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Oak Street and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58. Defendants had knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Oak Street's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Oak Street's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Oak Street's securities during the Class Period at artificially high prices and were damaged thereby.

60. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Oak Street was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Oak Street securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of Oak Street within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, Oak Street and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2022               Plaintiff,

By: /s/ Marvin A. Miller
Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
mmiller@millerlawllc.com

*Local Counsel for Plaintiff*

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
clinehan@glancylaw.com

*Counsel for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**
**OAK STREET HEALTH, INC. (OSH) SECURITIES LITIGATION**

I, Reginald T. Allison, certify that:

1.      I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.      I did not purchase the Oak Street Health, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Oak Street Health, Inc. securities during the period set forth in the Complaint are as follows:

         (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

| | |
|---|---|
| 1/6/2022 | *Reginald T. Allison* |
| Date | Reginald T. Allison |

**Reginald T. Allison's Transactions in Oak Street Health, Inc. (OSH)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/27/2021 | Bought | 25 | $44.9400 |