**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>vs.<br><br>OAK STREET HEALTH, INC., MICHAEL PYKOSZ, and TIMOTHY COOK,<br><br>           Defendants. | Case No. 1:22-cv-00149-MFK<br><br><u>CLASS ACTION</u><br><br>Honorable Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE AND**
**THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF KANSAS CITY,**
**MISSOURI FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF COUNSEL**

Proposed Lead Plaintiff the Employees' Retirement System of the City of Baltimore ("Baltimore Employees") and the Employees' Retirement System of the City of Kansas City, Missouri ("KCERS" and together with Baltimore Employees, the "Retirement Systems") respectfully move this Court for the entry of an Order: (1) appointing the Retirement Systems as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") on behalf of a class (the "Class") of purchasers and acquirers of the securities of Oak Street Health, Inc. ("Oak Street" or the "Company") between August 6, 2020, and November 8, 2021, inclusive (the "Class Period"); (2) approving their selection of Saxena White P.A. ("Saxena White") to serve as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") to serve as Liaison Counsel for the Class; and (3) granting any such other and further relief as the Court may deem just and proper.

## I.       PRELIMINARY STATEMENT

The Retirement Systems respectfully submit that they are the "most adequate plaintiff" under the PSLRA and readily satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Retirement Systems together incurred losses of $680,311 on their Class Period purchases of Oak Street common stock under the prevailing last-in-first-out ("LIFO") accounting method.[1] In addition, the Retirement Systems collectively purchased 27,992 total shares and 27,852 net shares of Oak

---

[1] Baltimore Employees and KCERS's transactions in Oak Street stock during the Class Period are set forth in their Certifications. *See* Declaration of Carol V. Gilden in Support of the Motion of the Employees' Retirement System of the City of Baltimore and Employees' Retirement System of the City of Kansas City, Missouri for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Gilden Decl."), Ex. A (certifications) & Ex. B (loss calculations).

Street common stock, and expended more than $1.5 million in net funds on their Class Period transactions in Oak Street common stock.

Further, the Retirement Systems' claims are typical of the Class's claims. Like all other Class members, the Retirement Systems suffered losses on their Oak Street investments as a result of Defendants' allegedly false and misleading statements. Further, the Retirement Systems have no conflicts with the Class and will adequately protect the Class's interests given their significant financial stake in the claims and their status as institutional investors. Indeed, the Retirement Systems, which each manage hundreds of millions of dollars in assets, are precisely the type of lead plaintiff envisioned by Congress when enacting the PSLRA: sophisticated institutional investors that are committed to the vigorous prosecution of the claims in this action, understand the obligations and responsibilities of a lead plaintiff, and have the incentive, ability, and experience to effectively oversee counsel and supervise the prosecution of this action in the best interests of the Class. In addition, the Retirement Systems have demonstrated their ability to oversee this litigation and their commitment to working cohesively to efficiently prosecute this litigation by conferring before this motion was filed to establish a coordinated strategy for overseeing the prosecution of this matter. *See* Joint Declaration of David Randall and Barbara J. Davis in Support of the Motion of the Employees' Retirement System of the City of Baltimore and the Employees' Retirement System of the City of Kansas City, Missouri for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Joint Declaration"), Gilden Decl., Ex. C.

The Retirement Systems have further demonstrated their adequacy by selecting Saxena White to serve as Lead Counsel, and for Cohen Milstein to serve as Liaison Counsel, for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Saxena White and Cohen Milstein are

leading national law firms specializing in representing institutional investors in securities and shareholder litigation, with substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this District and throughout the nation.

## II.    FACTUAL BACKGROUND[2]

Pending before the Court is a securities class action brought on behalf of purchasers and acquirers of Oak Street securities during the Class Period against Oak Street, its Chief Executive Officer Michael Pykosz, and its Chief Financial Officer Timothy Cook (collectively, "Defendants"). ¶¶ 1, 12-14.  The complaint asserts claims for violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  ¶ 7.

Oak Street is a Delaware corporation headquartered in Chicago, Illinois.  Its common stock trades on the New York Stock Exchange under the ticker symbol "OSH."  ¶ 12.   Oak Street operates primary care centers in the United States. Oak Street contracts with health plans to generate medical cost savings and realize a return on its investment in primary care.  ¶ 16.  On August 5, 2020, the Company filed an amendment to its common stock registration statement. ¶ 17. Oak Street disclosed that it may be subject to lawsuits under the False Claims Act, but denied involvement in any wrongdoing. ¶ 19.  The following day, the start of the Class Period, Defendants took Oak Street public in an initial public offering that raised over $350 million in net proceeds. ¶ 20.

The complaint alleges that, during the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose, among other things, the

---

[2] These factual allegations are summarized from the complaint in the above-captioned action.

