**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

OAK STREET HEALTH, INC., et al.,

Defendants.

Case No. 1:22-cv-00149

Judge Matthew F. Kennelly

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

October 26, 2022

Andrew J. Ehrlich (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-373-3990
Email: aehrlich@paulweiss.com
Email: dsinnreich@paulweiss.com

-and-

Peter A. Silverman (Il. ARDC # 6196081)
Rebecca Kaiser Fournier (Il. ARDC # 6306280)
**SMITH, GAMBRELL & RUSSELL, LLP**
10 S. LaSalle Street, Suite 3600
Chicago, Illinois 60603
Telephone: 312-264-1004

Facsimile: 312-251-4610
Email: psilverman@sgrlaw.com
Email: rfournier@sgrlaw.com

*Counsel for Defendants Oak Street Health, Inc.,
Michael Pykosz, Timothy Cook, General
Atlantic LLC n/k/a General Atlantic, L.P.,
General Atlantic (OSH) Interholdco, L.P.,
Newlight Partners LP, Newlight Harbour Point
SPV LLC, Geoff Price, Griffin Myers, Regina
Benjamin, Carl Daley, Cheryl Dorsey, Mohit
Kaushal, Kim Keck, Julie Klapstein, Paul
Kusserow, Robbert Vorhoff, and Srdjan Vukovic*

Scott D. Musoff (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER, &
FLOM LLP**
One Manhattan West
New York, New York  10001
Telephone: (212) 735-7852
Email: scott.musoff@skadden.com

-and-

Marcella L. Lape (Il. ARDC # 6286676)
Clare Lilek (Il. ARDC # 6336261)
**SKADDEN, ARPS, SLATE, MEAGHER, &
FLOM LLP**
155 North Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 407-0700
Email: marcie.lape@skadden.com

*Counsel for the Defendants J.P. Morgan
Securities LLC, Goldman Sachs & Co. LLC,
Morgan Stanley & Co. LLC, William Blair &
Company L.L.C., and Piper Sandler & Co.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ................................................................................................................... 1

I.     Plaintiffs Do Not Adequately Allege Violations Of Section 10(b) And Rule 10b-5 .......... 1

       A.     Plaintiffs Do Not Adequately Allege Any Materially Misleading Statements Or Omissions .................................................................................................. 1

              1.     No Challenged Statement Is Misleading By Omission ............................ 1

              2.     Defendants' Opinions And Puffery Are Not Actionable ........................... 7

              3.     Plaintiffs Fail To Allege Violations Of Items 303 And 105 .................... 10

       B.     Plaintiffs Do Not Adequately Allege A Strong Inference Of Scienter ................. 11

              1.     Plaintiffs' Motive Allegations Do Not Support A Strong Inference Of Scienter ............................................................................................... 12

              2.     Plaintiffs' Circumstantial Allegations Do Not Raise A Strong Inference Of Scienter ....................................................................... 13

       C.     Plaintiffs Fail To Allege Loss Causation ................................................................ 18

II.     Plaintiffs Do Not Adequately Allege Securities Act Violations .................................... 20

       A.     Rule 9(b) Applies To The Securities Act Claims .................................................. 20

       B.     Plaintiffs Lack Standing To Pursue Their Securities Act Claims ......................... 21

III.     Plaintiffs Fail To State A Claim For Control Person Liability ...................................... 23

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2U, Inc. Sec. Class Action*,
  2021 WL 3418841 (D. Md. Aug. 5, 2021) ...............................................................................23

*Abramson* v. *Newlink Genetics Corp.*,
  965 F.3d 165 (2d Cir. 2020)...........................................................................................................9

*In re Acadia Pharms. Inc. Sec. Litig.*,
  2020 WL 2838686 (S.D. Cal. June 1, 2020)..............................................................................19

*In re Acadia Pharms. Inc. Sec. Litig.*,
  No. 18-cv-1647, ECF No. 101 (S.D. Cal. Mar. 29, 2021).......................................................19

*In re Allscripts, Inc. Sec. Litig.*,
  2001 WL 743411 (N.D. Ill. June 29, 2001).................................................................................5

*In re Allstate Corp. Sec. Litig.*,
  2020 WL 7490280 (N.D. Ill. Dec. 21, 2020)...............................................................................4

*Anderson* v. *Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001) ...........................................................................................5

*Heavy & Gen. Laborers' Local 472 & 172 Pension & Annuity Funds* v. *Fifth Third Bancorp*, 2022 WL 1642221 (N.D. Ill. May 24, 2022) .......................................4, 8, 12

*Heavy & Gen. Laborers' Local 472 & 172 Pension & Annuity Funds* v. *Fifth Third Bancorp*, 2021 WL 1648117 (N.D. Ill. Apr. 26, 2021) ..............................................15

*In re Ariad Pharms., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016)........................................................................................................22

*In re Bally Total Fitness Sec. Litig.*,
  2006 WL 3714708 (N.D. Ill. July 12, 2006)..............................................................................17

*In re Baxter Int'l Inc. Sec. Litig.*,
  2021 WL 100457 (N.D. Ill. Jan. 12, 2021)................................................................................16

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)...............................................................................................................21, 22

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017).........................................................................................11

*Bond* v. *Clover Health Invest. Corp.*,
    587 F. Supp. 3d 641 (M.D. Tenn. Feb. 28, 2022)........................................................................6

*Boston Ret. Sys.* v. *Alexion Pharms., Inc.*,
    556 F. Supp. 3d 100 (D. Conn. 2021)........................................................................20

*Brasher* v. *Broadwind Energy, Inc.*,
    2012 WL 1357699 (N.D. Ill. Apr. 19, 2012)........................................................14, 25

*Carpenters Pension Tr. Fund for Northern California* v. *Allstate Corp.*,
    2018 WL 1071442 (N.D. Ill. Feb. 27, 2018)..................................................7, 12, 16

*Cent. Laborers' Pension Fund* v. *SIRVA, Inc.*,
    2006 WL 2787520 (N.D. Ill. Sept. 22, 2006).........................................................22

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013)........................................................................22

*Chandler* v. *Ulta Beauty, Inc.*,
    2022 WL 952441 (N.D. Ill. Mar. 30, 2022)......................................................... *passim*

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021)...........................................................2

*Citiline Holdings, Inc.* v. *iStar Fin. Inc.*,
    701 F. Supp. 2d 506 (S.D.N.Y. 2010).........................................................................23

*City of Fort Lauderdale Gen. Emps.' Ret. Sys.* v. *Edison Int'l*,
    786 F. App'x 685 (9th Cir. 2019)........................................................................19

*Constr. Workers Pension Fund-Lake Cty. & Vicinity* v. *Navistar Int'l Corp.*,
    114 F. Supp. 3d 633 (N.D. Ill. 2015)........................................................................6

*Doherty* v. *Pivotal Software, Inc.*,
    2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)........................................................22

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019)........................................................................1

*Flynn* v. *Exelon Corp.*,
    2021 WL 1561712 (N.D. Ill. Apr. 21, 2021)..........................................6, 13, 17

*Fryman* v. *Atlas Fin. Holdings, Inc.*,
    2022 WL 1136577 (N.D. Ill. Apr. 18, 2022)........................................................12

*Fulton County Employees Ret. Sys.* v. *MGIC, Invest. Corp.*,
    675 F.3d 1047 (7th Cir. 2012)........................................................................24, 25

iii

*U.S.* v. *George*,
   171 F. Supp. 3d 810 (N.D. Ill. 2016) ...................................................................................3

*In re Global Crossing, Ltd. Sec. Litig.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003).................................................................................22

*In re GoHealth, Inc. Sec. Litig.*,
   2022 WL 1016389 (N.D. Ill. Apr. 5, 2022) ........................................................................21

*In re GoHealth, Inc. Sec. Litig.,*
    2022 WL 1136576 (N.D. Ill. Apr. 18, 2022) ......................................................................25

*Grigsby* v. *BofI Holding, Inc.*,
   979 F.3d 1198 (9th Cir. 2020) ............................................................................................20

*Hedick* v. *Kraft Heinz Co.*,
   2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...................................................................4, 14

*Holwill* v. *AbbVie*,
   2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ...........................................................2, 6, 13, 20

*Hunter* v. *Elanco Animal Health Inc.*,
   2022 WL 3445173 (S.D. Ind. Aug. 17, 2022) ....................................................................21

*Indiana Pub. Ret. Sys.* v. *Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ...........................................................................................17

*In re Kosmos Energy Ltd. Sec. Litig.*,
   955 F. Supp. 2d 658 (N.D. Tex. 2013) ................................................................................24

*Lindelow* v. *Hill*,
   2001 WL 830956 (N.D. Ill. July 20, 2001)..........................................................................17

*Lloyd* v. *CVB Financial Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ........................................................................................18, 19

*Loos* v. *Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ..............................................................................................18

*Lowry* v. *RTI Surgical Holdings, Inc.*,
   532 F. Supp. 3d 652 (N.D. Ill. 2021) ..................................................................................18

