# EXHIBIT 3

# (FILED UNDER SEAL)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-00149 |
| Plaintiff, | CLASS ACTION |
| vs. | |
| OAK STREET HEALTH, INC., et al., | |
| Defendants. | |

# EXPERT REBUTTAL REPORT OF CHAD COFFMAN, CFA

**April 22, 2024**

# Table of Contents

**Page**

I.     INTRODUCTION ................................................................................................3

II.    SUMMARY OF OPINIONS ...............................................................................5

III.   THE CRITICAL DIFFERENCE BETWEEN THE IPO OFFER PRICE AND SECONDARY MARKET PRICES ON THE IPO DATE .......................................6

IV.   THERE IS NO RELIABLE EVIDENCE TO CONCLUDE THAT THE SECONDARY MARKET PRICE ON THE IPO DATE WAS NOT EFFICIENT BASED UPON MR. ANG'S REFERENCE TO THE THEORETICAL LITERATURE ...................................7

V.    MR. ANG'S REFERENCES TO THE QUIET PERIOD LITERATURE FARE NO BETTER .............................................................................................................9

VI.   THERE IS NO AUTHORITY FOR MR. ANG'S CLAIM THAT I SHOULD HAVE SEPARATELY ANALYZED THE QUIET PERIOD AND EVEN WHEN MR. ANG DOES SEPARATELY ANALYZE THE QUIET PERIOD, IT DOES NOT CONTRADICT MY FINDING OF AN EFFICIENT MARKET ......................................12

2

## I.  INTRODUCTION

1.  My name is Chad Coffman.  I am the President of Peregrine Economics, a Chicago-based firm that specializes in the application of economics, finance, statistics, and valuation principles to questions that arise in a variety of contexts, including, as here, litigation.[1]

2.  On December 15, 2023, I submitted an expert report in this matter (my "Report" or the "Coffman Report") in which I opined that the market for Oak Street Health Common Stock[2] was efficient throughout the Class Period[3] and that damages in this action can be calculated on a class-wide basis using a common methodology consistent with Lead Plaintiffs' theory of liability.[4]  Following the submission of my Report, counsel for Lead Plaintiffs provided me with the February 20, 2024 Expert Report of Clifford S. Ang, CFA, AVIA (the "Ang Report")[5] and the Expert Report of Jack R. Wiener (the "Wiener Report") filed in connection with Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (the "Memorandum" or "Defendants' Memorandum").[6]  I understand from Plaintiffs' counsel that the Wiener Report relates to whether

---

[1] Since the time of my Prior Reports, I co-founded Peregrine Economics and terminated my employment with Global Economics Group.  Prior to January 1, 2024, Global Economics Group was being compensated for my work on this matter and for work performed by members of my staff acting under my supervision and direction.  My agreement with counsel for Plaintiffs transferred to Peregrine Economics on January 1, 2024, and the terms of that agreement otherwise remain unchanged.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings given to them in my Report.

[3] The Class Period is from August 6, 2020 through November 8, 2021, inclusive.  Coffman Report ¶ 1.

[4] Coffman Report ¶¶ 6 – 7, 88.

[5] I understand that Mr. Ang also filed a Corrected Expert Report on April 3, 2024.  His corrections do not affect my analyses or responses within this report.

[6] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel filed February 20, 2024, *in Reginald T. Allison, Individually and on Behalf of All Others Similarly Situated, vs. Oak Street Health, Inc., et al.,* Case 1:22-cv-00149, United States District Court Northern District of Illinois.  Plaintiffs have also provided me with the Corrected version of Mr. Ang's report that was served to them by Defendants on April 3, 2024.  I

shares of Oak Street Health Common Stock can be traced to a particular registration statement. I have not been asked to respond to the Wiener Report or Defendants' Memorandum. I have been asked by counsel for Lead Plaintiffs to review and respond to the Ang Report.

3. My responses to the Ang Report are set forth in this document (my "Rebuttal Report").

4. In formulating my opinions set forth in this Rebuttal Report, I have relied upon the analysis already described in my Report, as well as my knowledge, experience, and formal training in economics, finance, and statistics in addition to the allegations and facts set forth in this lawsuit. In performing the analyses set forth in this Rebuttal Report, I have also considered the Ang Report, the Ang Deposition,[7] and other relevant materials and information. The materials that I relied upon and considered in reaching my opinions in this Rebuttal Report are identified in **Appendix A**, which are in addition to the materials that I identified in Appendix A of my Report.

5. My qualifications and rate of compensation for work in this matter were identified in my Report and I do not repeat them here. I have attached an updated version of my curriculum vitae as **Appendix B**.

6. I reserve the right to amend this Rebuttal Report to reflect new information that becomes available to me, including from the discovery process and/or future rulings from the Court.

---

understand from Plaintiffs that Defendants filed a Corrected Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel on April 8, 2024, which Plaintiffs have provided to me.

[7] Counsel for Plaintiffs provided me with a copy of the transcription of the deposition of Clifford S. Ang, CFA, AVIA in connection with this matter, dated April 4, 2024 (the "Ang Deposition").

## II.    SUMMARY OF OPINIONS

7.    In summary, nothing in the Ang Report changes my opinions that the market for Oak Street Health Common Stock was efficient throughout the Class Period and that economic damages in this matter can be calculated on a class-wide basis using a common methodology.

8.    Mr. Ang does not dispute or even address my opinion that there is a methodology by which damages can be calculated on a class-wide basis consistent with Plaintiffs' theory of liability in this matter.  Specifically, Mr. Ang does not dispute that the "out-of-pocket" methodology is a well-accepted measure of damages in Section 10(b) securities cases which states damages are equal to the artificial inflation per share at the time of purchase less the artificial inflation per share at the time of sale, and Mr. Ang does not dispute that Section 11 damages can be calculated formulaically based on a statutory formula, using a common methodology for all class members.[8]

9.    For approximately 95% of the Class Period, Mr. Ang does not offer any criticism or purported evidence to call into question my opinion that Oak Street Health Common Stock traded in an efficient market.  The purported criticisms of my market efficiency opinion relate only to the first 17 trading days (25 calendar days) of the Class Period, from August 6, 2020 through August 30, 2020 and do not address the remaining 301 trading days from August 31, 2020 through November 8, 2021.[9]

10.    None of Mr. Ang's purported evidence or references to the academic literature support that the secondary market for Oak Street Health Common Stock was inefficient on August 6, 2020 (the "IPO Date") or during the Quiet Period from August 6, 2020 through August

---

[8] Coffman Report ¶¶ 78, 84 – 85.

[9] Ang Report ¶¶ 9, 13.

30, 2020, nor is Mr. Ang opining as such. Therefore, Mr. Ang's arguments expressed in his Report do not alter my original analyses and I stand by my original analyses and opinions.[10]

### III. THE CRITICAL DIFFERENCE BETWEEN THE IPO OFFER PRICE AND SECONDARY MARKET PRICES ON THE IPO DATE

11. Mr. Ang begins by citing to academic literature that suggests the offering prices of IPOs – i.e. the price at which IPO investors purchase directly from the underwriters, are not solely determined by market forces, are not derived from an open market, and may not be efficient.[11] While there is competing evidence in the literature on this subject,[12] I take no position on whether the IPO offer price for Oak Street Health was or was not efficient. I understand that IPO purchasers have claims under Section 11, where reliance is not an element of the claim and there is a statutory damages formula.

12. The starting point of the market efficiency opinion and analyses I offered in my Report is directed at the start of secondary market trading once Oak Street Health began trading on the NYSE on August 6, 2020.[13] Mr. Ang notes that the first closing price on the secondary market after the August 6, 2020 IPO was $40 per share, 90% higher than the IPO offer price of

---

[10] While Mr. Ang claims that he is "not conceding that Oak Street Health's stock was efficient throughout" the Class Period, it is worth noting that in his Report and Deposition he does not dispute my finding of market efficiency and is not providing any opinion that my findings are wrong. Ang Report ¶ 13; Ang Deposition 38:4 – 6, 40:19 – 43:14.

[11] Ang Report ¶ 18.

[12] See Robert G. Newkirk, "Sufficient Efficiency: Fraud on the Market in the Initial Public Offering Context," *The University of Chicago Law Review*, 1991, Section III ("…many IPO markets are sufficiently information efficient due to the activity of underwriters and other professionals…the sufficient efficiency approach is consistent with the purposes of the securities laws.").

[13] Coffman Deposition 168:8 – 18 ("…I was calling upon my overall knowledge and experience in these areas when evaluating market efficiency, and, you know, I'm obviously opining about market efficiency with respect to the secondary market trading on the exchanges, and took into account all of my knowledge and understanding and experience in doing that. I'm generally aware of literature that might call into question the market efficiency of the IPO prices themselves in the initial offering but not the secondary market trading of.").

