UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OAK STREET HEALTH, INC., ET AL., et al., <br><br> Defendants. | CASE NO. 1:22-CV-00149 <br><br> <u>CLASS ACTION</u> <br><br> JUDGE JEFFREY I. CUMMINGS |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ..............................................................................................................2

        A.      Procedural History ..............................................................................................2

        B.      The Terms of the Settlement ...............................................................................4

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............4

        A.      The Settlement Readily Satisfies the Standards for Approval ................................5

                1.      Plaintiffs and Co-Lead Counsel Have Adequately Represented the
                        Settlement Class........................................................................................6

                2.      The Settlement Is the Result of Good Faith Arm's-Length
                        Negotiations .............................................................................................6

                3.      The Proposed Settlement Amount Is Adequate, Particularly in Light of
                        the Costs, Risks, and Delay of Trial and Appeal .......................................7

                4.      The Remaining Settlement Terms Are Reasonable and Adequate, and
                        the Settlement Treats Class Members Equitably ......................................10

        B.      The Settlement Class Satisfies the Standards for Class Certification....................11

                1.      The Settlement Class Satisfies Rule 23(a) .................................................11

                2.      The Settlement Class Satisfies Rule 23(b)(3) ............................................13

IV.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .........................................14

V.      CONCLUSION...............................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abrams v. Van Kampen Funds, Inc.*,
   2002 WL 1989401 (N.D. Ill. Aug. 27, 2002) ...........................................................................12

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2011 WL 3290302 (N.D. Ill. July 26, 2011)...............................................................................5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................................................11, 14

*Azar v. Grubhub Inc.*,
   No. 1:19-cv-07665 (N.D. Ill. Oct. 14, 2022) ...........................................................................15

*Flynn v. Exelon Corp., et al.*,
   No. 1:19-cv-08209 (N.D. Ill. June 9, 2023)..............................................................................15

*In re Allstate Corp. Sec. Litig.*,
   2020 WL 7490280 (N.D. Ill. Dec. 21, 2020)............................................................................14

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010)........................................................................................8

*In re Bank One Sec. Litig./First Chi. S'holder Claims*,
   2002 WL 989454 (N.D. Ill. May 14, 2002).........................................................................13, 14

*In re Mylan N.V. Sec. Litig.*,
   2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) ...........................................................................7

*In re TikTok, Inc. Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ......................................................................................6

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .....................................................................................................4

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ...................................................................................................12

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) .....................................................................................................9

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   144 S.Ct. 885 (2024).................................................................................................................8

*Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
    No. 16-cv-10632 (N.D. Ill. Nov. 17, 2021) ........................................................................10

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........................................................................8

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ......................................................................................11, 14

*Silverman v. Motorola, Inc.*,
    259 F.R.D. 163 (N.D. Ill. 2009) ..........................................................................................13

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ..............................................................................................12

*Tatz v. Nanophase Techs. Corp.*,
    2003 WL 21372471 (N.D. Ill. June 13, 2003) .....................................................................12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ....................................................................................5, 6, 7, 8

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
    §77k............................................................................................................................2, 7, 9
    §77l ......................................................................................................................................2
    §77o.....................................................................................................................................2
    §78j(b)......................................................................................................................2, 8, 12
    §78t(a) ..........................................................................................................................2, 8
    §78u-4(a)(4) ........................................................................................................................2
    §78u-4(a)(7) ......................................................................................................................15

28 U.S.C.
    §1715, *et seq*. ....................................................................................................................15

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................................11
    Rule 23(a)..............................................................................................................11, 13, 14
    Rule 23(a)(1)......................................................................................................................12
    Rule 23(a)(2)......................................................................................................................12
    Rule 23(a)(3)......................................................................................................................12
    Rule 23(a)(4)......................................................................................................................13
    Rule 23(b)(3)......................................................................................................11, 13, 14
    Rule 23(e)............................................................................................................................4, 5
    Rule 23(e)(1)......................................................................................................................14
    Rule 23(e)(1)(B).................................................................................................................5, 14
    Rule 23(e)(1)(B)(ii)............................................................................................................11
    Rule 23(e)(2)...............................................................................................................5, 10, 11

Rule 23(e)(2)(A) ..............................................................................................................5, 6
Rule 23(e)(2)(B)...............................................................................................................5, 6
Rule 23(e)(2)(C)................................................................................................................10
Rule 23(e)(2)(C)(i)...........................................................................................................5, 7
Rule 23(e)(2)(D) .............................................................................................................5, 10