Company's relationship with third-party marketing agents and provision of free transportation to federal health care beneficiaries, which likely violated the False Claims Act and were likely to draw scrutiny and trigger investigations from the U.S. Department of Justice ("DOJ") and other law enforcement agencies. ¶ 31.

The Class Period ends on November 8, 2021, when Oak Street filed its third-quarter Form 10-Q with the SEC. ¶ 32. Therein, the Company revealed that it received a civil investigative demand from the DOJ regarding Oak Street's potential violations of the False Claims Act. *Id.* On this news, the price of Oak Street's stock fell $9.75 per share, or more than 20%, to close at $37.14 per share on heavy trading volume. ¶ 33.

Defendants' material misrepresentations and omissions and the revelations thereof have caused the Retirement Systems and other class members to incur substantial damages.

## III. ARGUMENT

### A. THE RETIREMENT SYSTEMS SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1. The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the PSLRA specifies that:

> "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."

4

15 U.S.C. § 78u-4(a)(3)(A)(i).  The statutory notice in this case was published on January 11, 2022 via *Business Wire*.  *See* Gilden Decl., Ex. D.  Next, pursuant to the PSLRA, the court is to consider all motions made by class members and appoint as lead plaintiff the movant that the court determines to be the most capable of adequately representing the Class's interests.  The PSLRA provides that the court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).  Specifically, in determining a lead plaintiff motion, a court shall adopt the presumption that the "most adequate plaintiff" is the person or group of persons who:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly or adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2.  The Retirement Systems Are the "Most Adequate Plaintiff" Under the PSLRA

Here, the Retirement Systems are the "most adequate plaintiff" under the PSLRA because they: (1) filed a timely motion for appointment as Lead Plaintiff; (2) hold the largest financial interest of any movant; and (3) satisfy Rule 23's typicality and adequacy requirements.  In addition, as sophisticated institutional investors with a substantial financial stake in this action, Baltimore Employees and KCERS are precisely the type of lead plaintiff that Congress envisioned when enacting the PSLRA.

### i. The Retirement Systems' Motion Is Timely

The Retirement Systems have timely filed this motion to serve as Lead Plaintiff. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff who filed the initial complaint in this action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely circulated, national, business-oriented wire service, on January 11, 2022. *See* Gilden Decl., Ex. D. Thus, pursuant to the PSLRA, any member of the proposed Class interested in serving as Lead Plaintiff must apply for appointment within 60 days of the publication of the notice, *i.e.*, on or before March 14, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Accordingly, the Retirement Systems have filed their motion within the required timeframe.

### ii. The Retirement Systems Have the Largest Financial Interest in the Relief Sought by the Class

The Retirement Systems believe they have the largest financial stake in the claims asserted in this case. The PSLRA instructs courts to adopt the presumption that "the most adequate plaintiff" is the "person or group of persons that . . . has the largest financial interest in the relief sought by the class" so long as that movant meets the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, during the Class Period, the Retirement Systems collectively: (1) purchased 27,992 shares of Oak Street common stock; (2) purchased 27,852 net shares of Oak Street common stock; (3) expended $1,570,657 in net funds on their Class Period transactions in Oak Street common stock; and (4) suffered a LIFO loss of $680,311 on their Class Period purchases of Oak Street shares. Gilden Decl., Ex. B; *see Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 11, 1997) (setting forth factors courts in this District and throughout the nation consider in determining a lead plaintiff movant's financial interest); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at \*5 (N.D. Ill.

Apr. 18, 2012) (explaining courts' preference for LIFO calculations over calculations under the first-in-first-out (FIFO) method). The Retirement Systems believe their financial interest in the relief sought by the Class to be greater than that of any other qualified movant seeking appointment as Lead Plaintiff. Indeed, the Retirement Systems are unaware of any other movant with a greater financial interest in the outcome of this litigation.

### iii. The Retirement Systems Satisfy Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

At this stage of the litigation, however, a movant need only make a "preliminary showing" that they satisfy the typicality and adequacy requirements of Rule 23. *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019). As detailed below, Baltimore Employees and KCERS plainly satisfy the typicality and adequacy requirements of Rule 23(a), and are well-qualified to serve as Lead Plaintiff.

### a. The Retirement Systems' Claims are Typical of the Class

In addition to possessing the largest financial interest in the litigation, the Retirement Systems satisfy the typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). The typicality requirement of Rule 23(a)(3) is met when representative

7

plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *Christakis v. Fifth Third Bancorp*, No. 20 C 2176, 2020 WL 9720422, at *2 (N.D. Ill. June 29, 2020). Here, like all other Class members, the Retirement Systems: (1) purchased Oak Street securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by Defendants' conduct, causing the price of Oak Street securities to fall. *See id.* (discussing the typicality requirement). Accordingly, the Retirement Systems' claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirements of Rule 23(a)(3).