*Meyer* v. *Greene*,
   710 F.3d 1189 (11th Cir. 2013) ......................................................................................19, 20

*In re Newell Rubbermaid Inc. Sec. Litig.*,
   2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ......................................................................10

iv

*Omnicare, Inc.* v. *Laborers District Council Construction Indus. Pension Fund,*
  575 U.S. 175 (2015)................................................................................................8, 9

*Ong* v. *Chipotle Mexican Grill,*
  2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ............................................................11

*Ong* v. *Sears, Roebuck & Co.,*
  2005 WL 2284285 (N.D. Ill. Sept. 14, 2005) .......................................................22

*Pierrelouis* v. *Gogo Inc.,*
  2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) ..........................................................5

*Plumbers & Pipefitters Loc. Union* v. *Zimmer,*
  673 F. Supp. 2d 718 (S.D. Ind. 2009) ..............................................................11, 14

*Plumbers & Pipefitters Local Union 719 Pension Fund* v. *Zimmer Holdings, Inc.,*
  679 F.3d 952 (7th Cir. 2012) ................................................................................13

*Plumbers & Pipefitters Nat. Pension Fund* v. *Orthofix Int'l N.V.,*
  89 F. Supp. 3d 602 (S.D.N.Y. 2015)......................................................................20

*Pugh* v. *Tribune Co.,*
  521 F.3d 686 (7th Cir. 2008) ...........................................................................12, 19

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
  387 F. Supp. 2d 1130 (D. Colo. 2005)...................................................................17

*Rosenweig* v. *Azurix Corp.,*
  332 F.3d 854 (5th Cir. 2003) .................................................................................23

*Ross* v. *Career Education Corp.,*
  2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)......................................................14, 23

*S. Cherry St., LLC* v. *Hennessee Grp. LLC,*
  573 F.3d 98 (2d Cir. 2009).....................................................................................13

*Shah* v. *Zimmer Biomet Holdings, Inc.,*
  348 F. Supp. 3d 821 (N.D. Ind. 2018) ................................................................4, 23

*Silverman* v. *Motorola, Inc.,*
  798 F. Supp. 2d 954 (N.D. Ill. 2011) .....................................................................20

*Singer* v. *Reali,*
  883 F.3d 425 (4th Cir. 2018) ...................................................................................7

*Société Générale Sec. Servs., GbmH* v. *Caterpillar, Inc.,*
  2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ......................................................1, 9

*St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund* v. *Motorola, Inc.*,
   2011 WL 814932 (N.D. Ill. Feb. 28, 2011) ...................................................20

*Sterling Heights Gen. Emps.' Ret. Sys.* v. *Hospira, Inc.*,
   2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ...................................................14

*In re Supreme Indus., Inc. Sec. Litig.*,
   2018 WL 2364931 (N.D. Ind. May 23, 2018) ................................................16

*Teachers' Ret. Sys. Of LA* v. *Hunter*,
   477 F.3d 162 (4th Cir. 2007) .......................................................................20

*TransEnterix Inv. Grp.* v. *TransEnterix, Inc.*,
   272 F. Supp. 3d 740 (E.D.N.C. 2017).............................................................23

*Twin Master Fund, Ltd.* v. *Akorn, Inc.*,
   2020 WL 564222 (N.D. Ill. Feb. 5, 2020) .....................................................10

*Tyler* v. *Liz Claiborne*, *Inc.*,
   814 F. Supp. 2d 323 (S.D.N.Y. 2011)............................................................17

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)................................................22

*Vallabhaneni* v. *Endocyte, Inc.*,
   2016 WL 51260 (S.D. Ind. Jan. 4, 2016)........................................................17

*Van Noppen* v. *InnerWorkings, Inc.*,
   136 F. Supp. 3d 922 (N.D. Ill. 2015) ..............................................................4

*W. Palm Beach Firefighters' Pension Fund* v. *Conagra Brands, Inc.*,
   495 F. Supp. 3d 622 (N.D. Ill. 2020) ................................................... *passim*

*Wandel* v. *Gao*,
   2022 WL 768975 (S.D.N.Y. Mar. 14, 2022) .................................................11

*Washtenaw Cnty. Emps.' Ret. Sys.* v. *Walgreen Co.*,
   2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ................................................20

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .......................................................................17

**Statutes**

Section 10(b) of the Securities Exchange Act of 1934,
   *codified at* 15 U.S.C. § 78(j)...................................................................1, 21

Section 11 of the Securities Act of 1933,
   *codified at* 15 U.S.C. § 77k(a) ....................................................................21

Section 12(a)(2) of the Securities Act of 1933,
*codified at* 15 U.S.C. § 77l(a) ...........................................................................22, 23

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
*codified at* 15 U.S.C. § 78u-4 ...................................................................14, 15, 17

**Other Authorities**

42 C.F.R. § 1001.952(d)(1)(iv) ...........................................................................................3

Compl. *AbbVie*, No. 18-cv-06790, ECF No. 74 (N.D. Ill. July 22, 2019)...................................2, 6

Fed R. Civ. P. 8...................................................................................................................25

Fed. R. Civ. P. 9(b) ..............................................................................20, 21, 23, 25

OIG, *Compliance: Safe Harbor Regulations*, available at
https://oig.hhs.gov/compliance/safe-harbor-regulations...........................................................3

## ARGUMENT

### I.     Plaintiffs Do Not Adequately Allege Violations Of Section 10(b) And Rule 10b-5[1]

#### A.     Plaintiffs Do Not Adequately Allege Any Materially Misleading Statements Or Omissions

##### 1.     No Challenged Statement Is Misleading By Omission

Plaintiffs' theory of falsity is as convoluted as it is unprecedented.  Plaintiffs do not dispute—because they cannot—that Oak Street *in fact disclosed* the two practices that Plaintiffs (and only Plaintiffs) contend violate the AKS—namely, (i) use of insurance agents to assist with patient recruitment, and (ii) provision of "free transportation" to federal health care beneficiaries. *See* Br. 5-8, 17-19, 36.[2]  Paragraph 101(h) of the Complaint, for instance, identifies Oak Street's public statement that it uses external companies to assist with recruitment *in a manner that Oak Street believes does not violate the AKS.  Accord* Ex. G, rows 21-26.  Similarly, at a healthcare conference cited throughout the Complaint, Oak Street's CEO stated that "Oak Street Health is a very natural place to do [primary care] *because we offer free transportation . . .* [w]e just do it all for free."  Ex. H at 18; ¶¶ 108(a)-(c); *see* ¶¶ 72-74 (materials discussing "free transportation").

Plaintiffs' theory, at its core, then, is not that the purported *strategies* were concealed, but that Oak Street "omitted" to disclose that these strategies were unlawful.  That is not the law.  Rather, as common sense dictates, where a company takes the position that its conduct is legal, as is the case here, it is not required to "disclose" that it is illegal.  *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 832-33 (N.D. Cal. 2019); *Société Générale Sec. Servs., GbmH* v.

---

[1]     The Underwriter Defendants join only arguments applicable to claims under Sections 11 and 12(a)(2) of the Securities Act, including that Plaintiffs do not allege misstatements or omissions.

[2]     All defined terms and abbreviations are the same as in Defendants' opening brief, ECF No. 59, except that references to "Ex. __" may also refer to exhibits to the attached Supplemental Declaration of Daniel S. Sinnreich.  Defendants' opening brief is abbreviated "Br. __" and Plaintiffs' opposition brief is abbreviated "Opp. __."  All emphases in quotations are added.

*Caterpillar, Inc.*, 2018 WL 4616356, at *5 (N.D. Ill. Sept. 26, 2018) (dismissing securities fraud claims based on purported violations because the issuer was not "required to admit liability for uncharged, unadjudicated claims while the investigation into its tax position was ongoing"). That should be the beginning and end of this claim.

Alternatively, Plaintiffs fail to allege a misleading statement for at least three reasons.

***First***, Plaintiffs fail to adequately allege that the challenged recruitment strategies violated the AKS. No regulator has even *filed a complaint* alleging that the challenged conduct violated the law. Plaintiffs argue that there is no such "requirement" (Opp. 12), but rely on *Holwill* v. *AbbVie* for this principle—a case that was brought after a California regulator filed *the largest health insurance fraud complaint in state history*, accusing the issuer of a $1.2 billion "classic" kickback scheme relating to its flagship drug. 2020 WL 5235005, at *3 (N.D. Ill. Sept. 1, 2020) (cited Opp. 3, 11-12, 15, 24-25); *see also* Compl. *AbbVie*, No. 18-cv-06790, ECF No. 74 (N.D. Ill. July 22, 2019) ("AbbVie Compl."), at ¶¶ 20-21, 109-111.[3]

Lacking any allegations of regulatory sanction, Plaintiffs instead rely on "advisory opinions" from the OIG to demonstrate supposed violations. ¶¶ 55, 58-59, 71; Opp. 5-6. But assessing a potential AKS violation requires a nuanced, facts-and-circumstances analysis that includes considerations of intent and federal healthcare policy, which Plaintiffs do not even purport to address in their highly cursory analysis. This is why the very OIG advisory opinions relied on by Plaintiffs expressly preclude such reliance, as they (i) are "issued only to . . . the requestor of this opinion," (ii) have "no application [to], and ***cannot be relied upon by***, any other individual or entity," (iii) are "limited in scope to the specific arrangement described," and

---

[3] Plaintiffs also rely on *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *6 (S.D.N.Y. Aug. 23, 2021), but that case concerned whether the defendant avoided reporting goodwill impairments, not whether regulatory violations occurred.