$21 per share.[14] Indeed, it is this often observed substantial price difference that has led some academics to claim that IPOs are "underpriced" and that IPO offer prices may be inefficient.[15] While the academic literature proposes a series of reasons why such systemic "underpricing" may be rational and serve a number of motivations, it does not provide any evidence that the secondary market prices are inefficient.[16] Indeed, Mr. Ang describes how the often large, positive first day return (i.e. the percentage difference between the IPO offer price and the closing price on the IPO Date) can be "predictable" to some degree and does not necessarily reflect an efficient IPO offer price, but makes no claim in his Report or Deposition[17] about the efficiency of the secondary market price.[18] In other words, the predictability of positive first day returns and the observation of a large return for Oak Street Health on the IPO Date can be driven by potentially inefficient offer prices, but this does not provide evidence that the secondary market price was inefficient on the IPO Date or at any other time during the Class Period.

## IV. THERE IS NO RELIABLE EVIDENCE TO CONCLUDE THAT THE SECONDARY MARKET PRICE ON THE IPO DATE WAS NOT EFFICIENT BASED UPON MR. ANG'S REFERENCE TO THE THEORETICAL LITERATURE

13. Mr. Ang then turns to the claim that secondary market prices on the IPO Date "may" be inefficient.[19] I note that Mr. Ang offers no affirmative opinion that the market price on

---

[14] Ang Report ¶ 25.

[15] Ang Report ¶ 18.

[16] Ang Report ¶ 18, footnotes 18 – 22.

[17] Ang Deposition 55:10 – 57:7 ███████████████████████████████ ████████████████████████████████████ █████████████ ).

[18] See Ang Report ¶ 18 (Specifying only that "[t]his literature indicates that the first-day return following an IPO is not based on an efficient IPO offer price.").

[19] Ang Report ¶ 19.

the IPO Date was inefficient.[20]  Instead, he points to evidence in the economic literature that is far less direct than the IPO issue price evidence.  For example, the literature Mr. Ang cites to talks about how, under certain circumstances, short selling restrictions *might* theoretically impact market efficiency on the IPO Date or shortly after.[21]  The theory underlying the literature cited by Mr. Ang is that overly optimistic investors are not sufficiently counterbalanced by short sellers and therefore the market price can theoretically exceed fundamental value immediately following an IPO.[22]  The evidence in the academic literature cited by Mr. Ang to support such overpricing on the IPO Date is the tendency to observe negative returns from the IPO Date through the first year after the IPO (Houge, et al.) or over the period from 10 trading days before to 10 trading days after the lock-up ends (Patatoukas, et al.).[23]  I find that whether you look over either of those periods, or from the IPO Date to 10 days after the end of the lock-up period, Oak Street Health *outperformed* the market and industry index.  See **Table 1** below:

---

[20] Ang Deposition 47:20 – 21 ██████████████████████████████████
███████████████).

[21] Ang Report ¶ 19.

[22] See Ang Report ¶ 19; T. Houge, T. Loughran, G. Suchanek, and X. Yan, 2001, "Divergence of Opinion, Uncertainty, and the Quality of Initial Public Offerings," *Financial Management,* Vol. 30, 5-23, at abstract, p. 12 ("The results support Miller (1977), who suggests that greater divergence of opinion or uncertainly about an IPO can generate short-run overvaluation and long-run underperformance.").

[23] T. Houge, T. Loughran, G. Suchanek, and X. Yan, 2001, "Divergence of Opinion, Uncertainty, and the Quality of Initial Public Offerings," *Financial Management,* Vol. 30, 5-23, at pp. 15 – 16; P.N. Patatoukas, R.G. Sloan, and A.Y. Wang, 2019, "Short-Sales Constraints and Aftermarket IPO Pricing," Working Paper, at p. 4.

**Table 1**
**Returns of Oak Street Health Common Stock, the S&P 500 Total Return Index and the S&P Health Care Services Select Industry Total Return Index Over Various Periods**

| Entity | Closing Price on IPO Date (8/6/2020) | Closing Price 10 Trading Days Before End of Lock-Up (1/19/2021) | Closing Price 10 Trading Days After End of Lock-Up (2/17/2021) | Closing Price 1 Year After IPO Date (8/6/2021) | Returns from 10 Trading Days Before End of Lock-Up to 10 Trading Days After Lock-Up | Returns from the IPO Date to 10 Trading Days After Lock-Up | Returns from the IPO Date to 1 Year Post-IPO |
|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] = [C] / [B] -1 | [F] = [C] / [A] -1 | [G] = [D] / [A] -1 |
| Oak Street Health Common Stock | $40.00 | $53.72 | $61.21 | $63.94 | 13.94% | 53.03% | 59.85% |
| S&P 500 Total Return Index | $6,870.86 | $7,853.47 | $8,137.88 | $9,243.03 | 3.62% | 18.44% | 34.53% |
| S&P Health Care Services Select Industry Total Return Index | $12,745.64 | $17,102.17 | $17,601.59 | $18,263.42 | 2.92% | 38.10% | 43.29% |

Sources: S&P Capital IQ (see Coffman Report, Appendix A), Oak Street Health SEC Form S-1/A filed on August 5, 2020, Ang Report ¶ 19, T. Houge, T. Loughran, G. Suchanek, and X. Yan, 2001, "Divergence of Opinion, Uncertainty, and the Quality of Initial Public Offerings," Financial Management, Vol. 30, 5-23, at p. 15, and P.N. Patatoukas, R.G. Sloan, and A.Y. Wang, 2019, "Short-Sales Constraints and Aftermarket IPO Pricing," Working Paper, at p. 4 (see Ang Report, Appendix B).

14. To summarize, Mr. Ang fails to empirically analyze whether the evidence in this specific matter is in any way consistent with the economic literature he cites to. Instead of underperforming relative to relevant benchmarks, Oak Street Health outperformed. In other words, empirical evidence in this case is inconsistent with what one would expect to observe if short selling restrictions had inefficiently inflated the price of Oak Street Common Stock relative to fundamental value. Even if Oak Street Health had underperformed in a manner consistent with the hypotheses posed by the literature cited by Mr. Ang, it would not be determinative proof of anything. But the complete absence of consistent economic evidence, along with Mr. Ang's reference to inconclusive literature and inability to provide any affirmative opinion, renders his argument and opinion unpersuasive.

## V.    MR. ANG'S REFERENCES TO THE QUIET PERIOD LITERATURE FARE NO BETTER

15. Mr. Ang also claims Oak Street Health Common Stock "may" not be efficient during the 17 trading day Quiet Period immediately following the IPO by making reference to

typical quiet period rules restricting the publication of certain analyst reports and financial forecasts, and select academic literature.[24]  Specifically, Mr. Ang claims that "during the quiet period, there is a restriction on the dissemination of information to investors, which may impede market efficiency," which he then claims is measured in academic literature by "a predictable stock price jump immediately prior to and on the day of the expiration of the quiet period."[25] Regarding the literature, Mr. Ang argues:

> The academic literature provides evidence of stock price inefficiency during quiet periods as evidenced by a predictable stock price jump immediately prior to and on the day of the expiration of the quiet period.  For example, Bradley, et al. (2003) show that "firms [with analyst coverage initiation at the expiration of the quiet period] experience a five-day abnormal return of 4.1 percent versus 0.1 percent for firms with no coverage.  The abnormal returns are concentrated in the days just before the quiet period expires."  The authors also state that "[a]s with previous studies of IPO lockup expirations, *these results raise a significant market efficiency issue,* since the end of the quiet period is known well in advance with complete certainty[.]"[26]

16.    Again, Mr. Ang is not opining that Oak Street Health Common Stock traded inefficiently during the Quiet Period.  Instead, he is selectively citing literature that merely suggests that the Quiet Period "may" exhibit market inefficiency, in part by repeating arguments regarding short selling constraints which I have addressed above in **Section IV**.[27]  However, it is

---

[24] Ang Report ¶¶ 16, 20 – 21.

[25] Ang Report ¶¶ 20 – 21.

[26] Ang Report ¶ 21 [emphasis in original].

[27] Ang Report ¶¶ 16, 22; Ang Deposition 35:13 – 16, 53:19 – 54:6.  Additionally, ███████████████

See Ang Deposition 58:9 – 59:1, 64:22 – 65:15.

worth noting that there is evidence of short selling in Oak Street Health Common Stock during the Quiet Period.[28]

17.    Moreover, the specific empirical evidence in the literature Mr. Ang relied on to claim a quiet period "may" be inefficient (that stock prices tend to increase around the end of the quiet period) is again absent from this specific case.[29]  **Exhibit 1** shows the daily abnormal returns leading up to the end of the Quiet Period and there is no evidence of a statistically significant increase in Oak Street Health stock leading up to, or at the end of the Quiet Period. [30] Not only is there a lack of empirical evidence in this matter consistent with the literature he cites, in fact, Mr. Ang fails to consider contradictory subsequent literature by the same authors.[31]  For example, Bradley et al. update their findings as follows:

> We extend the work of [Bradley, et al. (2003)] by investigating quiet periods for IPOs that occur between January 2001 and mid-July 2002.  […] We find that the same pattern of analyst behavior exists in this period.  That is, approximately 90 percent of IPOs receive analyst coverage immediately when the quiet period expires, with multiple analysts initiating simultaneously, and the vast majority of the recommendations are favorable.