17 C.F.R.
   §240.10b-5 ........................................................................................................................2

## SECONDARY AUTHORITIES

David F. Herr,
   *Manual for Complex Litigation* (4th ed. 2019).........................................................................5

## I.    INTRODUCTION

Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Boston Retirement System (collectively, "Lead Plaintiffs"), and additionally named plaintiff City of Dearborn Police & Fire Revised Retirement System (together with Lead Plaintiffs, "Plaintiffs"), submit this memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement of the above-captioned litigation on the terms set forth in the Stipulation and Agreement of Settlement, dated August 13, 2024 (the "Stipulation"), filed herewith.[1]

The Settlement provides for the payment of $60,000,000 for the benefit of the Settlement Class.  This significant recovery is the result of more than two years of hard-fought litigation, which included a thorough investigation, drafting the operative complaint, briefing Defendants' motion to dismiss, serving and negotiating discovery requests, obtaining and analyzing more than 3.5 million pages of documents, negotiating discovery and privilege disputes in numerous meet and confers, consulting with experts, and engaging in well-informed, arm's-length negotiations between and among highly-experienced counsel.  Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and therefore ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order").  The Notice Order will: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class; (iii) approve the form and method for providing notice to the Settlement Class; and (iv) schedule a final settlement hearing at which the Court will consider the request for final approval of: (a) the Settlement; (b) the Plan of Allocation of settlement proceeds among Settlement Class Members; and (c) an award of attorneys' fees and expenses to Co-Lead Counsel, and reimbursement of time and

---

[1] All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation. Internal citations are omitted, and emphasis is added throughout unless otherwise noted.

- 1 -

expenses to the Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4).

## II.  BACKGROUND

### A.  Procedural History

On March 25, 2022, the Court appointed CPAT and BRS as Lead Plaintiffs and the firms Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton") as Co-Lead Counsel. (ECF 30).  The operative complaint in the Action is Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (the "Complaint") filed on May 25, 2022. (ECF 40).  The Complaint alleges violations of §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 promulgated thereunder. The Complaint alleges, *inter alia*, that during the Class Period, Defendants made false and misleading statements and omissions to investors concerning certain of Oak Street Health's patient acquisition tactics and that Defendants allegedly concealed that Oak Street Health was paying for referrals for prospective patients and marketing free transportation to prospective patients, which Plaintiffs claim violates the federal Anti-Kickback Statute and/or False Claims Act. Plaintiffs allege the false statements artificially inflated Oak Street Health's stock price and when the truth was eventually disclosed, the stock declined, resulting in damages to the Class. (ECF 40).

On July 25, 2022, Defendants filed their omnibus motion to dismiss the Action.  (ECF 59). Plaintiffs filed their opposition on September 26, 2022 (ECF 63), and Defendants filed their reply on October 26, 2022.  (ECF 69).  On February 10, 2023, Judge Kennelly issued an Order granting in part and denying in part Defendants' motion. (ECF 74).  The Court granted Defendants' motion to dismiss with respect to the Section 12(a)(2) claim in its entirety and the Section 11 claim only with respect to the May 2021 Offering, but the motion to dismiss was otherwise denied.  *Id.*  On October 26, 2023, the case was reassigned to Judge Cummings. (ECF 123).

On December 15, 2023, Plaintiffs filed a motion for class certification seeking to certify a class and appoint BRS, CPAT, and Dearborn as class representatives and Robbins Geller and Labaton as Class Counsel. (ECF 134-135). On February 20, 2024, after deposing representatives from BRS, CPAT, Dearborn, and the investment managers responsible for Plaintiffs' investments in Oak Street Health, Defendants filed their opposition to the motion for class certification. (ECF 145-146). On April 22, 2024, Plaintiffs filed their reply brief in further support. (ECF 162).

On March 12, 2024, certain of the Parties participated in an in-person mediation session with a well-respected mediator, Robert A. Meyer of JAMS, who has extensive experience mediating complex securities class action litigations. Following the mediation session, which did not result in an agreement, Mr. Meyer and those Parties continued to negotiate a potential settlement. On May 16, 2024, the Parties agreed to settle the Action based upon a mediator's proposal issued by Mr. Meyer, subject to Defendants obtaining certain approvals. On May 29, 2024, having obtained the necessary approvals, the Parties submitted a Joint Status Report informing the Court of the settlement in principle.