### b. The Retirement Systems Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Fifth Third Bancorp*, 2020 WL 9720422, at *2 (noting that the adequacy requirement "requires the lead plaintiff to (1) have claims that are not antagonistic or in conflict with those of the class, (2) have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) be represented by competent, experienced counsel who will be able to prosecute the litigation vigorously") (internal quotations and citations omitted).

Here, the Retirement Systems' interests are aligned with those of the other Class members and are not antagonistic in any way. Baltimore Employees and KCERS both incurred substantial financial harm due to Defendants' misrepresentations and omissions during the Class Period and, therefore, have a sufficient interest in the outcome of the litigation to ensure vigorous prosecution

of the litigation. There are no facts to suggest any antagonism or an actual or potential conflict of interest between the Retirement Systems and the other Class members.

Further, the Retirement Systems also have demonstrated their adequacy—including a demonstrated commitment to working cohesively in the prosecution of this litigation—by executing the Joint Declaration. The Joint Declaration describes the backgrounds of Baltimore Employees and KCERS and their significant relevant experience serving as fiduciaries in selecting and overseeing counsel in securities class actions and other complex litigation. *See* Gilden Decl., Ex. C ¶¶ 2-3. The Joint Declaration also describes the cooperation between Baltimore Employees and KCERS in this case, including protocols they have put in place to ensure informed decision-making. *See id.* ¶¶ 9-10. In addition, the Joint Declaration describes the common objective of the Retirement Systems "in enhancing the reliability of information disseminated by publicly-traded corporations" and "their shared belief regarding the role of corporate governance in detecting and preventing securities fraud." *Id.* ¶ 8. As set forth in the Joint Declaration, in exploring their potential leadership of this litigation, Baltimore Employees and KCERS each determined that they could "maximize the Class's recovery by pooling their respective resources and experience and jointly seeking appointment as Lead Plaintiff." *Id.* ¶ 7. The Joint Declaration makes clear that Baltimore Employees and KCERS appreciate the duties and responsibilities of a lead plaintiff pursuant to the PSLRA and are committed to maximizing the Class's recovery and ensuring the litigation is prosecuted as zealously and efficiently as possible. In addition, as discussed in the Joint Declaration, prior to filing their motion, representatives of Baltimore Employees and KCERS held a conference call to formalize their oversight of this litigation and discuss the merits of the claims and their common goals in seeking to lead this litigation. *See id.* ¶ 9; *see also Hospira, Inc.*, 2012 WL 1339678, at *8-9 (appointing as lead plaintiff a group of institutional investors

whose "members have established" through affidavits "that they intend to work together cooperatively and cohesively in [the] litigation").

The Retirement Systems have further demonstrated their adequacy through their selection of Saxena White to serve as Lead Counsel, and for Cohen Milstein to serve as Liaison Counsel, for the Class. As discussed below, Saxena White and Cohen Milstein are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to effectively prosecute complex securities class actions.

Thus, in addition to having the largest financial interest, the Retirement Systems also satisfy the typicality and adequacy requirements of Rule 23, and are the "most adequate plaintiff" under the PSLRA.

### iv. The Retirement Systems Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions, the Retirement Systems are the paradigmatic lead plaintiff envisioned by Congress in its enactment of the PSLRA— sophisticated institutional investors with a substantial financial stake in the litigation and the resources, experience, and incentive to vigorously represent the Class and oversee lead counsel's prosecution of the case. *See* S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 622 (E.D. Wis. 2009) (explaining that the PSLRA "was designed to encourage institutional investors, who are more likely to have significant financial holdings at stake as well as greater sophistication and experience in securities matters, to exercise control over the litigation and over counsel").

## B. THE COURT SHOULD APPROVE THE RETIREMENT SYSTEMS' SELECTION OF COUNSEL

The PSLRA vests authority in the lead plaintiff to "select and retain [lead] counsel" subject to this Court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Retirement Systems have selected Saxena White as Lead Counsel to represent the Class. As set forth in its firm resume, Saxena White has extensive experience prosecuting complex litigation on behalf of aggrieved shareholders. *See* Gilden Decl., Ex E.