"ha[ve] no applicability to other arrangements, ***even those which appear similar in nature or scope***." Ex. F at 7; Ex. Y at 8-9; Ex. Z at 8-9; Ex. AA at 9. The opinions also describe only "***potential[]***" violations, but warn that any "definitive conclusion" requires consideration of other factors, including "the parties' intent, which determination is beyond the scope of the advisory opinion process." Ex. Z at 3; *see* Ex. AA at 8-9; Ex. F at 7; Ex. Y at 2-3.

Moreover, although Plaintiffs insist that the CAP payments to insurance agents are improper "referrals" (Opp. 8, 12-13, 15, 32), Plaintiffs do not dispute that these payments are made after agents educate *potential patients* and connect them with Oak Street, "regardless of whether they visit or become a patient at one of [Oak Street's] centers." Br. 6-7. Payments for services such as marketing and patient education are thus lawful payments for qualified leads, not improper referrals. *Id.*; 42 C.F.R. § 1001.952(d)(1)(iv). Plaintiffs argue that payments made "on a per-patient referral basis" or "based on the volume of referrals" violate the AKS. Opp. 12-13. Those arguments are irrelevant because CAP payments are not "referrals."[4]

***Second***, Plaintiffs' omissions theory also fails because even if at this stage the Court considered the practices as prohibited by the AKS—which it should not—Defendants disclosed the *precise* risk that materialized. Unlike the cases cited by Plaintiffs, where issuers assured investors that they "never" violated the law and that their programs "complied with [applicable] laws," *infra* 6-7, Oak Street not only disclosed the practices now at issue, it even said it could "not guarantee" perfect compliance. Br. 8-9, 14. Oak Street warned investors that its third-party arrangements "could potentially implicate the [AKS]," which could lead to "material adverse

---

[4]  Plaintiffs argue that Oak Street's reference to a "safe harbor" somehow "concede[s]" AKS violations. Opp. 13. But the OIG explicitly states that safe harbor regulations describe practices that "are not treated as offenses under the statute." OIG, *Compliance: Safe Harbor Regulations*, available at https://oig.hhs.gov/compliance/safe-harbor-regulations. Plaintiffs' reliance on *U.S.* v. *George*, 171 F. Supp. 3d 810, 811-14, 816-17 (N.D. Ill. 2016), is also misplaced. The court there held *after trial* that a defendant committed AKS violations based on testimony, evidence, and a videotaped confession.

impact[s]," including government "investigations" and "possible exclusion from participation in Medicare." Br. 9, 13-14.[5] These warnings extinguish Plaintiffs' claims. *Heavy & Gen. Laborers' Local 472 & 172 Pension & Annuity Funds* v. *Fifth Third Bancorp*, 2022 WL 1642221, at *16 (N.D. Ill. May 24, 2022) (dismissing securities fraud claim based on alleged regulatory violations where challenged statements discussed issuer's efforts to "mitigate" compliance risk and thus "clearly acknowledge[d] the potential for noncompliance").[6]

Plaintiffs try to dismiss the dispositive force of this disclosure by arguing that Defendants inappropriately identified some "hypothetical risk that ha[d] already come to fruition." Opp. 20. This is untrue. The only risk that has "come to fruition" is the risk of a government *investigation* into Oak Street's alleged recruitment strategies. *See* Opp. 7, 20-21, 24-25.[7] Plaintiffs do not (and cannot) allege that risk materialized during the Class Period.[8] Oak Street also repeatedly disclosed the risk up until that point in time. *See* Br. 2, 8-9, 14, 23. Plaintiffs separately suggest that the adequacy of Defendants' risk disclosures cannot be considered at the pleading stage. Opp. 21. But the case they rely on, *In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at *7 (N.D. Ill. Dec. 21, 2020), concerned defendants' attempt to use expert evidence at class certification. Contrary to Plaintiffs' argument, courts—including those cited by Plaintiffs—

---

[5] Plaintiffs' statement that Defendants made "assurances that prohibited payments were not being made" (Opp. 20-21) cites no authority, is flatly contradicted by the record, and should be rejected. *See also infra* 7-10.

[6] Plaintiffs' argument that these risk disclosures are "boilerplate" (Opp. 20) is nonsensical because they warned of *the exact* risk that materialized.

[7] To the extent Plaintiffs suggest that the "risk" is a government finding that the strategies violated the AKS, no such violation has been charged and no such risk has materialized.

[8] In contrast, Plaintiffs' cases involved issuers who warned of risks that had *already materialized*. *See, e.g.*, *Hedick* v. *Kraft Heinz Co.*, 2021 WL 3566602, *16 (N.D. Ill. Aug. 11, 2021) (risk warnings failed to disclose "contrary present facts about contemporaneous effects that Defendants' cost-cutting measures were having"); *Shah* v. *Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 839 (N.D. Ind. 2018) (misleading disclosures "made after [defendant] was made aware of quality systems issues"); *Van Noppen* v. *InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 929, 949 (N.D. Ill. 2015) (misleading disclosure about "artificially inflated results" that had "already . . . materialized").

routinely consider the sufficiency of risk disclosures at the pleading stage. *See, e.g.*, *In re Allscripts, Inc. Sec. Litig.*, 2001 WL 743411, at *6 (N.D. Ill. June 29, 2001) (dismissing where SEC filings "announce[d] the risks of this e-commercial venture"); *Pierrelouis* v. *Gogo Inc.*, 2021 WL 1608342, at *11 (N.D. Ill. Apr. 26, 2021) (cited Opp. 20).

**Third**, and finally, even if Plaintiffs had identified AKS violations in the Complaint (and they do not), they would not render any statement misleading. The challenged statements are all general, truthful, factual statements about the Company's patient recruitment strategies: i.e., Oak Street uses a "grassroots approach to patient engagement"; the Company "engag[es] with community partners"; and Oak Street uses "external companies to assist with certain aspects of recruitment efforts" and "love[s] when insurance advisers or health plan[s]" introduce Oak Street to "people that need our care." Opp. 14; Ex. G. Plaintiffs *do not dispute* their failure to allege that any of these statements are false and concede that their own factual allegations confirm the accuracy of nearly every challenged statement. *Compare* Br. 15-19, *with* Opp. 13-16.

Plaintiffs' theory appears to be that, by merely mentioning alleged patient recruitment strategies, Defendants put the topic "at issue" and were required to disclose anything and everything an investor could possibly want to know about that topic. Opp. 14-15. That is a facile and inaccurate statement of the law. "Merely mentioning a topic . . . does not require the company to disclose every tangentially related fact that might interest investors." *Anderson* v. *Abbott Labs.*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001), *aff'd sub nom.*, 269 F.3d 806 (7th Cir. 2001). A duty to disclose arises only if the allegedly concealed information **contradicts** the challenged statements and renders them false or misleading. *Chandler* v. *Ulta Beauty, Inc.*, 2022 WL 952441, at *8-9 (N.D. Ill. Mar. 30, 2022) (rejecting allegation that ethics and compliance statements were "misleading for omitting" allegedly unethical "policy of reselling used

5

products" because "none of the statements cited by Plaintiffs are ***directly contradicted by*** [defendant's] alleged practice"); *Constr. Workers Pension Fund-Lake Cty. & Vicinity* v. *Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015) (omitted information must be "contradictory"). Plaintiffs ignore this law and do not explain why any purportedly concealed information about two comparatively unimportant recruitment strategies made any public statement misleading. Plaintiffs simply list the challenged statements (Opp. 15), and say, with no analysis, that "[a]ll these statements were false and misleading" because they mentioned acquisition strategies and omitted that the strategies supposedly violated the AKS. That is insufficient.

Plaintiffs' own cases—none of which are discussed beyond parentheticals (*see* Opp. 11-27)—highlight the enormous gap between a proper omissions case and the facts alleged here:

- In *Flynn* v. *Exelon Corp.*, 2021 WL 1561712, at *1-2 (N.D. Ill. Apr. 21, 2021) (cited Opp. 16), the defendant entered into a deferred-prosecution agreement where it *admitted* to an 8-year bribery scheme to influence lawmakers. The omission of this scheme rendered false defendants' statements that they "never request, offer or accept any form of payment or incentive intended to improperly influence a decision," and defendants' responses to investors' questions about grand jury subpoenas investigating the scheme. *Id.* at *4, 9.