---

[28] According to Bloomberg, the first date Oak Street Health reported short interest was August 14, 2020 with short interest of 384,129 shares.

[29] Ang Report ¶ 21.  Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  See Ang Deposition 68:4 – 9.

[30] On September 2, 2020, two days after the Quiet Period ends, there is a statistically significant positive return at the 95% confidence level which coincides with Oak Street Health issuing a press release after market hours on September 1, 2020.  The release announced a collaboration with Walmart in Texas which was reported on positively by analysts and in the news, therefore explaining the positive return on September 2, 2020.  See "Oak Street Health Announces Collaboration with Walmart to Bring Affordable, High-Quality Healthcare to Texas," *Business Wire,* September 1, 2020, 4:05 PM ET; "Oak Street Health Opening Clinics in 3 Texas Walmarts," *Dow Jones Institutional News*, September 1, 2020, 4:52 PM ET ("After hours…Oak Street's shares were trading higher."); "Walmart Collaboration in TX Highlights Another Opportunity for Growth," *J.P. Morgan*, September 1, 2020; "Galloping Out Of The Gates – Oak Street Announces A Collaboration With Walmart," *Truist Securities*, September 1, 2020.

[31] Ang Deposition 129:18 – 130:4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



).

> ***However, we do not find positive abnormal returns for these firms around the quiet period expiration date. Nor do we find a strong relationship between the number of analysts initiating and the abnormal return.*** […]
> Our results suggest that while profitable trading strategy may have been possible in the late 1990s and into 2000 [the period analyzed in their previous article**], *this anomaly may have disappeared*.**[32]

18.   Mr. Ang's references to the contradictory literature are unpersuasive, especially in light of the lack of empirical evidence in this case that would be consistent with his theoretical arguments.  Therefore, neither Mr. Ang, the literature, nor the relevant economic evidence specific to this case support that the Quiet Period was inefficient.

## VI.   THERE IS NO AUTHORITY FOR MR. ANG'S CLAIM THAT I SHOULD HAVE SEPARATELY ANALYZED THE QUIET PERIOD AND EVEN WHEN MR. ANG DOES SEPARATELY ANALYZE THE QUIET PERIOD, IT DOES NOT CONTRADICT MY FINDING OF AN EFFICIENT MARKET

19.   Mr. Ang cites to no relevant authority suggesting that the Quiet Period (or the IPO Date specifically) should be analyzed separately when evaluating market efficiency over a putative Class Period.  I have opined about market efficiency in other cases involving class periods immediately following an IPO where I did not separately analyze the Quiet Period and this issue was not raised.[33]  As described in my Report, there are no bright-line dispositive tests for market efficiency.[34]  The nature of the *Cammer*, *Krogman*, and other factors analyzed in my Report are to review economic evidence over a substantial period of time to evaluate whether the conditions supporting market efficiency are present.  The idea that one can perform an efficiency

---

[32] D.J. Bradley, B.D. Jordan, J. Ritter, and J.G. Wolf, "The IPO Quiet Period Revisited," *Journal of Investment Management*, Vol. 2, No. 3, 2004, pp. 1-11 at p. 3.

[33] Order filed July 30, 2019, in *ATUL SINGH DEORA, et al., v. NANTHEALTH, INC., et al.*, Case No. 2:17-cv-01825-TJH-MRW, United States District Court Central District of California, Western Division; Order Concerning Class Certifications filed July 14, 2017, in *Dr. Joseph F. Kasper, individually and on behalf of all others similarly situated, v. AAC Holdings, Inc., Jerrod N. Menz, Michael T, Cartwright, Andrew W. McWilliams and Kirk R. Manz*, No. 3:15-cv-00923, United States District Court Middle District of Tennessee, Nashville Division.

[34] Coffman Report ¶ 22.

analysis on a single day (i.e. the IPO Date) is a fallacy. Separately analyzing the *Cammer* factors for the IPO date alone does not make any logical sense.

20. I understand that the *Cammer* and *Krogman* factors are designed to look over longer periods of time to evaluate evidence related to market efficiency, not short periods which are a subset of a relevant case-specific class period. For example, *Cammer* states:

> "As previously noted, one of the most convincing ways to demonstrate efficiency would be to illustrate, ***over time***, a cause and effect relationship between company disclosures and resulting movements in stock price."[35]

> "…there should be a presumption…that certain markets are developed and efficient for virtually all the securities traded there: the New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System…the most practical -- and therefore probably the best -- base for the presumption is ***average trading volume over a period of several months surrounding the time of the alleged violations***."[36]

21. I considered each day within the relevant Class Period applying a methodology for my Report which follows the economic literature and is a standard approach accepted by courts for purposes of establishing market efficiency. There are frequent periods where public companies go substantially more than 17 trading days (the length of the Quiet Period) without making public announcements. Indeed, public companies are required to disclose earnings quarterly, or only four times per year. Mr. Ang asks the court to ignore the supporting evidence from 95% of the relevant Class Period and ignores that taken together the factors I analyzed support a finding of market efficiency throughout the entire Class Period encompassing the Quiet Period and IPO Date.

---

[35] *Cammer, v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).

[36] *Cammer, v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).

22.     Given the absence of a logical argument or a citation to a relevant authority from Mr. Ang for analyzing the IPO Date or Quiet Period separately, I see no reason to deviate from my standard and well supported methodology in this case.[37] Further, Mr. Ang's purported "analysis" of certain factors during the Quiet Period does not support his implication that the market was less efficient during the Quiet Period and on the IPO Date. Indeed, taken together his analyses provide further support for my finding of market efficiency for Oak Street Health Common Stock over the Class Period.

23.     In my Report, I empirically analyzed eleven factors related to market efficiency over the relevant Class Period. Specifically, my Report demonstrated that: (1) the average weekly trading volume of Oak Street Health Common Stock during the Class Period was 5.72 million shares, which represents 2.38% turnover per week (or 7.04% turnover of tradeable shares per week), exceeding the *Cammer* threshold and comparing favorably against other exchange-traded securities (*Cammer* Factor 1);[38] (2) a large number of securities analysts followed Oak Street Health (at least 128 reports from 20 different firms during the Class Period), and there was also substantial press coverage among other sources of publicly available information regarding the Company (*Cammer* Factor 2);[39] (3) Oak Street Health Common Stock traded on the NYSE,

---

[37] I testified to this as well. See Coffman Deposition 93:11 – 94:3 ("I understood unique to mean is there something about this case that's fundamentally different than anything else I've seen in any other case, and I don't think there is. Now, there are -- you know, every case has some of its own unique features, but nothing in the *Cammer* factor analyses or the market efficiency analyses that I ran is there anything in this case that makes it outside the bounds of what I -- what I've seen in prior cases. So I mean, if you have a specific thing in mind I'm happy to try to answer. I don't recall seeing anything, you know, about this market or its structure or any of the data I'm observing that puts it outside the normal bounds of what I would expect to see in this type of matter.").

[38] Coffman Report ¶¶ 26 – 30.

[39] Coffman Report ¶¶ 31 – 36.

thus satisfying the "market maker" factor (*Cammer* Factor 3);[40, 41] (4) Oak Street Health filed a Form S-3ASR after the Class Period, and while Oak Street Health was not S-3 eligible for a portion of the Class Period, this was purely due to time elapsed since their IPO and does not weigh against market efficiency (*Cammer* Factor 4);[42] and (5) there was a clear cause-and-effect relationship between new Company-specific information and the market price of Oak Street Health Common Stock during the Class Period (*Cammer* Factor 5).[43] The analysis in my Report also demonstrates that (6) Oak Street Health Common Stock had a market capitalization that was higher than the majority of NYSE and NASDAQ stocks during the Class Period, a factor associated with larger institutional ownership and greater analyst coverage, and is therefore correlated with a finding of market efficiency (*Krogman* Factor 1);[44] and (7) Oak Street Health Common Stock also had an average bid-ask spread below the mean, and after the 6th month of trading, below the median bid-ask spread of a random sample of 100 common stocks trading on the NYSE and NASDAQ (*Krogman* Factor 2).[45] My Report further shows that (8) on average, non-insiders held over 32.07% of all outstanding shares of Oak Street Health Common Stock (*Krogman* Factor 3)[46] and (9) Oak Street Health Common Stock was traded by sophisticated traders, with an average of 73.68% of its public float held by 454 institutions during the Class

---

[40] Coffman Report ¶¶ 37 – 41.

[41] Notably, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ See Coffman Report ¶¶ 37 – 41, Ang Deposition 124:14 – 125:2.