At the time the Parties agreed to settle, Plaintiffs and Co-Lead Counsel were well-informed about the strengths and weaknesses of the claims based on: (i) a rigorous investigation involving review and analysis of Company regulatory filings, media and analyst reports, press releases, conference call transcripts, and relevant case law and authorities; (ii) drafting the Complaint; (iii) consulting with experts; (iv) briefing Defendants' motion to dismiss and the class certification motion; (v) preparing and responding to document requests, interrogatories, and requests for admission; (vi) obtaining and analyzing more than 3.5 million pages of documents from Defendants and third parties; (vii) conducting numerous meet and confers resulting in the production of documents and information initially withheld; (viii) taking or defending 16 fact depositions and two class certification expert depositions; (ix) exchanging mediation briefs that detailed Plaintiffs' and

Defendants' positions on liability and damages; and (x) participating in a mediation session and multiple conferences with defense counsel and/or the mediator.

### B. The Terms of the Settlement

Following robust arm's-length negotiations, Plaintiffs and Defendants agreed to settle the claims against Defendants for $60,000,000, upon the terms set forth in the Stipulation. Plaintiffs and their counsel concluded, after a thorough investigation of the factual and legal issues in the action, as well as consideration of the expense and risks of continued litigation, that the significant monetary recovery for the benefit of the Settlement Class is a highly favorable result and clearly in the best interests of members of the Settlement Class. In exchange for the benefits provided under the Stipulation, Settlement Class Members will release any and all claims against the Released Defendant Parties that have been or could have been alleged in this Action, or any forum, that arise out of, are based on, or relate to both: (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action and (2) the purchase, acquisition, sale, or disposition of Oak Street Health publicly traded common stock during the Class Period. The release does not include any claims to enforce the terms of the Settlement or any governmental or regulatory claims against the Defendants and their Related Parties, including any arising out of any investigation of Oak Street Health by the United States Department of Justice. Stipulation, ¶1.28.

### III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving class action litigation. *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). Federal Rule of Civil Procedure 23(e) requires judicial approval of the settlement of class actions. Such approval involves a two-step process: first, a "preliminary approval" order authorizing notice of the proposed settlement to be provided to the

class; and second, after notice has been provided and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See* David F. Herr, *Manual for Complex Litigation*, at §13.14 (4th ed. 2019).

The question at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the Settlement for $60 million satisfies the Rule 23(e) standards for approval, and the Settlement Class satisfies the standards for class certification. Thus, the proposed Settlement should be preliminarily approved and notice of the proposed Settlement should be sent to the Settlement Class in advance of a final settlement hearing.

### A.    The Settlement Readily Satisfies the Standards for Approval

Rule 23(e)(2) provides that a settlement should be approved if it is "fair, reasonable, and adequate," considering whether: (i) Plaintiffs and Co-Lead Counsel adequately represented the Settlement Class; (ii) the Settlement was negotiated at arm's length; (iii) the amount of the Settlement is adequate; and (iv) the remaining Settlement terms are reasonable and adequate, and the Settlement treats Settlement Class Members equitably.[2] Fed. R. Civ. P. 23(e)(2)(A)-(D). At this preliminary approval stage, the Court's task is merely to determine whether the Settlement will "likely" satisfy the standard for final approval. *See* Fed. R. Civ. P. 23(e)(1)(B). The Court need "not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards . . . ." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011)

---

[2] The Rule 23(e)(2) factors overlap with the Seventh Circuit's prior final approval factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quotation omitted).

(approving settlement); *accord In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (granting preliminary approval).

### 1. Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) instructs courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As set forth herein, Co-Lead Counsel are highly experienced in securities class action litigation, and Plaintiffs and Co-Lead Counsel have diligently prosecuted this Action. *See, e.g.,* §II.A.-B. (detailing extensive litigation efforts from investigation and Complaint through motions to dismiss, document and deposition discovery, consultation with experts, and mediation); *see also* ECF 135 at 11-14 (Plaintiffs demonstrating adequacy for class certification). Plaintiffs and Co-Lead Counsel have carefully considered the benefits of the Settlement, and costs and risks of ongoing litigation, and believe the Settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Is the Result of Good Faith Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider a procedural factor – whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As explained above in §II.B., the proposed Settlement was achieved only after arm's-length negotiations among highly experienced and informed counsel, which included an in-person mediation session before Mr. Meyer, an experienced and well-respected mediator, and follow-up negotiations after the parties failed to reach agreement during the in-person session. This arm's-length process supports approval. *See Accretive Health,* 773 F.3d at 864 (approving settlement in light of "extensive arm's-length negotiations with an experienced third-party mediator").