Saxena White has achieved substantial recoveries on behalf of investor classes when serving as lead or co-lead counsel in major securities class actions nationwide, including in this District. For example, Saxena White, acting as lead counsel, secured a $53 million recovery for the investor class in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 C 7644 -RAG (N.D. Ill.). In addition, Saxena White, acting as co-lead counsel, secured a $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-00990-ER (D. Del.), which represented the second-largest securities class action recovery in Delaware history. Saxena White's track record in securities litigation also includes: the $135 million recovery for the investor class in *Peace Officers Annuity and Benefit Fund of Georgia v. DaVita Inc*., No. 1:17-cv-00304-WJM (D. Colo.); the $73 million recovery for the investor class in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-1395-TJCJBT (M.D. Fla.); the $50 million recovery for the investor class in *In re HD Supply Holdings Inc. Securities Litigation*, No. 1:17-CV-02587-ELR (N.D. Ga.); the $28 million recovery for the investor class in *Milbeck v. TrueCar, Inc.*, No. 2:18-cv-02612-AGR (C.D. Cal.); and the $25 million recovery for the investor class in *Plymouth County Retirement System v. GTT Communications, Inc*., No. 1:19-cv-00982-CMH (E.D. Va.).

11

Furthermore, by approving the Retirement Systems' choice of Lead Counsel, this Court will also advance the important goal of increasing diversity among class counsel, so that the attorneys leading the case "reflect the diversity of the proposed national class." *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020); *see also In re Gildan Activewear Inc. Sec. Litig.*, No. 1:08-cv-05048-HB, 2010 U.S. Dist. LEXIS 140619, at *3 (S.D.N.Y. Sept. 20, 2010) (because "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman- and minority-owned firm specializing in representing institutional investors as plaintiffs in securities litigation, Saxena White is deeply committed to diversity. Indeed, Saxena White was selected by the Chief Judge of the Northern District of Ohio as Co-Lead Counsel in a prominent shareholder derivative action arising out of massive corruption and bribery scheme, not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson* (*FirstEnergy Corp. Derivative Litig.*), No. 2:20-CV-04534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020).

Similarly, Cohen Milstein is well qualified to represent the Class as Liaison Counsel, having extensive experience in litigating securities fraud class actions. Cohen Milstein has recovered billions of dollars for its clients in complex securities class actions including: a $500 million settlement in *Maine State Retirement System v. Countrywide Financial Corp.*, Nos. 2:12-cv-05122-MRP (MANx), 2:12-cv-05125-MRP (MANx) (C.D. Cal.); $335 million in settlements in *New Jersey Carpenters Health Fund v. Residential Capital, LLC,* No. 08-cv-8781 (HB) (S.D.N.Y.); a $275 million settlement in a mortgage-backed securities class action in *New*

12

*Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.); and a $90 million settlement in a class action in *Rubin v. MF Global, Ltd*., No. 08-cv-2233 (VM) (S.D.N.Y.). *See* Gilden Decl., Ex. F.

Notably, Saxena White and Cohen Milstein have a track record of successfully prosecuting securities class action cases together. For instance, Saxena White served as lead counsel, while Cohen Milstein served as liaison counsel, in the recent $25 million recovery achieved for the investor class in *Plymouth County Retirement System v. GTT Communications, Inc*., No. 19-cv-982-CMH (E.D. Va.). In addition, Saxena White and Cohen Milstein served together as co-lead counsel in *City of Birmingham Retirement and Relief System v. Credit Suisse Group AG*, No. 1:17-cv-10014-LGS (S.D.N.Y.), which achieved a $15.5 million recovery for the investor class, and in *Hughes v. Huron Consulting, Inc.*, No. 09-CV-4734 (N.D. Ill.) which achieved a $27 million cash settlement plus stock valued at $13.2 million on behalf of investors. Additionally, Saxena White and Cohen Milstein are also serving together as co-lead counsel in the *FirstEnergy Corp. Derivative Litigation*, *supra*.

Thus, the Court may be assured that by granting this Motion, the Class here will receive the highest caliber of legal representation. Accordingly, the Court should approve Baltimore Employees and KCERS's selection of Saxena White to serve as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class. 15 U.S.C. § 78u-4(a)(3)(B)(v).

### IV. CONCLUSION

For the foregoing reasons, the Retirement Systems respectfully request that the Court: (1) appoint Baltimore Employees and KCERS as Lead Plaintiff; (2) approve their selection of Saxena White to serve as Lead Counsel for the Class and Cohen Milstein to serve as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

13

Dated: March 14, 2022

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Carol V. Gilden*
Carol V. Gilden (N.D. Ill. #6185530)
190 South LaSalle Steet, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Daniel S. Sommers
1100 New York Ave, NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsommers@cohenmilstein.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**

Maya Saxena
Lester R. Hooker
7777 Glades, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

Steven B. Singer
Rachel A. Avan
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
ravan@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the Employees'*
*Retirement System of the City of Baltimore and*
*the Employees' Retirement System of*
*the City of Kansas City, Missouri, and Proposed*
*Lead Counsel for the Class*

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on March 14, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 14, 2022.

*/s/ Carol V. Gilden*
Carol Gilden