- In *AbbVie*, 2020 WL 5235005, at *3 (cited Opp. 3, 11-12, 15), the defendants attributed the success of the company's flagship drug—which accounted for a majority of revenue—to the company's marketing programs, which "complied with laws regulating sales and marketing." The company also stated that it "***never*** offer[ed] or provide[d] anything of value to healthcare professionals" to influence their "prescribing practices in favor of an AbbVie product." *Id.* at *4. These statements misleadingly omitted that the company engaged in a "classic" kickback scheme, in which defendants provided cash and gifts to physicians in exchange for prescriptions. *See id.* at *3-4. The issuer was subsequently charged by the California Department of Insurance with the largest insurance fraud scheme in California history. *See id.* at *1, 6; AbbVie Compl. ¶¶ 20-21, 109-111.

- In *Bond* v. *Clover Health Investments, Corp.*, 587 F. Supp. 3d 641, at 657-60 (M.D. Tenn. Feb. 28, 2022) (cited Opp. 2, 12, 25), the court held that defendant's failure to disclose *an ongoing DOJ investigation* was misleading when it told investors it was not aware of any material government investigations. The court also held that statements attributing the company's success to its "flagship software program"—

6

purportedly used by "92%" of its clients—were misleading when the "overwhelming majority" of clients "did not use it at all," and the company's "growth" was due to a classic kickback scheme. *Id.* at 652, 654-55, 666, 670-71.

• In *Carpenters Pension Trust Fund for Northern California* v. *Allstate Corp.*, 2018 WL 1071442, at *4 (N.D. Ill. Feb. 27, 2018) (cited Opp. 15), defendants repeatedly "assured investors" that they had "comprehensively analyzed" an uptick in insurance claims and determined that it was an "external trend." The court held that these statements misleadingly omitted that the true cause was the company's reduction in underwriting standards. *See id.*[9]

Here, unlike in these cases, Defendants did not tell investors that they had "carefully analyzed" a business issue and then lie about that issue's cause. They did not assure investors that OSH "never" violates certain regulations, only to be charged with violating those precise regulations. They did not attribute the Company's financial success to a "flagship" product while concealing the true, unlawful cause. Indeed, while Plaintiffs' brief portrays the programs at issue here as critical to Oak Street's business, the Complaint acknowledges that less than 10% of new patients in 2021 were traced to leads obtained from the CAP, and pleads no facts about the importance of transportation. Br. 24-25. This case is far more analogous to the recent decision in *Ulta*. There, plaintiffs argued that defendants misrepresented that their "success was the result of offering a variety of quality products" but "failed to disclose that stores were reselling used products." 2022 WL 952441, at *11. The court disagreed, both because the omitted information did not "contradict" the challenged statements, and also because "the complaint does not allege facts showing that the sale of used products was so significant to Ulta's total sales figures that it was misleading to not disclose the practice." *Id.* at *11, 13.

## 2. Defendants' Opinions And Puffery Are Not Actionable

Plaintiffs' claims also fail because several challenged statements are clear statements of

---

[9] Plaintiffs also cite *Singer* v. *Reali* (Opp. 15), but disingenuously *omit* key language that explains why the omitted information about an "unlawful[] cod[ing]" scheme rendered statements about a new "coding requirement" misleading. 883 F.3d 425, 440-41 (4th Cir. 2018).

opinion, including, principally, Oak Street's statement that "in limited instances we use external companies to assist with certain aspects of [recruitment] efforts, but only in arrangements that we believe do not violate the Anti-Kickback Statute or other applicable laws." Ex. G, row 27. Plaintiffs do not dispute their failure to plead any facts indicating that the speaker "did not honestly believe th[e] opinion when he gave it." *Fifth Third*, 2022 WL 1642221, at \*17; Br. 19-20. These allegations are thus insufficient under the heightened pleading standard for opinion statements set forth in *Omnicare, Inc.* v. *Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 176, 184 (2015).[10]

Plaintiffs try to escape this clear application of law by mischaracterizing Defendants' statements. Plaintiffs argue that this opinion "contained [false] embedded statements of fact that Oak Street's patient acquisition strategies did not include making prohibited payments to third parties for referrals." Opp. 17. But this is not what Defendants said. Defendants said only that "in limited instances we use external companies to assist with certain aspects of [recruitment] efforts." Plaintiffs also mischaracterize what an "embedded fact" is. An "embedded fact" is a plain factual statement that supports an opinion statement. *Omnicare*, 575 U.S. at 185-86. In *Omnicare*, for example, the Supreme Court explained that the opinion "I believe our TVs have the highest resolution available because we use a patented technology," contained an embedded fact that "the company uses a patented technology." *Id.* Here, the challenged opinion does contain embedded facts—including that "[t]he OIG has expressed concern regarding the use of non-employed sales forces to recruit or facilitate the recruiting of patients or referrals"—but Plaintiffs do not allege that any of the actual "embedded facts" are false. Opp. 17.[11]

---

[10] Plaintiffs' wholly conclusory argument that Oak Street "had no basis" for its belief because the violations were "clear" (Opp. 19-20) cannot satisfy their heightened pleading standard. It also ignores Defendants' explanation for why the challenged conduct is not unlawful. *Supra* 2-3.

[11] Plaintiffs similarly argue that Defendants' other opinion statements contain embedded statements of

8

Plaintiffs egregiously mischaracterize the same opinion in their Preliminary Statement, where they argue that the opinion "assured investors" that Oak Street's third-party arrangements "do not violate the [AKS] or other applicable laws." Opp. 2. Oak Street *did not* "assure" compliance; it stated its "belie[f]" that its arrangements were lawful, but warned that regulators could take a different view, leading to "investigations" and other "material adverse impact[s]." *Supra* 3-4. An opinion that conduct "is complying with the law" is not rendered misleading by alleged violations, particularly when "put in context by . . . accompanying disclosures" regarding regulatory scrutiny of the conduct. *Caterpillar*, 2018 WL 4616356, at *5.[12]

Plaintiffs also argue that Oak Street's opinion was misleading because it failed to disclose "other facts relevant to the context for the purported belief." Opp. 18-19. This again misconstrues *Omnicare*, which held that an opinion is misleading by omission *only* if plaintiffs "identify particular (and material) facts" about "the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading." 575 U.S. at 194. This is "no small task for an investor." *Id.* Plaintiffs' theory fails because they plead no facts about the inquiry or knowledge forming the basis of the opinion.[13]

Plaintiffs also argue that the Court cannot consider Defendants' puffery arguments at the motion to dismiss stage. Opp. 22. They are wrong, as courts—including this Court—routinely

---

fact. *Compare* Br. 21-22, *with* Opp. 21-22. But Plaintiffs do not adequately allege that *any* embedded facts, such as "we are engaging community partners," are false. *Supra* 5. Plaintiffs make no argument about the actual *opinion* statements, and thus concede that they are not actionable.

[12] Plaintiffs note that the challenged opinion in *Caterpillar* derived from "in house tax professionals." (Opp. 18.) Oak Street's opinion about legal compliance is obviously also based on the views of in-house legal professionals. *Caterpillar* did not hold that an explicit attribution is required.

[13] *Abramson* v. *Newlink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020) (cited Opp. 18) is distinguishable. There, defendant opined that "all the major [American] studies" show that pancreatic cancer survival rates are less than "20 months." *Id.* at 176-177. This statement implied a "detailed investigation" by the speaker into major American studies; in truth, however, *half* of the studies submitted by plaintiffs' experts showed survival rates of 25 to 43 months. *Id.* There are no comparable "implied" facts here.

dismiss vague statements and puffery at the pleading stage. *See, e.g.*, *Twin Master Fund, Ltd.* v. *Akorn, Inc.*, 2020 WL 564222, at *10 (N.D. Ill. Feb. 5, 2020) (assertions regarding expertise were nonactionable puffery) (Kennelly, J.); *In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *7 (N.D. Ill. Nov. 14, 2000) (statements describing a "major development" in growth strategy, and products as "attractive to consumers," were puffery) (Kennelly, J.).[14]

### 3.    Plaintiffs Fail To Allege Violations Of Items 303 And 105

Plaintiffs' argument that the "fail[ure] to disclose the improper patient acquisition tactics" violated Item 303 (Opp. 23) also fails for several reasons. ***First***, as discussed above, Plaintiffs do not adequately allege that the challenged conduct was unlawful. *Supra* 2-3.

***Second***, Defendants' risk disclosures were adequate. The only "uncertainty" that materialized *is the one that Defendants disclosed*: a government investigation involving AKS. *Supra* 3-4. Plaintiffs have failed to show that anything more was required. Br. 23.[15]

***Third***, even if Plaintiffs identified regulatory violations, they fail to plead that any Defendant had "actual knowledge" of violations. Plaintiffs' own case acknowledges that Plaintiffs must "plead[], with some specificity, facts establishing that defendants had actual knowledge." Opp. 25; *see W. Palm Beach Firefighters' Pension Fund* v. *Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 646-47 (N.D. Ill. 2020); *cf. Twin Master*, 2020 WL 564222, at *7-8 (Kennelly, J.) (upholding Item 303 violation based on "known trend" of regulatory violations where defendant received a direct report that an executive was thwarting internal investigations

---

[14]   Plaintiffs argue that because patient recruitment was "critical" to Oak Street's business, statements discussing recruitment could never be puffery. Opp. 23. But the allegedly concealed information concerned comparatively unimportant strategies and was not "critical." *Supra* 7. And the proper question is whether a statement is so vague that no reasonable investor would rely on it. Several challenged statements—including that OSH "control[s] [its] own destiny" (Ex. G, row 1)—are classic puffery.