[42] Coffman Report ¶¶ 42 – 44.

[43] Coffman Report ¶¶ 45 – 64.

[44] Coffman Report ¶¶ 65 – 68.

[45] Coffman Report ¶¶ 69 – 70.

[46] Coffman Report Exhibit 1.

Period (Additional Factor 1).[47]  Finally, (10) there was no evidence of autocorrelation for Oak Street Health Common Stock during the Class Period (Additional Factor 2);[48] and (11) there was considerable options trading during the Class Period, which is associated with the underlying security trading in an efficient market (Additional Factor 3).[49]  Taken together, these metrics provide strong economic evidence that support my opinion that Oak Street Health Common Stock traded in an efficient market during the Class Period.  Nonetheless, I address Mr. Ang's analyses related to the Quiet Period below.[50]

24.     *Cammer* Factor 1 is still supported even when looking over just the Quiet Period. Mr. Ang's finding of an average weekly trading volume of 1.69% still easily meets the threshold cited by *Cammer* for a "substantial presumption" of market efficiency.[51]  Moreover, Mr. Ang appears to have not properly computed the average weekly trading volume.  Using the method described in my report, I find average weekly trading volume of 1.89%.[52]  Either way, this level of trading is supportive of market efficiency.[53]  Mr. Ang's analysis of weekly trading volume

---

[47] Coffman Report ¶¶ 71 – 72.

[48] Coffman Report ¶¶ 73 – 76.

[49] Coffman Report ¶ 77.

[50] Mr. Ang does not analyze all of the factors I presented in my Report.  I understand that if he has not mentioned a factor within the body of his report, he does not dispute it and so I do not include it below. See Ang Deposition 126:11 – 127:5 ██████████████████████████████ ██████████████████████████ ).

[51] I note that Mr. Ang reports that the median (as opposed to the average, which is the metric that the *Cammer* factor focuses on) weekly trading volume during the 17 trading day window of the Quiet Period is slightly below 1%, however it is not surprising to observe somewhat lower volume on a specific shorter time period that has a restriction on certain types of news.  This is precisely why it is important when evaluating market efficiency factors to look over longer periods of time, including days with and without news.  See Ang Report Appendix C.

[52] 0.38% * 5 trading days in a week = 1.89%.  See Coffman Report Exhibit 3.

[53] Mr. Ang makes reference to a specific case (Northfield Labs) where the Court apparently focused on the daily average trading volume of 0.75% and found that insufficient for market efficiency.  It is not clear why the Court was focused on that particular metric in that particular case, but it would equate to

over the Quiet Period therefore does not change or weaken the evidence supporting an efficient market for Oak Street Health Common Stock, even during the Quiet Period.

25. Regarding *Cammer* Factor 2, I have already discussed above that there is a lack of evidence of significant change in price when analysts issued reports at end of the Quiet Period which is also inconsistent with a change in market efficiency at that point (See **Section V**). Mr. Ang also mischaracterizes my Report by implying that only "extensive" coverage by analysts is suggestive of market efficiency.[54] However, in my Report, I am only describing my assessment of the volume of analyst reports published during the Class Period, *not* describing a specific level of analyst coverage required to establish market efficiency.[55] Mr. Ang similarly does not provide an opinion on a threshold of analyst coverage required.[56] I state in my Report that "[a]nalyst coverage *can* be important evidence of efficiency," and in my Deposition I note that a lack of Analyst coverage following an IPO is unsurprising.[57] I documented extensive involvement of research analysts covering Oak Street Health during the Class Period, which begins immediately following the end of the Quiet Period.[58] Even though there is limited analyst coverage during the Quiet Period, Mr. Ang points to a regulatory requirement that "generally prohibit[s] firms and

---

suggesting an average weekly trading volume of 3.75% (0.75% * 5 = 3.75%) would be insufficient to support market efficiency. I am not aware of any other court or academic that has applied that as a relevant metric or threshold. See Ang Report ¶ 34.

[54] Ang Report ¶ 36.

[55] See Coffman Report ¶ 33 ("The extensive coverage of Oak Street Health by securities analysts supports the conclusion that Oak Street Health Common Stock traded in an efficient market throughout the Class Period.").

[56] Ang Deposition 97:9 – 11 ████████████████████████████████
████████████████████████████████████

[57] Coffman Report ¶ 32; Coffman Deposition 214:5 – 7 ("But would it be surprising to not see a lot of analyst coverage in the first few weeks after an IPO, that would not surprise me at all.").

[58] Coffman Report ¶ 33. On August 31, 2020, the first market date after the Quiet Period, there were at least 8 analyst reports, giving further proof that the difference in analyst coverage was only due to short-term regulatory requirements. See Coffman Report Backup Materials, "Analyst Report Exhibit.xlsx."

underwriters from publishing opinions" during the Quiet Period which further explains the lack of analyst coverage.[59] There is no evidence related to this factor that supports the finding of an inefficient market during the Quiet Period.

26. In addition, Mr. Ang's identification of news articles during the Quiet Period supports that information was available about Oak Street Health in the news.[60] Mr. Ang acknowledges additional sources of information for investors in his Deposition as well.[61] Finally, even after the Quiet Period, the Company only reports earnings on a quarterly basis and

---

[59] See D.J. Bradley, B.D. Jordan, and J.R. Ritter, 2003, "The Quiet Period Goes out with a Bang," *The Journal of Finance,* Vol. 58, 1-36: "COMPANIES PARTICIPATING in an initial public offering (IPO) face numerous regulatory restrictions that prohibit certain activities while the company is 'in registration.' After completion of an IPO, a firm is still considered to be in registration for an additional period of time. During this time, 25 days during our sample period which is termed the post-IPO 'quiet' period, firms may make statements of fact regarding business developments and may respond to inquiries from analysts and shareholders regarding factual matters. However, U.S. Securities and Exchange Commission (SEC) regulations generally prohibit firms and their underwriters from publishing opinions concerning valuation and from making forward-looking statements regarding earnings, revenues, and similar items. The logic behind the SEC's quiet period regulations is that all material information should be contained in the prospectus."; and "However, [quiet period] is used to refer to the period of time surrounding the filing of a registration statement during which an issuer of securities must ensure that its offering-related communications comply with the federal securities laws." See "Quiet Period," *Investor.gov*, available at https://www.investor.gov/introduction-investing/investing-basics/glossary/quiet-period.

[60] Mr. Ang finds 23 news articles during the Quiet Period. Based on the methodology I describe in my Report and my backup previously provided, I find 28 news articles during the Quiet Period. See Ang Report ¶ 37; Ang Report Backup Materials, "Factiva 2020.08.06- 2020.08.30.jpg"; Coffman Report Backup Materials, "OSH News Import.xlsx" at tab "News."

[61] Ang Deposition 97:12 – 98:24 .

18

there are other 17 trading day periods without analyst coverage.[62]  The fact that there is not

substantial analyst coverage over the first 17 days of trading does not imply an unusual lack of

information or that the market is inefficient.  Even so, the relative difference in analyst coverage

between the Quiet Period and the Class Period is easily explained and only due to short-term

regulatory requirements, and therefore does not disturb my opinion.

27.    Regarding *Cammer* Factor 5, cause and effect, my Report provided substantial

academic support that "the release of company earnings information often (but not necessarily

always) causes a significant change in investors' beliefs regarding the value of a security."[63]

Additionally, earnings announcements are an objective set of news to identify and test.  As Mr.

Ang points out, by definition, there are no events to test during Quiet Period.[64]  However, it is

not unusual to observe many 17 trading day periods with no earnings information because firms

are only required to report on a quarterly basis.  There is no evidence provided by Mr. Ang to

suggest the cause-and-effect analysis I provided is inapplicable to the Quiet Period.[65]  Therefore,

Mr. Ang's comments about cause-and-effect during the Quiet Period do not disturb my opinion.

28.    Mr. Ang finds an average bid-ask spread of 0.477% during the Quiet Period which

he notes is higher than the median percentage bid-ask spread for my sample of 100 common

stocks trading on the NYSE and NASDAQ, and notes that August 2020 has the highest average

---

[62] For example, I am not aware of any analyst reports from June 9, 2021 through July 2, 2021 (an 18 trading day period).

[63] Coffman Report ¶ 56.

[64] Ang Report ¶ 39.