### 3. The Proposed Settlement Amount Is Adequate, Particularly in Light of the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Relatedly, the Seventh Circuit has instructed courts to consider "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" and "'the complexity, length, and expense of further litigation.'" *Accretive*, 773 F.3d at 863-64.

Here, while Plaintiffs remain confident in their ability to ultimately prove the claims, further litigation and trial is always a costly and risky proposition. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (granting summary judgment and dismissing securities class action five years after initially surviving motion to dismiss). In their motion to dismiss, Defendants argued that none of the alleged statements were false or misleading because Oak Street Health had no independent duty to disclose the allegedly improper patient acquisition tactics before they were even the subject of an investigation by the DOJ, emphasizing that neither the DOJ nor any other regulatory entity had filed any complaint or action against Oak Street. ECF 59 at 12-13. Defendants also claimed that their statements were factually true or non-actionable because: (1) Oak Street Health sufficiently cautioned about the risk of its regulatory oversight and the risk of government investigations, *id.* at 13-15; (2) the alleged misstatements were not sufficiently linked to the allegedly improper patient acquisition tactics, *id.* at 15-19; (3) the alleged misstatements were opinions or puffery, *id.* at 19-22; and (5) that Plaintiffs failed to adequately allege violations of Items 105 or 303 of SEC Regulation S-K, *id.* at 23-25. Defendants further argued that the Complaint did not sufficiently allege Defendants acted with scienter and that the disclosure of a DOJ investigation did not reveal the truth of any alleged misstatement. *Id* at 25-36. Defendants also argued that Plaintiffs lacked standing to bring Section 11 claims pursuant to Oak Street Health's secondary public offerings, *id.* at 38-40, or to bring a Section 12(a)(2) claim pursuant to any Oak Street Health

offering, *id.* at 40-42. Lastly, Defendants argued that Newlight, GA, and the Oak Street Health officers named as defendants were not control people for the purposes of Plaintiffs' Section 20(a) claims. *Id.* at 42-45.

Although Lead Plaintiffs' allegations survived Defendants' motion to dismiss, Defendants would no doubt continue to pursue these and additional defenses. *See* ECF 134 at 1 (Defendants arguing that "[t]he case has no merit, for numerous reasons, including that the market was well aware of Oak Street's patient acquisition strategies, so there was no 'revelation,' and Oak Street always strove to comply with applicable law, so there was no intent to deceive"). The costs, risks, and delays of continued litigation would only increase as the Parties continued to engage in deposition discovery and then turn to additional expert discovery, summary judgment briefing, pre-trial litigation, trial, and appeal. *See Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (collecting cases and recognizing that "[s]ecurities fraud litigation is long, complex and uncertain").[3]

Indeed, proving damages in securities cases can be particularly complicated, and Defendants would have vigorously contested loss causation and damages in this case. *See Accretive*, 773 F.3d at 863 (approving settlement and noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling"). Defendants have claimed, for example, that the Company's disclosure after market close on November 8, 2021 that, *inter alia*, the DOJ was investigating Oak Street's patient acquisition tactics could not support

---

[3] Moreover, securities laws are complex and evolving, and appellate or Supreme Court decisions can eliminate previously upheld theories or causes of action. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (noting claims based on purchases on foreign exchanges were eliminated by the "new 'transactional' rule" enunciated by the Supreme Court); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 144 S.Ct. 885, 887, (2024) (holding Section 10(b) claims could no longer be based "solely on the omission of information" required by Items 105 and 303 of SEC Regulation S-K after Judge Kennelly had upheld similar claims here).

Plaintiffs' claims because "courts have explicitly held that 'the announcement of an investigation, standing alone, is insufficient to establish loss causation.'" ECF 59 at 35 (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 883, 890 (9th Cir. 2014)). Even if a jury were to determine that the disclosure did support loss causation, Defendants were likely to continue to argue that the subsequent stock price decline was caused by "other events, such as an earnings announcement" on the same evening of the alleged corrective disclosure. *See* ECF 82 at 116 (Defendants claiming that the alleged damages "were otherwise caused or contributed by . . . . factors other than any alleged misrepresentations or omissions").