[15]   Although Plaintiffs argue that Defendants failed to warn about the "the prospect of Medicare excluding Oak Street" (Opp. 25), that risk was also disclosed. Br. 9.

10

and the compliance team had reported compliance deficiencies). As discussed below, Plaintiffs fail to plead recklessness, much less "actual knowledge" of violations. *Infra* 11-18; Br. 24.

**Fourth**, Plaintiffs argue that the stock drop at the end of the Class Period "confirms" the materiality of the omitted information. Opp. 21, 25-26. Courts routinely reject that argument (otherwise materiality would always be pleaded). *See, e.g.*, *Conagra*, 495. F. Supp. 3d at 653; *Plumbers & Pipefitters Loc. Union* v. *Zimmer*, 673 F. Supp. 2d 718, 740 (S.D. Ind. 2009), *aff'd sub nom.*, 679 F.3d 952 (7th Cir. 2012). Plaintiffs do not dispute that the recruitment strategies at issue were relatively small. Br. 24-25; Opp. 25-26. They argue that the alleged omissions were nonetheless material because an AKS violation could, potentially, put "all" revenue at risk. Opp. 26. But Plaintiffs have not pleaded a "substantial probability" that the Company would face such a sanction. *See In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 88 (S.D.N.Y. 2017); *Ong* v. *Chipotle Mexican Grill*, 2017 WL 933108, at *17 (S.D.N.Y. Mar. 8, 2017) ("Item 303 requires the disclosure of harm that is 'probable,' 'imminent,' and 'not merely potential.'").

**Finally**, the Item 105 claim fails because Oak Street's risk disclosures were adequate and Plaintiffs fail to identify AKS violations. Br. 25. Plaintiffs' failure to plead "actual knowledge" also dooms this claim. *See Wandel* v. *Gao*, 2022 WL 768975, at *11 (S.D.N.Y. Mar. 14, 2022).

### B.      Plaintiffs Do Not Adequately Allege A Strong Inference Of Scienter

Plaintiffs' Opposition concedes their complete failure to plead *any facts* showing that any Officer Defendant knew about or recklessly disregarded a *single AKS violation* during the Class Period. Plaintiffs do not dispute their failure to identify any meeting or call where AKS issues were discussed, or any data or reports discussing compliance or AKS violations, much less any meeting, call, or report involving an Officer Defendant. This failure is dispositive. Br. 26-27.

Plaintiffs instead argue that Defendants were motivated to commit fraud, and that intent can be inferred from vague circumstantial allegations. These arguments are similarly inadequate.

11

### 1. Plaintiffs' Motive Allegations Do Not Support A Strong Inference Of Scienter

Plaintiffs argue that scienter can be inferred solely because the Officer Defendants purportedly engaged in "massive" stock sales. Opp. 28. This simplistic analysis is foreclosed by binding precedent. In *Pugh* v. *Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008), the Seventh Circuit held that "because executives sell stock all the time," a "complaint [that] merely sets forth the aggregate amount of shares sold during the class period and the value of those shares" is inadequate. The Officer Defendants' sales of fewer than 20% of their holdings also were not "massive"; they were far below amounts that other courts have held are not suspicious. Br. 32.[16]

The *proper* stock sales inquiry—which Plaintiffs ignore—is whether the *timing* of any sale is suspicious because it is inconsistent with prior trades, or it closely follows a misstatement or precedes a corrective disclosure. Br. 31-32. Plaintiffs do not allege that the timing of *any* sale was suspicious and concede that the Officer Defendants sold a consistent number of shares at a consistent rate (Ex. V). In *Ulta*, the court rejected a motive theory—even where, unlike here, "trades were all significant in terms of the amount and overall percentage of shares each sold and the profits each made"—because "the *timing* of their trades undercut[] any inference of scienter." 2022 WL 952441, at *29; *accord Fifth Third*, 2022 WL 1642221, at *23 (no motive where plaintiffs did not "tie the timing of [any] sale to any specific misleading or false statements").[17]

Plaintiffs also point to sales by the Sponsor Defendants and one Director Defendant. *See*

---

[16] Plaintiffs suggest that courts cannot consider "the fact that defendants did not sell all of their Oak Street stock" on a motion to dismiss. Opp. 29. But courts in this district—including those cited in the Opposition—routinely consider this argument at the motion to dismiss stage. Br. 32; *see* Opp. 29 (citing *Fryman* v. *Atlas Fin. Holdings, Inc.*, 2022 WL 1136577 (N.D. Ill. Apr. 18, 2022)).

[17] Plaintiffs rely principally on *Fryman*, 2022 WL 1136577, at *29-30 (Opp. 28-29), but the court there held that stock sales alone "would not satisfy the scienter requirement," but supported scienter in connection with other allegations because plaintiffs "pled facts showing the *timing* of the stock sales to be suspicious." *See also Allstate*, 2018 WL 1071442, at *2, *5 (Opp. 28) (scienter pleaded where defendant engaged in two significant and suspiciously timed trades and sold 85% of his holdings).

Opp. 28. But Plaintiffs do not assert fraud claims against these Defendants—they do not allege that these Defendants made any misstatements, knew any contrary facts, or acted with fraudulent intent. These allegations are thus wholly irrelevant. *See Ulta*, 2022 WL 952441, at \*29-30 (declining to consider stock sales by board members because there were "no allegations that any of these other board members had any knowledge" of the fraud).

Finally, Plaintiffs argue that the Officer Defendants "had incentive compensation plans that were tied directly to Oak Street's stock price." Opp. 29. This argument, again, is foreclosed by Seventh Circuit precedent. In *Plumbers & Pipefitters Local Union 719 Pension Fund* v. *Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012), the court rejected allegations that "top managers had an incentive to make [the issuer] look good in order to keep their jobs, improve their bonuses, and increase the value of their stock options," because they were "too generic" to satisfy scienter. "A similar assertion could be made about every firm in the world, but the fact that managers benefit from higher stock prices does not imply that any particular manager committed fraud. Quite the contrary. Managers usually do best when a firm has long-term success." *Id.*; *see S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (common goals of all executives, including "the desire to maintain a high stock price in order to increase executive compensation," are insufficient to plead motive).[18]

### 2. Plaintiffs' Circumstantial Allegations Do Not Raise A Strong Inference Of Scienter

Plaintiffs' remaining scienter allegations show nothing about what any Officer Defendant

---

[18] Plaintiffs' cases contained significantly stronger indicia of scienter. *See Exelon*, 2021 WL 1561712, at \*1-2, 10 (complaint was "replete with specific allegations" of scienter regarding a bribery scheme, including a deferred prosecution agreement in which the defendant *admitted* to the scheme and senior executives *admitted* that they were aware of the bribes); *AbbVie*, 2020 WL 5235005, at \*5 (misconduct related to flagship drug, which constituted a majority of net revenues, and misstatements continued "after AbbVie's allegedly unlawful kickback scheme became public").

knew or believed. Each is commonly rejected as insufficient to plead scienter.

*First*, Plaintiffs argue that Officer Defendants were "intimately involved in Oak Street's affairs" *because* they were the CEO and CFO. Opp. 31. If these allegations were adequate, scienter would always be satisfied. The opposite is true: "senior positions within a company do not suggest scienter without additional support from internal documents or communications." *Conagra*, 495 F. Supp. 3d at 661; *see Zimmer*, 673 F. Supp. 2d at 746-47 ("'[R]espective positions within the company prove nothing about fraud or knowledge thereof but rather are exactly the type of generalized allegations the court must disregard under the PSLRA.'").[19]

*Second*, Plaintiffs argue that Defendants "repeatedly spoke both about their patient acquisition strategies and about the AKS rules, while also claiming they were monitoring the Company's patient acquisition strategies and their success." Opp. 31. As a threshold point, Defendants never "claim[ed] they were monitoring the Company's patient acquisition strategies and their success." Plaintiffs do not actually *quote* any such statement, and the Complaint contains no such statement. But even if there were such a "monitoring" statement (there is not), it would be irrelevant absent allegations that the Officer Defendants "reviewed specific information that would have meant [they] knew that any of the alleged misrepresentations were false." *Ulta*, 2022 WL 952441, at *27-28. There are no such allegations here.[20]

---

[19] *Brasher* v. *Broadwind Energy, Inc.*, is inapposite. 2012 WL 1357699, at *24 (N.D. Ill. Apr. 19, 2012) (individual defendant engaged in actions that corroborated confidential witness allegations that he knew a write-down was imminent, which contradicted his public statements).