[65] Indeed, the Quiet Period is not completely devoid of news articles.  I identify 28 news articles during the Quiet Period (including 2 press releases from the Company), and based on the methodology described in my Report I treat 5 out of 17 trading days in the Quiet Period as no news days that were explicitly included in my *Cammer* 5 analysis. See Coffman Report Exhibit 8; Coffman Report Backup Materials, "OSH News Import.xlsx" at tab "News"; "Oak Street Health Opens New Center in Cleveland," *Oak St. Health Press Releases*, August 24, 2020; "Oak Street Health Announces Community Testing Days for COVID-19," *Oak St. Health Press Releases*, August 26, 2020.

monthly bid-ask spread compared to the rest of the Class Period.[66] Mr. Ang doesn't point out anything that I don't already show in Exhibit 11 of my Report. In other words, the first bar on Exhibit 11 of my Report is something I already specifically considered and compared against the benchmarks in my Report.[67] I specifically noted the higher bid-ask spread for the first 6 months of the Class Period and show that the bid-ask spread over the Quiet Period is still lower than the average of 0.63% for my sample of 100 randomly selected common stocks trading on the NYSE and NASDAQ.[68] Again, Mr. Ang does not argue that this level of bid-ask spread would cause Oak Street Health Common stock to trade inefficiently and there is no reason to believe that to be the case. As I explained in my Deposition, "bid-ask spread can be a measure of liquidity" and "continuity and liquidity are matters of degree … theoretically, you can have a developed market that has, at least at periods of time, lower liquidity."[69] Therefore, Mr. Ang's analysis of bid-ask spread during the Quiet Period does not disturb my opinion.

29. Option trading is not a determinative factor of market efficiency. Mr. Ang notes that there are no options traded during the Quiet Period which indicates that this factor does not support market efficiency during the Quiet Period, and notes that I acknowledged this in my Deposition.[70] As I testified and reiterate here, while the lack of options trading during the Quiet Period does not provide *additional* support for market efficiency during the Quiet Period as it does for other portions of the Class Period, it does not suggest the market was inefficient.[71]

---

[66] Ang Report ¶¶ 40 – 41.

[67] Coffman Report Exhibit 11.

[68] Coffman Report ¶ 70, Exhibit 1.

[69] Coffman Deposition 112:20 – 113:2, 113:12 – 13.

[70] Ang Report ¶ 42.

[71] Coffman Deposition 199:12 – 22 ("I believe each of [the eleven efficiency] factors helped support that the market was efficient, yes.").

30. Finally, Mr. Ang's critiques of my analysis of insider and institutional holdings based on quarterly data are flawed. Mr. Ang argues that he cannot apply this data to analyze the Quiet Period, however this is simply because of a lack of earlier data not a lack of institutional holdings.[72, 73] Mr. Ang does not dispute that institutional data are quarterly, therefore the data for the Quiet Period would be reported at the end of the quarter, and presents no alternative data I should have used, nor does he criticize my use of this data for the remainder of the Class Period.[74] Thus, Mr. Ang's analysis of Oak Street Health institutional and insider holdings during the Quiet Period does not disturb my opinion.

31. Unstated by Mr. Ang is that there is also no evidence of statistically significant autocorrelation during the Quiet Period.[75] Thus, he fails to present alternative analyses that further support efficiency where he could have presented them for the Quiet Period. This simple fact further undermines Ang's already limited conclusions regarding my finding of efficiency for Oak Street Health Common Stock.

32. In making his claims, Mr. Ang does not argue that his analysis of any factors demonstrates that the market for Oak Street Health Common Stock was *inefficient*. He is merely pointing out that each factor is not definitive proof of market efficiency, but in doing so he is ignoring that these factors *do* add supporting evidence to the conclusion that the market was efficient. The *Cammer, Krogman* and Additional factors signify that the predicates for market efficiency are present, and these predicates are present during the Class Period that encompasses

---

[72] Ang Report ¶ 43.

[73] I note as much in my Deposition when I state that the end of third quarter would be the first date on which there would be reported holdings after the IPO. Coffman Deposition 276:5 – 9.

[74] Ang Deposition 111:9 – 17.

[75] My results for autocorrelation over the Quiet Period yield an estimate of -0.15 which is not statistically significant with a t-stat of -0.57.

the Quiet Period. Mr. Ang's attempts to demonstrate that the Quiet Period and/or IPO Date are somehow sufficiently different than the Class Period altogether such that I should have analyzed each independently are flawed and unconvincing. Therefore, Mr. Ang's claims related to the IPO Date and Quiet Period do not disturb my opinion that Oak Street Health Common Stock traded in an efficient market throughout the Class Period.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Chad Coffman

Executed on April 22, 2024.

22

# Exhibit 1
# Event Study for Oak Street Health Common Stock for the Five Trading Days Surrounding the End of the Quiet Period

| # | Date | Day | OSH Common Stock | | | Single Day Event Study Results [1] | | | | Event |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Closing Price | Volume (millions) | Raw Return | Abn. Return | Abn. Dollar Change | t-Stat | Sig Level [2], [3] | |
| 1) | 08/27/20 | Thu | $44.56 | 0.3 | 0.54% | -0.47% | -$0.21 | -0.14 | | |
| 2) | 08/28/20 | Fri | $45.41 | 0.3 | 1.91% | 1.03% | $0.46 | 0.30 | | |
| 3) | 08/31/20 | Mon | $44.63 | 0.4 | -1.72% | -1.52% | -$0.69 | -0.45 | | Quiet Period Ends |
| 4) | 09/01/20 | Tue | $46.06 | 0.4 | 3.20% | 2.81% | $1.26 | 0.83 | | |
| 5) | 09/02/20 | Wed | $50.50 | 0.7 | 9.64% | 7.00% | $3.23 | 2.08 | ** | Oak Street Press Release[4] |

Sources: Complaint, S&P Capital IQ, and Factiva (see Coffman Report, Appendix A), Ang Report and D.J. Bradley, B.D. Jordan, and J.R. Ritter, 2003, "The Quiet Period Goes out with a Bang," *The Journal of Finance*, Vol. 58, 1-36 (see Ang Report, Appendix B).

Notes:

(1) The results are based on a fixed regression. The regression model controls for a broad market index (S&P 500 Total Return Index) and an industry index (the S&P Health Care Services Select Industry Total Return Index). The returns of the S&P Health Care Services Select Industry Total Return Index are net of the S&P 500 Total Return Index. Earnings announcements and the alleged corrective disclosure date (11/9/2021) have been removed from estimation.

(2) I also tested a multi-day event study window to evaluate whether the movement over this 5-day window was statistically significant and found that it was not.

(3) *** Denotes statistical significance at the 99% confidence level or greater, ** denotes statistical significance at the 95% confidence level or greater, and * denotes statistical significance at the 90% confidence level or greater.

(4) Oak Street Health issues a press release titled Oak Street Health Announces Collaboration with Walmart to Bring Affordable, High-Quality Healthcare to Texas ("Oak Street Health Announces Collaboration with Walmart to Bring Affordable, High-Quality Healthcare to Texas," *Business Wire*, September 1, 2020, 4:05 PM ET.).

# Appendix A
# Documents Considered

**Prior Reports and Depositions in this Matter**

- Market Efficiency Report of Chad Coffman, CFA, dated December 15, 2023, including all data and all documents included in the Appendices of that report (see Coffman Report, Appendix A).
- Deposition of Chad Coffman, dated January 23, 2024.
- Expert Report of Clifford S. Ang, dated February 20, 2024, including all data and documents included in that report (see Ang Report, Appendix B).
- Corrected Expert Report of Clifford S. Ang, dated April 3, 2024, including all data and documents included in that report (see Ang Corrected Report, Appendix B).
- Deposition of Clifford S. Ang, dated April 4, 2024.

**Court Documents**

- Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel filed February 20, 2024, *in Reginald T. Allison, Individually and on Behalf of All Others Similarly Situated, vs. Oak Street Health, Inc., et al.,* Case 1:22-cv-00149, United States District Court Northern District of Illinois.
- Defendants' Corrected Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel filed April 8, 2024, *in Reginald T. Allison, Individually and on Behalf of All Others Similarly Situated, vs. Oak Street Health, Inc., et al.,* Case 1:22-cv-00149, United States District Court Northern District of Illinois.

**Other Securities Cases**

- *Cammer, v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).
- Order filed July 30, 2019, in *ATUL SINGH DEORA, et al., v. NANTHEALTH, INC., et al.,* Case No. 2:17-cv-01825-TJH-MRW, United States District Court Central District of California, Western Division.
- Order Concerning Class Certification filed July 14, 2017, in *Dr. Joseph F. Kasper, individually and on behalf of all others similarly situated, v. AAC Holdings, Inc., Jerrod N. Menz, Michael T. Cartwright, Andrew W. McWilliams and Kirk R. Manz,* No. 3:15-cv-00923, United States District Court Middle District of Tennessee, Nashville Division.

**Security Data**

- Oak Street Health, Inc. Common Stock short interest data as of August 14, 2020 was obtained from Bloomberg.

**News**

- "Oak Street Health Announces Collaboration with Walmart to Bring Affordable, High-Quality Healthcare to Texas," *Business Wire,* September 1, 2020, 4:05 PM ET.
- "Oak Street Health Opening Clinics in 3 Texas Walmarts," *Dow Jones Institutional News*, September 1, 2020, 4:52 PM ET.
- "Oak Street Health Opens New Center in Cleveland," *Oak St. Health Press Releases*, August 24, 2020.
- "Oak Street Health Announces Community Testing Days for COVID-19," *Oak St. Health Press Releases*, August 26, 2020.