Plaintiffs' consulting damages expert has estimated that, if Plaintiffs were able to theoretically recover the entirety of Oak Street Health's abnormal stock price decline from the close of the market on November 8, 2021 to the close of the market on November 9, 2021, damages could amount to upwards of $880 million. However, a portion of the decline leading to the alleged $880 million in damages occurred before the alleged corrective disclosure, making recovery of that portion of the decline unrealistic. Therefore, the more likely recoverable class wide damages, consistent with the Plan of Allocation and factoring in certain negative causation defenses and certain disaggregation of the abnormal price decline on November 9, 2021, would be approximately $386 million. If Defendants failed to establish a "negative causation" defense for the Securities Act claims, meaning §11 damages could be recovered for stock declines beyond the November 9, 2021 decline, the estimated $386 million in damages could increase to approximately $542 million. The damages ultimately awarded would be determined by a jury after a costly and time-consuming battle of competing experts. The $386 million estimate represents Plaintiffs' most reasonable estimate that likely would be achieved if the case had not settled. It assumes a 100% claims rate and that the claims survived in full through summary judgment and trial.

- 9 -

Thus, the $60 million Settlement recovers approximately 15.5% of Lead Plaintiffs' consulting damages expert's estimate of likely recoverable class wide damages ($386 million), and provides a significant recovery to the Class. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, No. 16-cv-10632, ECF 191 (N.D. Ill. Nov. 17, 2021) (approving $27.5 million settlement, which briefing (ECF 185 at 14-15) estimated at 9.4% of damages). Accordingly, the benefits conferred far outweigh the costs, risks, and delay of further litigation and strongly support approval.

### 4. The Remaining Settlement Terms Are Reasonable and Adequate, and the Settlement Treats Class Members Equitably

Rule 23(e)(2) further instructs courts to consider: (i) the effectiveness of the proposed method of distribution to the class; (ii) the terms and timing of any proposed attorney's fees; (iii) any other agreements between the parties; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Each of these factors further supports approval of the proposed Settlement.

First, as demonstrated below in §IV, the proposed notice program is effective. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a Claimant's claim amount pursuant to the Plan of Allocation, which will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was developed with the assistance of Lead Plaintiffs' consulting damages expert and is based on each Claimant's purchases, acquisitions, and sales of Oak Street Health common stock during the Class Period.

Second, Co-Lead Counsel will request an award of attorneys' fees not to exceed 29% of the Settlement Amount, and expenses not to exceed $1 million, plus interest, all to be paid from the Settlement Fund. The application will be made at the time Co-Lead Counsel moves for final approval of the Settlement, and the awarded fees and expenses shall be paid from the Settlement

Fund, not by Defendants, upon entry of the order awarding such fees and expenses.

Third, the Parties have not entered into any other agreements other than a standard Supplemental Agreement Regarding Requests for Exclusion, which provides that if the number of shares of Oak Street Health common stock purchased by Settlement Class Members who request exclusion equals or exceeds a certain amount (the "Opt-Out Threshold"), Defendants have the option to terminate the Settlement. Stipulation, ¶8.4.[4]

And fourth, the Settlement treats Settlement Class Members equitably because the proposed Plan of Allocation subjects all members of the Settlement Class – including Plaintiffs – to the same formulas for distribution of the Settlement for their claims. In sum, the proposed Settlement satisfies each of the Rule 23(e)(2) factors and should be preliminarily approved so the Notice can be sent to potential Settlement Class Members.

### B. The Settlement Class Satisfies the Standards for Class Certification

The second part of the settlement approval process is to determine whether the action may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The Seventh Circuit has acknowledged that in securities actions, "class certification is routine." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010). This case is no exception, as the proposed Settlement Class is "likely to" and does meet the requirements of both Rule 23(a) and Rule 23(b)(3) for class certification.

#### 1. The Settlement Class Satisfies Rule 23(a)

Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy of representation." *Amchem Prods., Inc. v.*

---

[4] As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

*Windsor*, 521 U.S. 591, 613 (1997). The proposed Settlement Class satisfies each one.