[20] Plaintiffs rely on this Court's decision in *Ross* v. *Career Education Corp.*, 2012 WL 5363431, at *1 (N.D. Ill. Oct. 30, 2012). *See* Opp. 32. There, however, the individual defendant "was hired for the express purpose of . . . fixing [the company's] compliance problems" and "resign[ed] the day before the results of [an] investigation were announced." *Id.* at *10. There are no comparable allegations about the Officer Defendants here. Plaintiffs' other cases are also distinguishable. *See City of Sterling Heights Gen. Emps.' Ret. Sys.* v. *Hospira, Inc.*, 2013 WL 566805, at *26-27 (N.D. Ill. Feb. 13, 2013) (scienter pleaded where plaintiffs alleged that defendants participated in *specific* meetings discussing the relevant issue); *Hedick*, 2021 WL 3566602, at *13 (individual defendants "made it [their] business to look into" issues concerning "the sustainability of cost-cutting," and led the

Absent non-existent "monitoring" allegations, Plaintiffs are left with the unremarkable fact that the Officer Defendants spoke at a high level about Oak Street's patient recruitment strategies. Again, Plaintiffs do not quote the statements. *See* Opp. 31-32. Instead, they cite Complaint paragraphs about Oak Street "develop[ing] new methods of outreach" (¶ 101(d)), using "relationship-based selling with aggregators" (¶ 106(b)), and "engaging community partners" (¶ 107(b)). None of these statements—many of which were not made by the Officer Defendants—reveals anything about either Defendant's state of mind. Critically, neither these statements, nor any pleaded facts, raises a strong inference that either Officer Defendant *knew or believed* that the strategies violated the AKS, particularly during the Class Period when Oak Street had no knowledge of a future regulatory inquiry. *See* Br. 29-30. Plaintiffs' conclusory argument that the violations were so "obvious" that "it is exceedingly unlikely" that the CEO and CFO believed otherwise do not satisfy the PSLRA's exacting pleading bar. Opp. 32-33.[21]

Plaintiffs also note that the Officer Defendants signed SEC filings stating Oak Street's "belie[f]" that its third-party arrangements do not violate the AKS. Opp. 32. But signatures on SEC filings do not support scienter unless supported by allegations, absent here, that by "signing the statements, [the executive] was told of the falsity of any of the representations or otherwise knew of the alleged problems." *Fifth Third*, 2021 WL 1648117, at *16 (N.D. Ill. Apr. 26, 2021).

***Third***, Plaintiffs' argument that Defendant Pykosz "admitted" after the Class Period to "paying . . . for patient referrals" is blatantly false. Opp. 30-31. Pykosz never mentioned "referrals"; he said that Oak Street pays insurance agents "to help educate older adults about Oak Street Health and with the older adults['] consent, connect them to our employed [salespeople]."

---

company's "cost cutting" efforts and "approved and reported its false financial results").

[21] Plaintiffs do not allege that either Officer Defendant was aware of the OIG advisory opinions on which Plaintiffs (improperly) rely. *See supra* 2-3.

15

Br. 21.  This is consistent with Defendants' prior statements about third-party recruitment, and with the "belie[f]" that these programs do not violate the AKS; it is not an "admission" of wrongdoing.  Br. 30-31.  This statement also sheds no light on what Pykosz knew or believed when the challenged statements were made during the Class Period.  *See* Br. 21.[22]  To the extent Plaintiffs argue that Defendants concealed the existence of "payments" before this statement, Plaintiffs concede that Oak Street repeatedly discussed its "use" of external companies, including insurers, to assist in recruitment.  Br. 17-20.  Even affording Plaintiffs every reasonable inference, it is not a logical inference that these services were provided without payment.

*Fourth*, Plaintiffs argue that scienter can be inferred from the "critical importance" of compliance and patient acquisition.  Opp. 33-34.  But this theory—commonly referred to as the "core operations" doctrine—applies "only where the operation in question constitute[s] nearly all of a company's business."  *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *13 (N.D. Ill. Jan. 12, 2021).  Here, despite Plaintiffs' conclusory and unsupported assertion that "referral payments and free transportation were widespread and pervasive at Oak Street" (Opp. 34 (citing no authority)), the Complaint reflects the opposite.  Leads traced to the CAP accounted for less than 10% of new patients in 2021.  *See supra* 7; Br. 6.  And Plaintiffs plead *no facts* attempting to quantify Oak Street's provision of transportation and its impact on recruitment or revenue.  *See Ulta*, 2022 WL 952441, at *25 ("Without more facts quantifying how significant the practice actually was, it cannot reasonably be inferred that it was so important to Ulta that [officer defendants] must have been aware of it.").[23]  These programs come *nowhere near* the level of

---

[22]  *Allstate*, 2018 WL 1071442, at *6 (cited Opp. 30-31), is inapposite because the post-class period statement there revealed what the defendant "expected" during the class period.

[23]  Although a handful of low-level FEs recall that Oak Street provided free transportation, there is "no allegation that [any] confidential witness had any knowledge of company-wide numbers."  *In re Supreme Indus., Inc. Sec. Litig.*, 2018 WL 2364931 *9-10 (N.D. Ind. May 23, 2018).  The FEs also worked at—and speak about—only a tiny fraction of the 129 centers that Oak Street operated in 2021.

16

outsized importance from which knowledge of their potential impact to patient recruitment— much less knowledge of their legality—can be assumed.[24]  *See Tyler* v. *Liz Claiborne*, *Inc.*, 814 F. Supp. 2d 323, 343-44 (S.D.N.Y. 2011) (segment representing 16% of parent company's revenue was not core operation).  Even if these programs were "core operations," such allegations cannot support a strong inference of scienter unless accompanied by "particularized facts to suggest that defendants acted knowingly or recklessly."  *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (core operations cannot be an "end-run around the requirement[s]" of the PSLRA); *Vallabhaneni* v. *Endocyte, Inc.*, 2016 WL 51260, at *20 (S.D. Ind. Jan. 4, 2016) (similar).  Plaintiffs plead no such facts.

*Fifth*, Plaintiffs' argument that Oak Street engaged in other purported "misconduct" is both wholly irrelevant and not supported by well-pleaded facts.  Plaintiffs do not allege that any of the purported misconduct, such as "up-coding diseases" and "lying to prospective patients" (Opp. 34-35), is the subject of the CID or any other regulatory investigation.  Plaintiffs do not allege that any Officer Defendant participated in or knew about these alleged practices.  And Plaintiffs do not dispute that the *Capitol Forum* article on which they rely does not identify a single specific instance of any improper conduct.  *See* Br. 33-34 & n.13.  These allegations are unsupported, do not move the needle on scienter, and should be rejected.  *See* Br. 34; *accord Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) ("compiling a large quantity of otherwise questionable allegations" does not raise a strong inference of scienter).[25]

---

     *See id.* (discounting FE allegations that did not "extend[] beyond" their own facilities).

[24] Plaintiffs' cases are all distinguishable on this ground.  *See, e.g.*, *Indiana Pub. Ret. Sys.* v. *Pluralsight, Inc.*, 45 F.4th 1236, 1244, 1263 (10th Cir. 2022) (operation was the "primary driver" of billing growth); *Exelon*, 2021 WL 1561712, at *10 (lobbying activities were "central to [the] business's operation") (quotation marks omitted); *Lindelow* v. *Hill*, 2001 WL 830956, at *8 (N.D. Ill. July 20, 2001) (relevant internet portal "was virtually the only business" and "constituted a 'core project'").

[25] Plaintiffs rely on *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1147-48 (D. Colo. 2005), but that case involved "specific facts indicating that [individual defendants] were aware

***Finally***, Plaintiffs disregard Seventh Circuit precedent and insist their FE allegations merit no "discount." Opp. 35-37. Remarkably, however, Plaintiffs do not reference *any* statement by *any* FE, nor explain how any FE's recollection supports a strong inference of scienter. Nor do Plaintiffs dispute that no FE recalls any violation or provides insight into any Officer Defendant's state of mind. *See* Br. 27-28. The FE allegations are thus distinguishable from this Court's decision in *Lowry* v. *RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 661 (N.D. Ill. 2021) (cited Opp. 36-37), where the FEs "appear[e]d to have personal knowledge of . . . management's awareness, and perhaps encouragement" of the improper practices.

### C. Plaintiffs Fail To Allege Loss Causation

Plaintiffs begin their Opposition with a blatant misrepresentation that highlights their loss causation problem. They falsely state that, at the end of the Class Period, "it was revealed that the Company was violating the federal Anti-Kickback Statute." Opp. 1. That might be the corrective disclosure that Plaintiffs *want*, but it is not the corrective disclosure they have *pleaded*. The *actual* alleged corrective disclosure in this case revealed only that the DOJ had begun an "investigati[on]" and "request[ed] certain documents and information." ¶ 129. Plaintiffs fail to distinguish Defendants' cases finding such disclosures categorically insufficient.