**Analyst Reports**

- "Walmart Collaboration in TX Highlights Another Opportunity for Growth," *J.P. Morgan*, September 1, 2020.
- "Galloping Out Of The Gates – Oak Street Announces A Collaboration With Walmart," *Truist Securities*, September 1, 2020.

**Academic Literature**

- Robert G. Newkirk, "Sufficient Efficiency: Fraud on the Market in the Initial Public Offering Context," *The University of Chicago Law Review*, 1991.
- D.J. Bradley, B.D. Jordan, J. Ritter, and J.G. Wolf, "The IPO Quiet Period Revisited," *Journal of Investment Management*, Vol. 2, No. 3, 2004, pp. 1-11.

**Other**

- "Quiet Period," *Investor.gov*, available at https://www.investor.gov/introduction-investing/investing-basics/glossary/quiet-period.

# APPENDIX B

## CHAD W. COFFMAN, MPP, CFA

Peregrine Economics
125 South Wacker Drive
Suite 2610
Chicago, Illinois 60606
Mobile:    (815) 382-0092
Email:    ccoffman@peregrine-econ.com

## EMPLOYMENT:

**Peregrine Economics**
President (2024 - Current)

Peregrine Economics provides independent economic and financial analysis. Peregrine applies big picture thinking and proven economic tools to build a clear narrative around complex problems. Practice areas include: Data Science, General Damages, Labor & Employment, Regulatory Economics, and Securities Valuation.

**Global Economics Group, LLC**
President (2008 - 2023)

**Market Platform Dynamics, LLC**
Chief Financial Officer & Chief Operating Officer (2010 – 2023)

**Chicago Partners, LLC**
Principal (2007 – 2008)
Vice President (2003 – 2007)
Director (2000 – 2003)
Senior Associate (1999 – 2000)
Associate (1997 – 1999)
Research Analyst (1995 – 1997)

## EDUCATION:

**CFA**    Chartered Financial Analyst, 2003

**M.P.P.**    University of Chicago, 1997
Masters of Public Policy, with a focus in economics including coursework in Finance, Labor Economics, Econometrics, and Regulation

**B.A.**    Knox College, 1995
Economics, Magna Cum Laude
Graduated with College Honors for Paper entitled "Increasing Efficiency in Water Supply Pricing:  Using Galesburg, Illinois as a Case Study"

Dean's List Every Term
Phi Beta Kappa

**PROFESSIONAL EXPERIENCE:**

Securities, Valuation, and Market Manipulation Cases:

- Testifying Expert in numerous high-profile class action securities matters.

- Expert consultant for the American Stock Exchange (AMEX) where I evaluated issues related to multiple listing of options. Performed econometric analysis of various measures of option spread using tens of millions of trades.

**Testimony in the last four years:**

- Testifying expert in Kevin L. Dougherty, Individually and on Behalf of All Others Similarly Situated, v. Esperion Therapeutics, Inc., et al., Defendants, No. 2:16-cv-10089-AJT-RSW, United States District Court for the Eastern Michigan of Michigan. Filed expert report June 6, 2019. Deposition July 26, 2019. Filed rebuttal reply report October 7, 2019. Filed expert report May 15, 2020. Deposition July 31, 2020.

- Testifying expert in Eric Weiner, Individually and on Behalf of All Others Similarly Situated, vs. Tivity Health, Inc., Donato Tramuto, Glenn Hargreaves and, Adam Holland, Defendants, Case No.: 3:17-cv-01469 United States District Court for the Middle District of Tennessee. Filed expert report July 1, 2019. Deposition September 4, 2019. Filed rebuttal reply report December 20, 2019. Filed expert report July 30, 2020. Filed rebuttal reply report September 30, 2020. Deposition October 22, 2020.

- Testifying expert in Peace Officers' Annuity and Benefit Fund of Georgia, Individually and On Behalf of All Others Similarly Situated, and Jacksonville Police and Fire Pension Fund, Individually and On Behalf of All Others Similarly Situated vs. DaVita, Inc. et al., No. 1:17-cv-00304-WJM-NRN, United States District Court for the District of Colorado. Filed expert report January 31, 2020. Deposition May 27, 2020.

- Testifying Expert in In Re Avon Securities Litigation, No. 19 Civ. 01420- CM, United States District Court for the Southern District of New York. Filed expert report February 13, 2020.

- Testifying Expert in In Re Allergan Generic Drug Pricing Securities Litigation, Civil Action No. 2:16-9449 (KSH) (CLW), United States District Court for the District of New Jersey. Filed expert report March 20, 2020. Deposition July 16, 2020. Filed expert reply report November 25, 2020.

- Expert declaration in Martin Cohen, Individually and On Behalf of All Others Similarly Situated, v. Luckin Coffee Inc., Jenny Zhiya Qian, and Reinout Hendrik Schakel, Case no. 1:20-cv-01293-LJL, United States District Court for the Southern District of New York. Filed declaration May 13, 2020.

- Testifying Expert in <u>In RE Navient Corporation Securities Litigation, No. 1:17-cv-08373-RBK-AMD, United States District Court of New Jersey.</u> Filed expert report May 15, 2020. Deposition July 23, 2020. Filed declaration August 21, 2020. Filed expert report April 16, 2021. Deposition June 3, 2021.

- Testifying Expert in <u>Yellowdog Partners, LP, Individually and on Behalf of All Others Similarly Situated, vs. CURO Group Holdings Corp.</u>, *et al*., <u>Civil Action No. 2:18-cv-02662-JWL-KGG, United States District Court for the District of Kansas, Kansas City.</u> Filed expert report May 18, 2020.

- Testifying Expert in <u>Julian Keippel, Individually and On Behalf of All Others Similarly Situated, vs. Health Insurance Innovations, Inc., Gavin Southwell, and Michael D. Hershberger, No. 8:19-CV-00421-WFJ-CPT, United States District Court Middle District of Florida Tampa Division.</u> Filed expert report May 21, 2020. Deposition June 15, 2020.

- Testifying Expert in <u>In Re Perrigo Company plc Securities Litigation, No: 1:19-cv-00070-DLC, United States District Court for the Southern District of New York.</u> Filed expert report July 10, 2020. Deposition August 4, 2020. Filed expert report October 6, 2020. Filed expert rebuttal reply report December 4, 2020. Deposition March 4, 2021.

- Testifying Expert in <u>Plymouth County Retirement System, Individually and On Behalf of All Others Similarly Situated, vs. GTT Communications, Inc., Richard D. Calder, Jr., Chris Mckee, Michael Sicoli, And Gina Nomellini, Case No. 1:19-cv-00982-CMH-MSN, United States District Court for the Eastern District of Virginia Alexandria Division.</u> Filed expert report August 7, 2020. Filed expert report September 25, 2020.

- Testifying Expert in <u>Thomas W. Luczak, Individually and On Behalf of All Others Similarly Situated, vs. National Beverage Corp., Nick A. Caporella, and George R. Bracken, Case No. 0:18-cv-61631-KMM, United States District Court for the Southern District of Florida.</u> Filed expert report September 25, 2020. Deposition November 5, 2020.

- Expert declaration in <u>In re: PG&E Corporation – and – Pacific Gas and Electric Company Debtors, Case No. 19-30088 (DM), United States Bankruptcy Court for the Northern District of California, San Francisco Division.</u> Filed declaration September 28, 2020.

- Testifying Expert in <u>Oklahoma Police Pension Fund and Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Teligent, Inc. and Jason Grenfell-Gardner, Defendants, Case No. 1:19-cv-03354-VM, United States District Court for the Southern District of New York</u>. Filed expert report September 30, 2020. Deposition March 11, 2021.

- Testifying Expert in <u>John Utesch, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Lannett Company, Inc., Arthur P. Bedrosian, and Martin P. Galvan, Defendants, Civil Action No. 2:16-cv-05932-WB, United States District Court for the Eastern District of Pennsylvania</u>. Filed expert report October 1, 2020. Deposition December 10, 2020. Filed expert rebuttal report on May 13, 2021. Hearing testimony July 27, 2021.

- Testifying Expert in <u>City of Warren Police and Fire Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. World Wrestling Entertainment, Inc., Vincent K. McMahon, George A. Barrios and Michelle D. Wilson, Defendants, Civil Action No. 1:20-cv-02031-JSR, United States District Court for the Southern District of New York.</u> Filed expert report on October 6, 2020. Deposition October 14, 2020.

- Testifying Expert in <u>Employees' Retirement System of the Puerto Rico Electric Power Authority, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Conduent Inc., Ashok Vemuri, and Brian Webb-Walsh, Defendants, Case No. 2:19-cv-08237-SDW, United States District Court for the District of New Jersey.</u> Filed expert report on December 7, 2020. Deposition December 22, 2020.