First, as to "numerosity," Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Throughout the Class Period, Oak Street Health common stock was actively traded on the New York Stock Exchange. According to the Company's 3Q 2021 10-Q, the Oak Street Health had more than 240 million shares of common stock outstanding as of November 4, 2021, (*see* Complaint, ¶292), likely resulting in hundreds or thousands of potential class members, which is more than sufficient to establish numerosity. *See Tatz v. Nanophase Techs. Corp.*, 2003 WL 21372471, at *6 (N.D. Ill. June 13, 2003) (certifying class where 13 million company shares were outstanding and "were likely owned by hundreds of persons or entities throughout the United States"); *see also* ECF 135 at 9-10.

Second, Rule 23(a)(2) requires that there be "questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)), but this "'is not a demanding requirement,'" as just "'one issue of fact or law common to all class members will suffice.'" *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1989401, at *3 (N.D. Ill. Aug. 27, 2002). In this case, the central questions – whether Defendants' public statements during the Class Period misrepresented or omitted material facts– are the same for all Settlement Class Members. Similarly, the issues of whether Defendants acted with the requisite mental state (for the Exchange Act 10(b) claims), and whether the price of Oak Street Health common stock was artificially inflated are the same for all Settlement Class Members. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); ECF 135 at 10-11 (citing cases).

Third, the "typicality" requirement of Rule 23(a)(3) is satisfied because Plaintiffs' claims arise from the same "'event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595

- 12 -

(7th Cir. 1998).  Specifically, Plaintiffs and members of the Settlement Class purchased shares of Oak Street Health common stock during the Class Period pursuant to alleged false and misleading statements and omissions about, among other things, the Company's patient recruitment tactics, suffered damages as a result of the subsequent decline in the price of Oak Street Health common stock, and "will use the same evidence to prove their case." *In re Bank One Sec. Litig./First Chi. S'holder Claims*, 2002 WL 989454, at *4 (N.D. Ill. May 14, 2002); *see also* ECF 135 at 11-12.

And fourth, the "adequacy" requirement of Rule 23(a)(4) is met where: (i) the claims of the class representatives and other members of the class are not antagonistic; (ii) the class representatives are sufficiently interested in the outcome of the case; and (iii) experienced, competent counsel represent them.  *See Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009) (St. Eve, J.).  Here, Plaintiffs do not have interests antagonistic to the Settlement Class and have sufficient interests in the outcome of the case, as all Plaintiffs purchased shares of Oak Street Health common stock during the Class Period and suffered the same type of alleged economic damages as the other Settlement Class Members.  Plaintiffs have demonstrated their vigorous prosecution of the claims in this Action and have retained Co-Lead Counsel with extensive experience and skill in litigating securities class actions, including some of the largest securities class action recoveries in this District.  *See* §§II.A.-B., III.A.l.; ECF 135 at 12-14.[5]

### 2. The Settlement Class Satisfies Rule 23(b)(3)

In addition to satisfying Rule 23(a), the Settlement Class satisfies Rule 23(b)(3)'s additional requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

---

[5] *See also*, *e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion settlement obtained by Robbins Geller as lead counsel); *In re The Allstate Corp. Sec. Litig.,* No.16-cv-10510 (N.D. Ill.) ($90 million settlement obtained by Labaton as lead counsel).

- 13 -

First, as the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." 521 U.S. at 625. In this case, as in most cases alleging violations of the federal securities laws, "[w]hether [Defendants'] statements are false . . . [w]hether the falsehoods affected the stock's price . . . [and] [w]hether the magnitude of any effect shows that the false information was 'material'" are common questions which predominate over any individual issues. *Schleicher*, 618 F.3d at 681; *see also In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at *7 (N.D. Ill. Dec. 21, 2020) (finding predominance established and certifying a securities class action); ECF 135 at 14-28 (Plaintiffs showing predominance for this case). Second, resolution of this case through class treatment is far superior to litigating hundreds of individual claims where the expense for a single investor could exceed the individual's loss. *See Bank One*, 2002 WL 989454, at *8 ("A class action is a superior means to adjudicate claims of class members who would be overwhelmed . . . if they attempted to prosecute their individual claims."); ECF 135 at 3. In sum, the Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and should be certified in conjunction with the Settlement.