The Ninth Circuit has held that the disclosure of a regulatory "inquiry" cannot establish loss causation because "[t]he announcement of an investigation does not 'reveal' fraudulent practices to the market." *Loos* v. *Immersion Corp.*, 762 F.3d 880, 889-90 (9th Cir. 2014). Plaintiffs imply that *Loos* was overruled by *Lloyd* v. *CVB Financial Corp.*, 811 F.3d 1200, 1209-11 (9th Cir. 2016). Opp. 39. Plaintiffs are wrong and badly misrepresent *Lloyd*, which cited *Loos* favorably and held that "the announcement of an investigation can 'form the basis for a

---

of the improper [accounting] manipulations" and "the alleged manipulations and statements were part of a pervasive and long-standing series of accounting machinations and resulting misstatements."

18

viable loss causation theory' *if the complaint also alleges a subsequent corrective disclosure by the defendant*." 811 F.3d at 1209-11 (loss causation pleaded when company announced a government investigation and later "confirmed" the underlying fraudulent behavior in a public filing); *see City of Fort Lauderdale Gen. Emps.' Ret. Sys.* v. *Edison Int'l*, 786 F. App'x 685, 686 (9th Cir. 2019) (affirming dismissal where plaintiff failed to identify "a subsequent corrective disclosure" following announcement of an investigation). There is no subsequent confirmatory disclosure here.[26]

Plaintiffs also fail to distinguish—or mention—*Meyer* v. *Greene*, 710 F.3d 1189, 1200-201 (11th Cir. 2013), in which the Eleventh Circuit similarly affirmed dismissal on loss causation grounds based on the disclosure of government investigations: "[S]tock prices may fall upon the announcement of an SEC investigation, but that is because the investigation can be seen to portend an added risk of future corrective action. That does not mean that the investigations, in and of themselves, reveal to the market that a company's previous statements were false or fraudulent." Although the Seventh Circuit has not addressed this issue in the loss causation context, it used identical reasoning to affirm dismissal of a securities fraud lawsuit on scienter grounds in *Pugh*, holding that civil lawsuits accusing the defendant of fraud only demonstrated "*accusations* of fraud, not fraud itself." 521 F.3d at 695.

The rationale behind these decisions underscores their applicability here. Plaintiffs' theory is that Defendants concealed AKS violations during the Class Period, and that the stock dropped when the violations were "revealed." Opp. 1. But the disclosure here *did not reveal* any

---

[26]   Plaintiffs also cite *In re Acadia Pharms. Inc. Securities Litigation*, 2020 WL 2838686, at *8-9 (S.D. Cal. June 1, 2020), which purportedly held that an investigation announcement was sufficient to plead loss causation. Opp. 39. Plaintiffs omit, however, that the court later *reconsidered* and held that the same disclosure *did not* satisfy loss causation because it "did not reveal any prior untruth." *See Acadia*, No. 18-cv-1647, ECF No. 101 at 21 (Mar. 29, 2021) (dismissing second amended complaint).

violation; it did not even reveal *an accusation* of wrongdoing.  The only incrementally new information revealed by the alleged corrective disclosure was the *existence* of an investigation.  This did not correct any prior misstatement.  Br. 35-36.  Critically, Plaintiffs identify *no case* in which disclosure of an *investigation* alone satisfied loss causation.  *See* Opp. 37-39.[27]

Moreover, Plaintiffs *do not dispute* that the alleged recruitment strategies mentioned in the alleged corrective disclosure were discussed openly with investors long before November 8, 2021.  *Compare* Br. 36, *with* Opp. 39.  Plaintiffs argue only that this argument is "improper at the motion to dismiss stage."  Opp. 39.  But courts, including numerous courts of appeals, dismiss securities fraud claims at the pleading stage where the "facts and circumstances allegedly omitted or represented have actually been disclosed."  *St. Lucie Cnty. Fire Dist. Firefighters' Pension Tr. Fund* v. *Motorola, Inc.*, 2011 WL 814932, at *6 (N.D. Ill. Feb. 28, 2011).[28]

## II.        Plaintiffs Do Not Adequately Allege Securities Act Violations

### A.        Rule 9(b) Applies To The Securities Act Claims

Plaintiffs argue that their Securities Act claims are not subject to Rule 9(b) because the Complaint purports to separate the "Exchange Act Claims" (Compl. p.7) from the "Non-Fraud

---

[27]   *See, e.g.*, *AbbVie*, 2020 WL 5235005, at *3 (corrective disclosure was filing of regulatory complaint); *Washtenaw Cnty. Emps.' Ret. Sys.* v. *Walgreen Co.*, 2019 WL 4597518, at *8 (N.D. Ill. Sept. 23, 2019) (corrective disclosure revealed "the full magnitude or scope [of Walgreens'] earnings shortfall and reasons for the shortfall"); *Boston Ret. Sys.* v. *Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 139-41 (D. Conn. 2021) (seven corrective disclosures included delayed earnings reports, senior departures, a government raid, former employee accusations, and a news report revealing new details about allegedly unethical conduct); *Plumbers & Pipefitters Nat. Pension Fund* v. *Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 620 (S.D.N.Y. 2015) (company delayed SEC filing and subsequently announced a restatement for prior reporting periods); *Silverman* v. *Motorola, Inc.*, 798 F. Supp. 2d 954, 983-84 (N.D. Ill. 2011) (denying summary judgment where plaintiffs "introduced considerable evidence" that misrepresentations "were a cause of Motorola's stock-price declines").

[28]   *See, e.g.*, *Grigsby* v. *BofI Holding, Inc*., 979 F.3d 1198, 1208 (9th Cir. 2020) (news report "did not constitute a corrective disclosure" where contents "derived . . . from publicly available information"); *Meyer*, 710 F.3d at 1198 ("[T]he fact that the sources used in the [disclosure] were already public is fatal to [plaintiffs'] claim of loss causation"); *Teachers' Ret. Sys. Of LA* v. *Hunter*, 477 F.3d 162, 187 (4th Cir. 2007) (no loss causation where facts "had already been disclosed in public filings").

20

Securities Act Claims" (*id.* p. 82). Opp. 40. But "courts generally look beyond such disclaimers to determine whether a Securities Act claim sounds in fraud." *Conagra*, 495 F. Supp. 3d at 636. Where, as here, a "Securities Act claim merely relies on the same alleged misrepresentations that are central to the section 10(b) fraud claim, that claim is likewise grounded in fraud." *Id.* (quotation marks omitted); *Hunter* v. *Elanco Animal Health Inc.*, 2022 WL 3445173, at \*22 (S.D. Ind. Aug. 17, 2022) (where Section 11 claim "employs the exact same factual allegations" as Section 10(b) claim, "we can assume that it sounds in fraud.").[29] Plaintiffs do not dispute that the alleged misstatements for their "non-fraud" claims are the same as their fraud claims. Br. 37. Indeed, the Complaint begins by describing "this case" as part of a "securities fraud pattern." ¶ 3. This Court should treat it as such and apply the fraud standard under Rule 9(b). *See* Br. 37-38.[30] Even if Rule 9(b) does not apply, Plaintiffs still fail to plausibly identify any misstatement or omission. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *supra* 1-11.

### B. Plaintiffs Lack Standing To Pursue Their Securities Act Claims

Plaintiffs argue that they have Section 11 standing based on the vague and disjunctive allegation that "additional named plaintiff Dearborn ***and/or*** members of the Class" acquired shares "in the IPO, the December 2020 Offering, February 2021 Offering, ***and/or*** May 2021 Offering." Opp. 41. Even if this allegation said that one or more Plaintiffs purchased shares "in" each Offering (it does not), such a "formulaic recitation" of the standing requirement would still be insufficient. *Conagra*, 495 F. Supp. 3d at 668-669 (rejecting identical allegation).[31] Where,

---

[29] Plaintiffs' reliance on *In re GoHealth, Inc. Sec. Litig.*, 2022 WL 1016389 (N.D. Ill. Apr. 5, 2022) is misplaced. That case *only* concerned non-fraud claims, and plaintiffs did not "bring a concurrent fraud claim under Section 10(b)." *Id.* at \*3 (distinguishing *Conagra* on this ground).

[30] Despite Plaintiffs' argument to the contrary (Opp. 40 n.22), this statement appears in the introductory "Summary of the Action" section of the Complaint, and the reference to "this case" clearly refers to the entire lawsuit and not the Exchange Act claims (which begin several pages later).

[31] Contrary to Plaintiffs' argument (Opp. 42), the complaint in *Conagra* explicitly alleged that plaintiffs "purchased shares *in* the SPO." 495 F. Supp. 3d at 668-669. Plaintiffs also note that the shares

as here, "a company has issued shares in multiple offerings under more than one registration statement, . . . a greater level of factual specificity" is required. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). Plaintiffs offer no "factual specificity"; indeed, they do not dispute their failure to specifically plead that any Plaintiff purchased shares on *any* SPO dates. Br. 39-40. *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (affirming dismissal where "only one of the named plaintiffs bought on the day of the offering").

Plaintiffs' reliance on cases that involved only a *single* offering—including *Ulta* and *Groupon* (cited Opp. 41)—are inapposite because *all* shares were traceable to that one offering.[32] And Plaintiffs' argument that the Court need not decide this issue now because absent class members "can be shown at a later stage to have standing" (Opp. 41) was rejected in *Conagra* because it is "not consistent with Seventh Circuit precedent." 495 F. Supp. 3d at 672 (collecting cases); *see also In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) ("[I]t is not enough that plaintiffs seek damages only for a class that has standing; at least one *named plaintiff* . . . must have purchased shares traceable to the challenged offering.").