- Testifying Expert in <u>The Police Retirement System of St. Louis, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. Granite Construction Incorporated, James H. Roberts, Jigisha Desai, and Laurel J. Krzeminski, Defendants, Case No. 3:19-cv-04744-WHA, United States District Court for the Northern District of California.</u> Filed expert report on November 25, 2020. Filed declaration re: Plan of Allocation May 25, 2021.

- Testifying Expert in <u>Plumbers & Pipefitters National Pension Fund and Juan Francisco Nieves, as Trustee of the Gonzalez Coronado Trust, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. Kevin Davis and Amir Rosenthal (Performance Sports Group Ltd.), Defendants, Case No.: 1:16-CV-3591-GHW, United States District Court for the Southern District of New York.</u> Filed expert report on December 18, 2020. Deposition February 5, 2021. Filed expert rebuttal report on April 6, 2021. Filed declaration re: Plan of Allocation January 21, 2022.

- Testifying Expert in <u>Mayuko Holwill, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. AbbVie Inc., Richard A. Gonzalez, and William J. Chase, Defendants, Case No. 1:18-cv-6790, United States District Court for the Northern District of Illinois.</u> Filed expert report on February 1, 2021. Filed expert rebuttal report on September 20, 2021. Filed expert report on July 6, 2023. Filed expert rebuttal report on February 6, 2024.

- Testifying Expert in <u>Oklahoma Firefighters Pension and Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Newell Brands Inc., Michael B. Polk, John K. Stipancich, Scott H. Garber, Bradford R. Turner, Michael T. Cowhig, Thomas E. Clarke, Kevin C. Conroy, Scott S. Cowen, Domenico De Sole, Cynthia A. Montgomery, Christopher D. O'Leary, Jose Ignacio Perez-Lizaur, Steven J. Strobel, Michael A. Todman, and Raymond G. Viault, Defendants, Case No: HUD-L-3492-18, Superior Court of New Jersey Law Division (Hudson County).</u> Filed expert report on May 3, 2021. Filed expert rebuttal report on June 15, 2021. Deposition July 21, 2021. Filed expert supplemental reply report on February 4, 2022. Deposition March 15, 2022.

- Testifying Expert in <u>Carmignac Gestion, S.A., Mason Capital L.P., et al., Pentwater Equity Opportunities Master Fund LTD., et al., First Manhattan Co., Nationwide Mutual Funds, on behalf of its series Nationwide S&P 500 Index Fund, et. al., WCM Alternatives: Event-Driven Fund, et al., Hudson Bay Master Fund LTD., et al., Schwab Capital Trust on behalf of its series Schwab</u>

S&P 500 Index Fund, et al., Sculptor Master Fund, LTD. f/k/a OZ Master Fund, Ltd., et al., Aberdeen Canada Funds – Global Equity Fund, a series of Aberdeen Canada Funds, et al., Discovery Global Citizens Master Fund, LTD., et al., York Capital Management, L.P., et al., Burlington Loan Management DAC, Universities Superannuation Scheme LTD., Principal Funds, Inc., et al., Kuwait Investment Authority et al., BlackRock Global Allocation Fund Inc., et al., Plaintiffs, vs. Perrigo Company PLC, et al, Defendants, Civil Action No(s): 17-10467 (MCA) (LDW), 18-1119 (MCA) (LDW), 18-1121 (MCA) (LDW), 18-2291 (MCA) (LDW), 18-15382 (MCA) (LDW), 18-16204 (MCA) (LDW), 18-16206 (MCA) (LDW), 19-3973 (MCA) (LDW), 19-4900 (MCA) (LDW), 19-6560 (MCA) (LDW), 19-21502 (MCA) (LDW), 19-21732 (MCA) (LDW), 20-1484 (MCA) (LDW), 20-2262 (MCA) (LDW), 20-2410 (MCA) (LDW), 20-3431 (MCA) (LDW), 20-4748 (MCA) (LDW), United States District Court for the District of New Jersey. Filed expert report on June 23, 2021. Filed expert report on September 29, 2021. Deposition October 26, 2021.

- Testifying Expert in In Re Nielsen Holdings PLC Securities Litigation, Case No. 18-CV-07143-JMF, United States District Court Southern District of New York. Filed expert report on July 14, 2021. Deposition September 30, 2021. Filed expert report December 17, 2021.

- Testifying Expert in Allegheny County Employees Retirement System et al. v. Energy Transfer LP et al., Case No. 2:20-cv-00200-GAM, United States District Court for the Eastern District of Pennsylvania. Filed expert report on September 17, 2021. Deposition November 18, 2021. Filed expert rebuttal report on April 22, 2022. Filed expert report on September 15, 2023. Deposition December 13, 2023.

- Testifying Expert in Julia Junge and Richard Junge et al. v. Geron Corporation et al., Case No. 3:20-cv-00547-WHA, United States District Court for the Northern District of California, San Francisco Division. Filed expert report on September 30, 2021. Deposition October 15, 2021. Filed expert rebuttal report on November 4, 2021.

- Testifying Expert in In Re MINDBODY, Inc. Securities Litigation, Civil Action No. 1:19-cv-08331-VEC, United States District Court Southern District of New York. Filed expert report on October 15, 2021.

- Testifying Expert in Plymouth County Retirement System and Oklahoma Police Pension and Retirement System, Individually and On Behalf of All Others Similarly Situated, v. Evolent Health, Inc., Frank Williams, Nicholas McGrane, Seth Blackley, Christie Spencer, and Steven Wigginton, Case No. 1:19-cv-01031, United States District Court Eastern District of Virginia, Alexandria Division. Filed expert report on October 19, 2021. Filed expert report on April 8, 2022. Deposition May 9, 2022. Filed expert report on May 27, 2022. Deposition June 22, 2022.

- Testifying Expert in In re Uniti Group Inc. Securities Litigation, Case No. 4:19-cv-00756-BSM, United States District Court Eastern District of Arkansas, Central Division. Filed expert report on October 25, 2021. Deposition December 6, 2021. Filed declaration re: expert report on January 24, 2022. Filed expert rebuttal report on February 22, 2022.

- Testifying Expert in <u>David Kanefsky, Individually and On Behalf of All Others Similarly Situated, v. Honeywell International Inc., Darius Adamczyk, and Thomas A. Szlosek, Civ. No. 2:18-15536-WJM, United States District Court for the District of New Jersey</u>. Filed expert report on November 1, 2021.

- Testifying expert in <u>In Re Pareteum Securities Litigation, No. 1:19-cv-09767-AKH-GWG, United States District Court for the Southern District of New York</u>. Filed expert report December 1, 2021.

- Expert declaration in <u>Arkansas Teacher Retirement System and John A. Prokop, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, vs. OSI Systems, Inc., Deepak Chopra, Alan Edrick, and Ajay Mehra, Defendants, Case No. 17-cv-08841-VAP-SKx, United States District Court for the Central District of California, Western Division</u>. Filed declaration re: Plan of Allocation and aggregate damages December 10, 2021.

- Testifying Expert in <u>Boston Retirement System, Individually and On Behalf of All Others Similarly Situated v. Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, Vikas Sinha, David Brennan, David J. Anderson, Ludwig Hantson, and Carsten Thiel, Defendants, Civ. No. 3:16-cv-2127(AWT), United States District Court for the District of Connecticut</u>. Filed expert report December 15, 2021. Deposition March 8, 2022. Filed expert rebuttal report June 17, 2022.

- Testifying Expert <u>In Re Aphria, Inc. Securities Litigation, No. 1:18-cv-11376-GBD, United States District Court Southern District of New York.</u> Filed declaration January 28, 2022 re: class certification. Filed expert report January 28, 2022. Deposition May 19, 2022.

- Testifying Expert in <u>Discovery Global Citizens Master Fund, Ltd., et al., MSD Torchlight Partners, L.P., et al., Incline Global Master LP., et al., Valic Company I, et al., Okumus Opportunistic Value Fund, Ltd., The Boeing Company Employee Retirement Plans Master Trust, et al., Första Ap-Fonden, et al., GMO Trust, et al., Hound Partners Offshore Fund, LP, et al., Colonial First State Investments Limited As Responsible Entity For Commonwealth Global Shares Fund 1, et al., Bharat Ahuja, et al., Brahman Partners II, L.P., et al., The Prudential Insurance Company Of America, et al., 2012 Dynasty UC LLC, et al., BlackRock Global Allocation Fund, Inc., et al., Northwestern Mutual Life Insurance Co., et al., Bahaa Aly, et al., James M. Templeton, et al., GIC Private LTD., et al., USAA MUTUAL FUNDS TRUST On Behalf Of Its Series USAA Aggressive Growth Fund, et al., Maverick Select Fund, Ltd., et al., Plaintiffs, vs. Valeant Pharmaceuticals International, Inc. et al., Defendants, Civil Action No(s): 3:16-cv-07321-MAS-LHG, 3:16-cv-07324-MAS-LHG, 3:16-cv-07494, 3:16-cv-07496, 3:17-cv-06513-MAS-LHG, 3:17-cv-07636-MAS-LHG, 3:17-cv-12088-MAS-LHG, 3:18-cv-00089, 3:18-cv-08705-MAS-LHG, 3:18-cv-00383-MAS-LHG, 3:18-cv-00846-MAS-LHG, 3:18-00893, 3:18-cv-01223-MAS-LHG, 3:18-cv-08595-MAS-LHG, 3:18-cv-00343-MAS-LHG, 3:18-cv-15286-MAS-LHG, 3:18-cv-17393, 3:20-cv-05478, 3:20-cv-07460-MAS-LHG, 3:20-cv-07462-MAS-LHG, 3:20-02190-MAS-LHG, United States District Court for the District of New Jersey.</u> Filed expert report February 2, 2022. Filed expert rebuttal report on May 9, 2022. Deposition June 3, 2022. Filed declaration September 28, 2022 (related only to 3:20-cv-02190-MAS-LHG). Filed declaration November 10, 2022.