## IV.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, long-form Notices and Claim Forms will be mailed to Settlement Class Members whose names and addresses can be identified through Oak Street Health's transfer records. In addition, the Claims Administrator will contact entities that commonly hold securities in "street name" for the benefit of their customers, who are the beneficial purchasers of the securities, to gather additional names and addresses. The Parties further propose to supplement the mailed Notice and Claim Form with a Summary Notice published once in a national news publication and once over a national newswire service. The notice plan here is very similar to plans regularly approved by courts

in this District. *See e.g.*, *Azar v. Grubhub Inc.*, No. 1:19-cv-07665 (N.D. Ill. Oct. 14, 2022) (attached as Ex. A hereto); *Flynn v. Exelon Corp., et al.*, No. 1:19-cv-08209 (N.D. Ill. June 9, 2023) (attached as Ex. B hereto). The Notice, Claim Form, and Summary Notice are attached to the Notice Order as Exhibits A-1, A-2 and A-3, respectively.

Furthermore, the Notice includes all of the information required by the PSLRA, 15 U.S.C. §78u-4(a)(7), as well as additional relevant information in securities class actions. It describes the Settlement and the average recovery per potentially damaged share if claims for 100% of such shares are made; states the Parties' disagreement over damages and liability; and describes the Plan of Allocation. In addition, the Notice briefly explains the nature, history, and status of the Action; gives the definition of the Settlement Class; states the class's claims and issues; discusses the rights of Settlement Class Members; summarizes the reasons the Parties are proposing the Settlement; and describes Plaintiffs' counsel's fee and expense application. The Notice includes information about the process for requesting exclusion from the Settlement Class, objecting, and/or submitting a Claim Form. Finally, the Notice sets forth the date, time, and place of the Settlement Hearing.

The contents of the notices satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, Plaintiffs respectfully request that the Court also approve the Parties' proposed form and method of giving notice to the Settlement Class.

## V.    CONCLUSION

For all of the foregoing reasons, the proposed Settlement warrants preliminary approval, and Plaintiffs respectfully request that the Notice Order be entered.[6]

---

[6] Pursuant to the Court's procedures, a Word version of the proposed Notice Order is being emailed to the Court. For the dates that need to be added to the proposed Order, Plaintiffs propose the schedule in Appendix A hereto, which aligns with those routinely entered in securities class actions and allows time for mailing of notice and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq*.

DATED: August 16, 2024

Respectfully submitted,

LABATON KELLER SUCHAROW LLP
CHRISTINE M. FOX (*pro hac vice*)
JAMES M. FEE (*pro hac vice*)

_/s/ Christine M. Fox_
CHRISTINE M. FOX

140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
cfox@labaton.com
jfee@labaton.com

*Counsel for Boston Retirement System and City of Dearborn Police & Fire Revised Retirement System, and Co-Lead Counsel for the Class*

ROBBINS GELLER RUDMAN & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

*Counsel for Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 and Co-Lead Counsel for the Class*

- 16 -

LAW OFFICE OF RACINE & ASSOCIATES
MARIE T. RACINE
1001 Woodward Avenue, Suite 1100
Detroit, MI  48226
Telephone:  313/961-8930
313/961-8945 (fax)
mracine@racinelaw.us

*Additional Counsel for City of Dearborn Police &
Fire Revised Retirement System*

## APPENDIX A

| Event | Proposed Timing |
| --- | --- |
| Deadline for commencing the mailing of the Notice and Claim Form to Settlement Class Members ("Notice Date") | Not later than 20 calendar days after entry of the Notice Order |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after the Notice Date |
| Deadline for filing motions in support of final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's Fee and Expense Application | 35 calendar days prior to the Final Approval Hearing |
| Deadline for submission of Claim Forms | 21 calendar days before the Final Approval Hearing |
| Deadline for submission of objections and requests for exclusion from the Settlement Class | 21 calendar days before the Final Approval Hearing |
| Deadline for submission of notices of appearance by Settlement Class Members who wish to appear individually | 21 calendar days before the Final Approval Hearing |
| Deadline for Co-Lead Counsel to file proof, by affidavit or declaration, of mailing, publishing, and posting of notices | 7 calendar days prior to the Final Approval Hearing |
| Deadline for Co-Lead Counsel to file reply papers in further support of motions | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, but preferably the week of December 2, 2024, which will allow sufficient time for the provision of notice and compliance with the Class Action Fairness Act of 2005 if the Notice Order is entered no later than August 29, 2024 |

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 16, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

*/s/ Christine M. Fox*
CHRISTINE M. FOX