With respect to their Section 12(a)(2) claims, Plaintiffs do not dispute their failure to allege that any Plaintiff purchased shares directly from any Defendant in any Offering. Br. 40. This pleading failure is dispositive. *Conagra*, 495 F. Supp. 3d at 672.[33]

---

issued in each SPO accounted for up to 33% of Oak Street's outstanding stock. But this means that *the majority* of shares were traceable to *different* offerings. *See Doherty* v. *Pivotal Software, Inc.*, 2019 WL 5864581, at *9-10 (N.D. Cal. Nov. 8, 2019) (traceability not plausibly alleged even where *75% of shares* were traceable to offering) (collecting numerous cases rejecting similar percentages).

[32] To the extent *Cent. Laborers' Pension Fund* v. *SIRVA, Inc.*, 2006 WL 2787520, at *4 (N.D. Ill. Sept. 22, 2006) held that conclusory allegations of traceability are sufficient, that case is inconsistent with more recent decisions from this District (*Conagra*) and multiple circuit court decisions (*Century Aluminum* and *Ariad Pharms.*). *Cent. Laborers* also predates the heightened pleading requirements set forth in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007).

[33] Plaintiffs cite two out-of-circuit cases that employed a lower pleading standard (Opp. 42), but those decisions are inconsistent with the weight of authority within and outside this circuit. Br. 40; *see, e.g.*, *Ong* v. *Sears, Roebuck & Co.*, 2005 WL 2284285, at *13 (N.D. Ill. Sept. 14, 2005); *In re UBS*

22

Plaintiffs also fail to show that the Sponsor Defendants or Individual Defendants sold or solicited the sale of securities to Plaintiffs. Br. 40-42. The Complaint does not allege that any Defendant sold shares to any Plaintiff. *See* Opp. 42-43. Nor does it sufficiently allege solicitation. With respect to the Sponsor Defendants, Plaintiffs merely note that they were financially "motivated" to solicit sales. Opp. 43. But the law requires well-pleaded facts describing actual solicitation, which are absent. *See Shah*, 348 F. Supp. 3d at 848 (no solicitation by private equity defendants where plaintiffs did not "adequately ple[a]d that the Private Equity Defendants directly communicated with any plaintiff, encouraging them to purchase any [issuer] stock"); *Rosenweig* v. *Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) ("To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer.").

With respect to the Individual Defendants, Plaintiffs argue only that they "participated in the preparation of, and signed," the Offering Materials. Opp. 43. But "circuit courts have consistently held that mere participation in preparing offering materials, such as by signing the registration statement, is insufficient to constitute 'solicitation'" under Section 12(a)(2). *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *28 (D. Md. Aug. 5, 2021); *Citiline Holdings, Inc.* v. *iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010) (similar, collecting cases).

## III.     Plaintiffs Fail To State A Claim For Control Person Liability

Plaintiffs argue that control person claims need not be pleaded with particularity under Rule 9(b). Opp. 44.[34] But the weight of authority in this District, including this Court's opinions, are to the contrary. *See, e.g.*, *Ross*, 2012 WL 5363431, at *13 (Kennelly, J.); Br. 42. Applying the correct pleading standard, Plaintiffs fail to adequately allege that either Sponsor

---

*AG Sec. Litig.*, 2012 WL 4471265, at *25-26 (S.D.N.Y. Sept. 28, 2012); *TransEnterix Inv. Grp.* v. *TransEnterix, Inc.*, 272 F. Supp. 3d 740, 761 (E.D.N.C. 2017).

[34]   The control person claims fail because Plaintiffs do not plead an underlying violation. Br. 42.

Defendant exercised "general control" or "specific control."

With respect to "general control," Plaintiffs do not dispute that each Sponsor Defendant, individually, held only between 18% and 34% of Oak Street's stock during the Class Period, and had the authority to appoint only one-quarter of Oak Street's Board. Br. 43-44. Plaintiffs ignore the case law rejecting control person claims based on similar, passive allegations of minority share ownership and appointment authority. Instead, they argue that the Sponsor Defendants *collectively* had general control over Oak Street. Opp. 44-45. This argument is inconsistent with Judge Easterbrook's decision in *Fulton County Employees Retirement System* v. *MGIC, Investment Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012), which rejected the notion that minority shareholders who held a combined 92% stake in an issuer were "control persons" absent *particular* allegations that the defendants worked in concert. Here, Plaintiffs do not dispute that the Complaint contains *no factual allegations* describing any collaboration or unified conduct and control by General Atlantic and Newlight. That pleading failure is dispositive. *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676-77 & n.24 (N.D. Tex. 2013) (rejecting "conclusory assertion" that private equity sponsors acted "jointly" for purposes of control).

Plaintiffs half-heartedly try to distinguish *MGIC* by saying that it "only involved allegations of holdings," and point to language in the Registration Statement describing Oak Street as a "controlled company." Opp. 44-45. This distinction misses the mark. The language in the Registration Statement describing Oak Street as a "controlled company" is mandated by the NYSE based on the Sponsor Defendants' *holdings*. Ex. B at 59. Thus, disclosures of "control," as defined by the NYSE, are "largely irrelevant in determining whether the complaint alleges control person liability." *Kosmos Energy*, 955 F. Supp. 2d at 676-677. *MGIC* is exactly on point and requires dismissal as to the Sponsor Defendants.

24

Finally, even if the Complaint adequately pleaded "general control," there are no particular allegations that either Defendant individually exercised "specific control" over Oak Street's public statements. Plaintiffs rely on nonspecific language in the Registration Statement regarding the ability to control "matters submitted to a vote of our shareholders," and to "influence . . . actions requiring shareholder approval." Opp. 44-45; ¶¶ 207-08. But Plaintiffs do not allege that the purported misstatements here were subject to a shareholder vote or approval (which they could not). Plaintiffs allege no facts indicating that any shareholders, including General Atlantic or Newlight, played any role in, or had authority to influence, statements in SEC filings or other public statements at issue in this litigation. Therefore, Plaintiffs' threadbare allegations are inadequate to plead specific control. *See MGIC*, 675 F.3d at 1051 (affirming dismissal of control person claim where plaintiff "does not contend that [the control person] directed [the primary violators] to say what they did."); *Brasher*, 2012 WL 1357699, at *12 (general statement in SEC filings that control defendant "influences [issuer's] affairs significantly" was inadequate to plead that "Defendants were in a position to control the specific conduct that constitutes the alleged primary securities violation"); Br. 45.[35] Accordingly, Plaintiffs' claims as to the Sponsor Defendants must be dismissed.

**CONCLUSION**

The Complaint should be dismissed with prejudice.

---

[35] Plaintiffs rely on *In re GoHealth*, which declined to dismiss Section 15 claims against one shareholder because the fact that it "may have shared control" with another shareholder "does not foreclose Defendant's liability." 2022 WL 1136576, at *3 (N.D. Ill. Apr. 18, 2022). That decision is inconsistent with controlling authority in *MGIC*, which rejected the argument that "either of two equally matched bloc holders [can be] treated as a control party." 675 F.3d at 1051. And, even if allegations that "do[] not foreclose" liability might be enough to satisfy the Rule 8 pleading standard applied in *In re GoHealth*, which involved only non-fraud claims, they are not sufficient to satisfy the heightened pleading standard of Rule 9(b) applicable to the claims here which all sound in fraud.

25

Dated: October 26, 2022

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  /s/ *Andrew J. Ehrlich*

Andrew J. Ehrlich (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  212-373-3000
Facsimile:  212-373-3990
Email: aehrlich@paulweiss.com
Email: dsinnreich@paulweiss.com

-and-

Peter A. Silverman (Il. ARDC # 6196081)
Rebecca Kaiser Fournier (Il. ARDC # 6306280)
**SMITH, GAMBRELL & RUSSELL, LLP**
10 S. LaSalle Street, Suite 3600
Chicago, Illinois  60603
Telephone: 312-264-1004
Facsimile: 312-251-4610
Email: psilverman@sgrlaw.com
Email: rfournier@sgrlaw.com

*Counsel for Defendants Oak Street Health, Inc., Michael Pykosz, Timothy Cook, Director Defendants, and Sponsor Defendants*

Scott D. Musoff (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP**
One Manhattan West
New York, New York  10001
Telephone: (212) 735-7852
Email: scott.musoff@skadden.com

-and-

Marcella L. Lape (Il. ARDC # 6286676)
Clare Lilek (Il. ARDC # 6336261)

26

**SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP**
155 North Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 407-0700
Email: marcie.lape@skadden.com

*Counsel for the Defendants J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, William Blair & Company L.L.C., and Piper Sandler & Co.*

27

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022, I electronically filed the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws with the Clerk of the Court through the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ *Andrew J. Ehrlich*
Andrew J. Ehrlich