- Testifying Expert in <u>Roei Azar, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Grubhub Inc., et al., Defendants, Case No. 1:19-cv-07665, United States District</u>

Court Northern District of Illinois Eastern Division. Filed expert report June 1, 2022. Deposition July 14, 2022.

- Testifying Expert in In Re Peabody Energy Corp. Securities Litigation, Civil Action No. 1:20-cv-08024-PKC, United States District Court Southern District of New York. Filed expert report July 15, 2022.

- Testifying Expert in BlackRock Asset Management Canada Limited, et al., Plaintiffs, v. Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.), et al. Defendants, Nos.: 500-11-054155-185, 500-17-103749-183, and California State Teachers' Retirement System, Plaintiff, v. Bausch Health Companies Inc. (f/k/a Valeant Pharmaceuticals International, Inc.), et al., Defendants, Nos.: 500-11-055722-181, 500-11-055722-181, Canada Superior Court, Province of Québec, District of Montreal. Filed expert report September 30, 2022. Filed expert rebuttal report on July 10, 2023.

- Testifying Expert in Sheet Metal Workers National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund, individually and as Lead Plaintiffs on behalf of all others similarly situated, and International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware, individually and as Named Plaintiff, on behalf of all others similarly situated, Plaintiffs v. Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl, Defendants, No. 3:20-cv-04737-RS, Northern District of California, San Francisco Division. Filed expert report October 28, 2022. Deposition December 21, 2022. Filed expert rebuttal report on March 21, 2023.

- Testifying Expert in In Re: Maxar Technologies, Inc. Shareholder Litigation, Lead Case No.:19CV357070, Superior Court of the State of California, County of Santa Clara. Filed expert report December 12, 2022.

- Testifying Expert in In Re FibroGen Inc., Securities Litigation, Case No. 3:21-cv-02623-EMC, United States District Court Northern District of California. Filed expert report January 27, 2023. Deposition April 4, 2023.

- Testifying Expert in Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago, individually and on behalf of all others similarly situated, Plaintiffs, v. Pluralsight, Inc.; Aaron Skonnard; and James Budge, Defendants, Case No. 1:19-cv-00128, United States District Court for the District of Utah. Filed expert report March 3, 2023.

- Testifying Expert in Sothinathan Sinnathurai, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Novavax, Inc., Stanley C. Erck, Gregory F. Covino, John J. Trizzino, and Gregory M. Glenn, Defendants, Case 8:21-cv-02910-TDC, United States District Court for the District of Maryland. Filed expert report March 16, 2023. Deposition September 14, 2023. Filed expert rebuttal report November 13, 2023.

- Testifying Expert in Meysam Moradpour, Individually and On Behalf of All Others Similarly Situated, v. Velodyne Lidar, Inc., Anand Gopalan, Andrew Hamer, James A. Graf, Michael Dee,

and Joseph B. Culkin, Case No. 3:21-CV-01486-SI, United States District Court Northern District of California San Francisco Division. Filed expert report March 20, 2023.

- Testifying Expert in In Re Boston Scientific Corporation Securities Litigation, Case No. 1:20-cv-12225-DPW, United States District Court District of Massachusetts. Filed expert report April 21, 2023. Filed declaration June 22, 2023.

- Testifying Expert in In Re Okta, Inc. Securities Litigation, Case 3:22-cv-02990-SI, United States District Court Northern District of California. Filed expert report August 18, 2023.

- Testifying Expert in Carl Shupe and Matthew Pearlman, Individually and on Behalf of All Others Similarly Situated, vs. Rocket Companies, Inc., Jay D. Farner, Julie R. Booth, Robert Dean Walters, Daniel Gilbert, and Rock Holdings Inc., Civ. No. 1:21-cv-11528, United States District Court Eastern District of Michigan, Southern Division. Filed expert report August 30, 2023. Deposition November 8, 2023. Filed expert rebuttal report on January 26, 2024. Filed expert report February 12, 2024. Deposition February 22, 2024. Filed expert rebuttal report on March 8, 2024. Filed expert report April 5, 2024.

- Testifying Expert in Richard R. Weston, Individually and on Behalf of All Others Similarly Situated, Plaintiff v. DocuSign, Inc., Daniel D. Springer, Michael J. Sheridan, Cynthia Gaylor, and Loren Alhadeff, Defendants, Case No. 3:22-cv-0084-WHO, United States District Court, Northern District of California, San Francisco Division. Filed expert report September 15, 2023. Deposition January 4, 2024. Filed expert rebuttal report on April 17, 2024.

- Testifying Expert in John Brazinsky, Individually and on behalf of all other similarly situated, Plaintiff, vs. AT&T Inc., Randall L. Stephenson, John T. Stankey, Pascal Desroches, and John Stephens, Defendants, Case No. 2:23-cv-04064-KM-JBC, United States District Court for the District of New Jersey. Filed declaration October 23, 2023.

- Testifying Expert in In Re Concho Resources Inc. Securities Litigation, No. 4:21-cv-02473, United States District Court Southern District of Texas, Houston Division. Filed expert report December 7, 2023.

- Testifying Expert in Reginald T Allison, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Oak Street Health, Inc., et al., Defendants, Case No. 1:22-cv-00149, United States District Court, Northern District of Illinois. Filed expert report December 15, 2023. Deposition January 23, 2024.

- Testifying Expert in Boston Retirement System, et al., Plaintiff, v. Uber Technologies, Inc., et al., Defendants, Case No. 3:19-cv-06361, United States District Court, Northern District of California. Filed expert report February 1, 2024. Filed expert rebuttal report March 12, 2024. Deposition April 12, 2024.

- Testifying Expert in In Re Plantronics, Inc. Securities Litigation, Case No. 4:19-cv-07481-JST, United States District Court Northern District of California Oakland Division. Filed expert report February 8, 2024.

- Testifying Expert in <u>Robert Ciarciello, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Bioventus Inc., Kenneth M. Reali, Mark L. Singleton, Gergory O. Anglum, and Susan M. Stalnecker, Defendants, Case No. 1:23-cv-00032-CCE-JEP, United States District Court Middle District of North Carolina.</u> Filed expert report March 7, 2024. Filed expert report March 27, 2024. Deposition April 8, 2024.

<u>Experience in Labor Economics and Discrimination-Related Cases:</u>

- Expert consultant in various class action matters regarding race, age, or gender discrimination.

<u>Selected Experience in Antitrust, General Damages, and Other Matters:</u>

- Expert consultant in high-profile antitrust matters in the computer and credit card industries.

- Served as neutral expert for mediator (Judge Daniel Weinstein) in allocating a settlement in an antitrust matter.

**PUBLICATIONS:**

Coffman, Chad and Mary Gregson, "Railroad Construction and Land Value." *Journal of Real Estate and Finance*, 16:2, pp. 191-204 (1998).

Coffman, Chad, Tara O'Neil, and Brian Starr, Ed. Richard D. Kahlenberg, "An Empirical Analysis of the Impact of Legacy Preferences on Alumni Giving at Top Universities," *Affirmative Action for the Rich: Legacy Preferences in College Admissions*; pp. 101-121 (2010).

**PROFESSIONAL AFFILIATIONS:**

Associate Member CFA Society of Chicago
Associate Member CFA Institute
Phi Beta Kappa

**PERSONAL ACTIVITIES:**

- Pro bono consulting for Cook County State's Attorney's Office.
- Pro bono consulting for Cook County Health & Hospitals System – Developed method for hospital to assess real-time patient level costs to assist in improving care for Cook County residents and prepare for implementation of Affordable Care Act.

- Pro bono consulting for Chicago Park District to analyze economic impact of park district assets and assist in developing strategic framework for decision-making.
- Volunteer for Chicago Food Depository.
- Volunteer for Habitat for Humanity ReStore.