EXECUTION VERSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, | ) ) CASE NO. 1:22-CV-00149 |
| Plaintiff, | ) ) CLASS ACTION ) |
| vs. | ) JUDGE JEFFREY I. CUMMINGS ) ) |
| OAK STREET HEALTH, INC., ET AL., et al., | ) ) |
| Defendants. | ) ) ) |
| _____ | ) |

STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of August 13, 2024 (the "Stipulation" or the "Settlement Agreement"), is made and entered into by and among the following Parties (as defined further in Section III hereof) to the above-entitled action: (i) Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Boston Retirement System ("Lead Plaintiffs"), and additionally named plaintiff City of Dearborn Police & Fire Revised Retirement System (together, "Plaintiffs"), on behalf of themselves and each of the members of the Settlement Class, as defined in ¶1.34 *infra*, on the one hand, and (ii) Defendants Oak Street Health, Inc. ("Oak Street Health" or the "Company"); Michael Pykosz; Timothy Cook; Geoff Price; Griffin Myers; General Atlantic LLC n/k/a General Atlantic, L.P.; General Atlantic (OSH) Interholdco, L.P. (together with General Atlantic LLC n/k/a General Atlantic, L.P., "GA"); Newlight Partners LP; Newlight Harbour Point SPV LLC (together with Newlight Partners LP, "Newlight"); Regina Benjamin; Carl Daley; Cheryl Dorsey; Mohit Kaushal; Kim Keck; Julie Klapstein; Paul Kusserow; Robbert Vorhoff; Srdjan Vukovic; J.P. Morgan Securities, Inc.; Goldman Sachs & Co. L.L.C.; Morgan Stanley & Co. LLC; William Blair & Company, LLC; and Piper Sandler Companies (collectively, "Defendants" and together with Plaintiffs, the "Parties") on the other hand, by and through their counsel of record in the above-captioned consolidated litigation pending in the United States District Court for the Northern District of Illinois (the "Action"). The Stipulation is intended by the Parties to fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, discharge, and dismiss with prejudice the Action and all claims asserted against the Defendants therein, and all of the Released Claims (defined below), upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section IV.1, *infra*.

- 1 -

## I.    THE ACTION

This case is currently pending before the Honorable Jeffrey I. Cummings in the United States District Court for the Northern District of Illinois (the "Court") and was brought on behalf of a class (to be certified for settlement purposes) of all persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Oak Street Health during the period from August 6, 2020 through November 8, 2021, inclusive ("Class Period"), including, among others, those who purchased shares of Oak Street Health common stock pursuant to or traceable to the Registration Statements and Prospectuses issued in connection with Oak Street Health's Initial Public Offering ("IPO") on August 6, 2020, its December 2, 2020 Secondary Offering ("December 2020 Offering"), and its February 10, 2021 Secondary Offering ("February 2021 Offering"), and were allegedly damaged by Defendants' alleged conduct.

The initial complaint was filed on January 10, 2022 (ECF No. 1), and on March 25, 2022, the Court appointed Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan (the "CPTPF Benefit Plan"), Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 (the "CPTPF Retirement Plan" and together with the CPTPF Benefit Plan, the "CPTPF Plans"), and Boston Retirement System ("BRS") as Lead Plaintiffs and the firms Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Labaton Keller Sucharow LLP ("Labaton") as Co-Lead Counsel. (ECF No. 30).

The operative complaint in the Action is Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (the "Complaint") filed on May 25, 2022. (ECF No. 40.). The Complaint alleges violations of §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 promulgated thereunder. The Complaint alleges, *inter alia*, that during the Class Period, Defendants made false and misleading statements and omissions to investors concerning Oak

- 2 -

Street Health's patient acquisition tactics, and that Defendants allegedly concealed that Oak Street was paying for referrals on a per-patient basis and marketing or providing free transportation to prospective patients, which Plaintiffs claim violates the federal Anti-Kickback Statute and/or False Claims Act. Plaintiffs allege that these purportedly false and misleading statements and omissions caused Oak Street Health's stock price to be artificially inflated, and when the truth was eventually disclosed, the price of Oak Street Health's stock declined, resulting in substantial damages to the class. (ECF No. 40).

From the outset of the Action, Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. Securities laws, the federal Anti-Kickback Statute, or the False Claims Act. Defendants have consistently maintained that they never made any statement to the market that was, or that they believed was, false or misleading, nor did they ever direct anyone to make public statements that were, or that they believed to be , false or misleading. Defendants have consistently maintained that they believed at the time and still believe that, during the Class Period, the statements about Oak Street Health's patient acquisition tactics were not materially false or misleading. As a result, Defendants contend that Plaintiffs cannot prove securities fraud or any element of the other claims Plaintiffs brought, including claims based on §§11 and 15 of the Securities Act. Further, Defendants have consistently maintained that Oak Street did not pay for referrals, and that none of Oak Street's patient acquisition strategies, including any alleged marketing or provision of free transportation to prospective patients, violated the federal Anti-Kickback Statute or False Claims Act.

On July 25, 2022, Defendants filed their omnibus Motion to Dismiss the Action, alleging that Plaintiffs' complaint failed to state a claim for relief. (ECF No. 59). Plaintiffs filed their opposition on September 26, 2022 ((ECF No. 63), and Defendants filed their replies on October

26, 2022 (ECF No. 69). On February 10, 2023, the Court (Judge Matthew F. Kennelly) issued an Order granting in part and denying in part Defendants' motion to dismiss. (ECF No. 74). The Court granted Defendants' motion to dismiss with respect to the Section 12(a)(2) claim in its entirety and the Section 11 claim only with respect to alleged misrepresentations and omissions from Oak Street's May 26, 2021 secondary offering, but the motion to dismiss was otherwise denied. On October 26, 2023, the case was reassigned from Judge Matthew F. Kennelly to Judge Jeffrey I. Cummings. (ECF No. 123).

On December 15, 2023, Plaintiffs filed a Motion for Class Certification seeking to certify the class and appoint BRS, the CPTPF Plans, and additionally named plaintiff Dearborn as class representatives and Robbins Geller and Labaton as Class Counsel. (ECF Nos. 134, 135). On February 20, 2024, after deposing representatives from BRS, the CPTPF Plans, Dearborn, and the investment managers that transacted in Oak Street Health stock during the Class Period for each of the Plaintiffs, Defendants filed their opposition to Plaintiffs' motion for class certification. (ECF No. 145). On April 22, 2024, Plaintiffs filed their reply in further support of their motion for class certification. (ECF No. 162).

The case has been in fact discovery since early 2023 and more than 3.5 million pages of documents were produced by the Parties and non-parties. Fact depositions were underway at the time of the Settlement. Sixteen fact depositions and two class certification expert depositions had been taken.

On March 12, 2024, the Parties participated in an in-person mediation session with a well-respected mediator, Robert A. Meyer of JAMS, who has extensive experience mediating complex class action litigations such as this Action. Following the mediation session, which did not result in an agreement, Mr. Meyer and the parties spent two months continuing to negotiate a potential

settlement. On May 16, 2024, the Parties agreed to settle the Action based upon a Mediator's Proposal issued by Mr. Meyer.

## II. ASSERTIONS AND DENIALS OF THE PARTIES AND THE BENEFITS OF THE SETTLEMENT

Plaintiffs and Co-Lead Counsel believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims. Plaintiffs and Co-Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals. Plaintiffs and Co-Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Co-Lead Counsel are also mindful of the problems of proof, and possible defenses to the securities law violations asserted in the Action. Plaintiffs and Co-Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon Settlement Class Members in light of the circumstances here, is in the best interests of Plaintiffs and Settlement Class Members, and is fair, reasonable, and adequate.

Defendants, individually and collectively, have denied and continue to deny each and every one of the claims and contentions alleged in the Action. Defendants expressly have denied and continue to deny all allegations of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendants further deny that Plaintiffs or the Settlement Class have suffered damages, that the price of Oak Street Health common stock was artificially inflated during the Class Period as the result of any alleged misrepresentations, omissions, or non-disclosures by Defendants, that any Oak Street Health investors were harmed by the conduct alleged in the Complaint, or that any claims alleged by Plaintiffs may be certified as a class under Rule 23 of the Federal Rules of Civil

Procedure, other than for purposes of Settlement. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

Nonetheless, Defendants have concluded that further conduct of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also considered the uncertainty and risks inherent in any litigation, especially in complex cases like the Action. Defendants have, therefore, determined that it is desirable and beneficial to them to settle the Action in the manner and upon the terms and conditions set forth in this Stipulation. Defendants are entering this Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. This Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damages whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Each Defendant reserves all defenses to any claims that may be filed by anyone, including any individual entity that has sought, or seeks, exclusion from the class.

## III. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the members of the Settlement Class), on the one hand, and Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall

be dismissed with prejudice, as to Plaintiffs and the Defendants, upon and subject to the terms and conditions of the Stipulation, as follows.

1.      **Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1      "Authorized Claimant" means any member of the Settlement Class who submits a valid Proof of Claim form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2      "Claimant" means anyone who files a Proof of Claim in connection with the Settlement.

1.3      "Class Period" means the period from August 6, 2020 through November 8, 2021, inclusive.

1.4      "Claims Administrator" means JND Legal Administration.

1.5      "Co-Lead Counsel" means Robbins Geller Rudman & Dowd LLP and Labaton Keller Sucharow LLP.

1.6      "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

1.7      "Defendants" means Oak Street Health, Inc.; Michael Pykosz; Timothy Cook; Geoff Price; Griffin Myers; General Atlantic LLC n/k/a General Atlantic, L.P.; General Atlantic (OSH) Interholdco, L.P.; Newlight Partners LP; Newlight Harbour Point SPV LLC; Regina Benjamin; Carl Daley; Cheryl Dorsey; Mohit Kaushal; Kim Keck; Julie Klapstein; Paul Kusserow; Robbert Vorhoff; Srdjan Vukovic; J.P. Morgan Securities, Inc.; Goldman Sachs & Co. LLC; Morgan Stanley & Co. LLC; William Blair & Company, L.L.C.; and Piper Sandler Companies.

1.8      "Effective Date" means the first date by which all of the events and conditions specified in ¶8.1 of this Stipulation have been met and have occurred or have been waived.

- 7 -

1.9    "Escrow Account" means the bank account controlled by the Escrow Agent into which the Settlement Amount will be deposited.

1.10    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP and Labaton Keller Sucharow LLP or their respective successor(s).

1.11    "Fee and Expense Application" shall have the meaning set forth in ¶7.1 of this Stipulation.

1.12    "Fee and Expense Award" shall have the meaning set forth in ¶6.2(c) of this Stipulation.

1.13    "Final" means when the last of the following, with respect to the Judgment approving the Stipulation, in the form of Exhibit B attached hereto, or any order, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment or order has passed without any appeal having been taken, which date shall be deemed to be thirty (30) calendar days following the entry of the Judgment or order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; (iii) if a motion to alter or amend the Judgment is timely filed, the motion is denied; and (iv) if an appeal is taken, either (a) the appeal has been dismissed and the time, if any, for commencing any further appeal has expired, or (b) the Judgment or order has been affirmed in its entirety and the time, if any, for commencing any further appeal has expired. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ or request for judicial review that may be filed in connection with approval or disapproval of this Settlement,

but shall not include any appeal that concerns only the issue of attorneys' fees or expenses or the Plan of Allocation of the Settlement Fund.

1.14 "Final Approval Hearing" means the hearing to determine, among other things, whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Settlement Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.15 "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B.

1.16 "Lead Plaintiffs" means Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Boston Retirement System.

1.17 "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses to Plaintiffs' Counsel and awards to Plaintiffs; (ii) Notice and Administration Costs; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.18 "Notice" shall have the meaning set forth in ¶2.7 of this Stipulation.

1.19 "Notice Order" means the preliminary approval order as entered by the Court for mailing and publication of notice, substantially in the form attached hereto as Exhibit A.

1.20 "Parties" means (i) Defendants and (ii) Plaintiffs on behalf of themselves and the Settlement Class Members.

1.21 "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated

association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

1.22 "Plaintiffs" means Lead Plaintiffs CPTPF Plans and BRS, and additionally named plaintiff City of Dearborn Police & Fire Revised Retirement System.

1.23 "Plaintiffs' Counsel" means Co-Lead Counsel and The Law Office of Racine & Associates.

1.24 "Plan of Allocation" means the plan or formula of allocation of the Net Settlement Fund approved by the Court whereby the Net Settlement Fund shall be distributed to Authorized Claimants after payment of Notice and Administration Costs, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest as may be awarded by the Court. Any such Plan of Allocation is not part of the Stipulation and the Released Defendant Parties shall have no responsibility or liability with respect to the Plan of Allocation.

1.25 "Proof of Claim" or "Claim Form" shall have the meaning set forth in ¶2.7 of this Stipulation.

1.26 "Related Parties" means each of a Defendant's or Plaintiff's past or present directors, officers, employees, partners, trustees, trusts, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, managing agents, administrators, attorneys, accountants, auditors, bankers, contractors, underwriters, investment advisors, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, investment funds, joint ventures, general or limited partnerships, limited liability companies, affiliates, assigns, assignees, spouses, heirs, executors, estates, beneficiaries, related or affiliated entities (including their employees, directors, members, and partners), any entity in which a Defendant or Plaintiff has a controlling interest, any member of a Defendant's immediate family, any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or any

member of a Defendant's immediate family, and any entity in which a Defendant and/or any member of a Defendant's immediate family has or had a controlling interest (directly or indirectly).

1.27 "Released Claims" means the Released Plaintiffs' Claims and the Released Defendants' Claims.

1.28 "Released Plaintiffs' Claims" shall mean any and all claims (including Unknown Claims as defined in ¶1.41 hereof), and causes of action of every nature and description, whether known or unknown, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that Plaintiffs or any other member of the Settlement Class: (a) asserted in the Action, including in any complaint or pleading therein; or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to, both: (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action and (2) the purchase, acquisition, sale, or disposition of Oak Street Health publicly traded common stock during the Class Period. Released Plaintiffs' Claims shall be interpreted and enforced to the full extent permitted by law. Released Plaintiffs' Claims shall not include claims to enforce the Settlement or any governmental or regulatory claims against the Defendants and their Related Parties, including any arising out of any investigation of Oak Street Health by the United States Department of Justice.

1.29 "Released Defendants' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims (as defined in ¶1.41 hereof), whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Action, except

for claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.30    "Released Defendant Parties" means each and all of the Defendants, and each and all of their respective Related Parties.

1.31    "Released Parties" means each and all of the Released Defendant Parties and the Released Plaintiff Parties.

1.32    "Released Plaintiff Parties" means each and all of the Plaintiffs, and each and all of their respective Related Parties.

1.33    "Settlement Amount" means the principal amount of Sixty Million Dollars ($60,000,000.00).

1.34    "Settlement Class," "Settlement Class Members," or "Members of the Settlement Class" means, for the purposes of settlement only: All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Oak Street Health during the period from August 6, 2020 through November 8, 2021, both dates inclusive (the "Class Period"), including those who purchased shares of Oak Street Health common stock pursuant to or traceable to the registration statements and prospectuses issued in connection with Oak Street Health's initial public offering on August 6, 2020, its December 2, 2020 secondary public offering, and its February 10, 2021 secondary public offering, and were allegedly damaged thereby.  Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Oak Street Health, GA, Newlight, or Humana, Inc. during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Oak Street Health's employee retirement and employee benefit plan(s); (vi) Humana, Inc.; (vii) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any excluded person; and (viii) any persons or

entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court. Any "Investment Vehicle" shall not be excluded from the Settlement Class. "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has, or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest.

1.35    "Settlement Fund" means the Settlement Amount paid by or on behalf of Oak Street Health pursuant to ¶2.1 of this Stipulation, together with all interest and income earned thereon after being transferred to the Escrow Account.

1.36    "Summary Notice" shall have the meaning set forth in ¶2.7 of this Stipulation.

1.37    "Supplemental Agreement" shall have the meaning set forth in ¶8.4 of this Stipulation.

1.38    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund.

1.39    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.8 hereof.

1.40    "Underwriter Defendants" means J.P. Morgan Securities, Inc., Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, William Blair & Company, LLC, and Piper Sandler Companies.

1.41 "Unknown Claims" means (a) any and all Released Plaintiffs' Claims that Plaintiffs or any other Settlement Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Defendant Parties, or might have affected his, her or its decision not to object to this Settlement or seek exclusion from the Settlement Class; and (b) any and all Released Defendants' Claims that the Released Defendant Parties do not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiff Parties, which, if known by him, her, or it, might have affected his, her, or its settlement and release of the Released Plaintiff Parties. With respect to (a) any and all Released Plaintiffs' Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against the Released Plaintiff Parties, the Parties stipulate and agree that, upon the Effective Date, the Parties shall expressly and each of the other Settlement Class Members and Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived to the fullest extent permitted by law any and all provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties shall each expressly waive and each Settlement Class Member and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542. The Plaintiffs, Settlement Class Members, and Released Defendant Parties may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she or it now knows or believes to be true with respect to the

subject matter of the Released Plaintiffs' Claims or Released Defendants' Claims, but (a) Plaintiffs shall each expressly, fully, finally and forever settle and release, and each other Settlement Class Member, upon the Effective Date, shall be deemed to have fully, finally and forever settled and released, any and all Released Plaintiffs' Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have or will exist, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) Defendants shall each expressly, fully, finally and forever settle and release, and each other Released Defendant Parties, upon the Effective Date, shall be deemed to have fully, finally and forever settled and released, any and all Released Defendants' Claims against the Released Plaintiff Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have or will exist, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Parties acknowledge, and the Settlement Class Members and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and an essential term of the Settlement of which this release is a part.

### 2. The Settlement

#### a. The Settlement Fund

2.1    In consideration of the terms of this Stipulation, Oak Street Health shall pay or cause to be paid the sum of Sixty Million Dollars ($60,000,000.00) into the Escrow Account no later than fifteen (15) business days after the later of (a) entry of the Court's order preliminarily approving the Settlement or (b) the receipt and verbal confirmation by Paul, Weiss, Rifkind, Wharton & Garrison of wire/check payee instructions and receipt of a Form W-9 providing the tax

identification number for the Settlement Fund, which verbal confirmation shall be sought no later than the business day following receipt of the wire/check payee instructions by Paul, Weiss, Rifkind, Wharton & Garrison. No other Defendant shall pay, or be liable to pay, any part of the Settlement Amount.

2.2     If the entire Settlement Amount is not timely paid to the Escrow Agent, Plaintiffs may terminate the Settlement but only if: (i) Co-Lead Counsel have notified Defendants' counsel in writing of Plaintiffs' intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Co-Lead Counsel have provided such written notice.

### b.     The Escrow Agent

2.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

2.4     The Escrow Agent shall not disburse the Settlement Fund except (a) as provided in the Stipulation, (b) by an order of the Court, or (c) with the written agreement of counsel for the Parties.

2.5     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are

consistent with the terms of the Stipulation. Other than the obligation to pay or cause to be paid the Settlement Amount into the Escrow Account set forth in ¶2.1 herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Co-Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; or (ii) any transaction executed by the Escrow Agent or any designees or agents thereof. Other than the obligation to cause the payment of the Settlement Amount pursuant to ¶2.1, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member pursuant to the Stipulation.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall be subject to the jurisdiction of the Court.

2.7     The Escrow Agent, without further approval of Defendants or the Court, may pay as incurred and from the Settlement Fund, all fees and costs associated with the administration of the Settlement and the provision of notice to the Settlement Class, including, without limitation: the costs of identifying and locating members of the Settlement Class; printing and mailing the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice") and Proof of Claim ("Proof of Claim" or "Claim Form"); publishing a summary of the Notice ("Summary Notice"); reimbursement to nominee owners for forwarding notices to their beneficial owners; soliciting Settlement Class claims; assisting with the filing of claims; administering and distributing the Net Settlement Fund to Authorized Claimants; processing Claim Forms; escrow fees and costs; and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs").

### c. Taxes and Qualified Settlement Fund

2.8    The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause the preparation and delivery of, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. Co-Lead Counsel shall be solely responsible for timely and properly filing, or causing to be filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)). Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this ¶2.8 and in all events shall reflect that all Taxes (defined below) including any estimated Taxes, interest, or penalties on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.8(c) hereof. Released Defendant Parties shall not have liability or responsibility for any such Taxes.

(b)    All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund"

for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability therefor. The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.8.

### d.     Refund Upon Termination of Settlement

2.9     In the event the Stipulation: (i) is not approved; or (ii) is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom, the Settlement Fund (including accrued interest at the same rate earned by the escrow account, and any change in value as a result of the investment of the Settlement Fund) less expenses actually incurred or due and owing for Notice and Administration Costs, Taxes or Tax Expenses pursuant to ¶¶2.7 or 2.8, shall be refunded to Defendants (or such other persons or entities as Defendants may direct) pursuant to

written instructions from Paul, Weiss, Rifkind, Wharton & Garrison within thirty (30) calendar days.

### 3. Certification of the Settlement Class

3.1    Solely for purposes of this Settlement, and subject to approval by the Court, the Parties agree that the Settlement Class shall be certified, and Plaintiffs and Co-Lead Counsel shall be appointed as representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23. Should the Settlement Class not be certified, or should any court amend the scope of the Settlement Class, each of the Parties reserves the right to void this Stipulation in accordance with ¶8.4 hereof. If for any reason final approval of the Settlement is not granted, then the certification of the Settlement Class shall become null and void without further order of the Court or any other court, and the Parties shall be restored to their respective positions in the Action as of May 16, 2024.

### 4. Notice Order and Final Approval Hearing

4.1    Within five (5) calendar days after execution of the Stipulation, Plaintiffs shall submit the Stipulation, together with the Exhibits, to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Settlement Class for settlement purposes, and approval for the mailing of the Notice and Proof of Claim, and publication of the Summary Notice, substantially in the forms of Exhibits A-1, A-2, and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the date of the Final Approval Hearing.

4.2    For purposes of identifying and providing notice to the Settlement Class, within fifteen (15) calendar days of entry of the Notice Order, counsel for Oak Street Health will use best

efforts to cause Oak Street Health's transfer agent to provide lists of purchasers of record during the Class Period and pursuant to the Initial Public Offering, the December 2, 2020 secondary public offering, and the February 10, 2021 secondary public offering, in electronic searchable form, such as Excel, at no cost to the Settlement Class, the Claims Administrator, or Co-Lead Counsel.

4.3     It shall be solely Co-Lead Counsel's responsibility to disseminate the Notice, Proof of Claim, and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. Settlement Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure of the notice process.

4.4     Oak Street Health shall, no later than ten (10) calendar days following the filing of this Stipulation with the Court, serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to receive notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, et seq. ("CAFA"). Oak Street Health is solely responsible for the preparation and costs of the CAFA notice and administering the CAFA notice.

4.5     Co-Lead Counsel shall request that after notice is given to the Settlement Class, and not earlier than ninety (90) calendar days after the date on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to CAFA as set forth in ¶4.4 above, the Court hold a Final Approval Hearing and approve the Settlement of the Action as set forth herein. At or after the Final Approval Hearing, Co-Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

4.6     If the Settlement contemplated by this Stipulation is approved by the Court, Co-Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.  The terms of 15 U.S.C. 78u-4(f)(7) shall apply to this Settlement, including that each Defendant shall be discharged from all claims for contribution

brought by other persons, and the Judgment shall so provide. The Judgment shall include a bar order constituting the final discharge of all Released Plaintiffs' Claims of any Settlement Class Member and barring all future claims for contribution arising out of the Action by any person against any Defendant.

**5.      Releases**

5.1      Upon the Effective Date, Plaintiffs and each of the Settlement Class Members (who have not validly opted out of the Settlement Class in writing pursuant to the Notice Order), and their respective Related Parties, in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, and discharged against the Released Defendant Parties (whether or not such Settlement Class Members execute and deliver Proof of Claim forms) any and all Released Plaintiffs' Claims (including, without limitation, Unknown Claims). Claims to enforce the Settlement are not released.

5.2      Upon the Effective Date, Plaintiffs and each of the Settlement Class Members (who have not validly opted out of the Settlement Class in writing pursuant to the Notice Order), and their respective Related Parties, in their capacities as such, shall be permanently barred and enjoined from the direct or indirect assertion, institution, maintenance, prosecution, or enforcement against any Released Defendant Parties, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Plaintiffs' Claims (including, without limitation, Unknown Claims).

5.3      The Proof of Claim to be executed by Settlement Class Members shall include a provision concerning the release of all Released Plaintiffs' Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.4     Upon the Effective Date, each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Settlement Class Members, and the other Released Plaintiff Parties from all Released Defendants' Claims (including Unknown Claims), and shall be permanently barred and enjoined from the direct or indirect assertion, institution, maintenance, prosecution, or enforcement against any Released Plaintiff Parties, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Defendants' Claims (including, without limitation, Unknown Claims).  Claims to enforce the Settlement are not released.

**6.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

6.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. The Claims Administrator will be subject to such supervision and direction from the Court and/or Co-Lead Counsel as may be necessary or as circumstances may require. Other than Oak Street Health's obligation to provide its stockholders' records as provided in ¶4.2 above, the Released Defendant Parties shall have no responsibility for, involvement in, authority for, or interest whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to Plaintiffs, Settlement Class Members, or Co-Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Co-Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation,

or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Costs reasonably and actually incurred;

(b)     to pay the Taxes and Tax Expenses described in ¶2.8 hereof;

(c)     to pay Plaintiffs' Counsel's fees and expenses to the extent allowed by the Court and to pay any award to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the class to the extent allowed by the Court (the "Fee and Expense Award"); and

(d)     after the Effective Date, to pay the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further order(s) of the Court, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.4     Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim or required by the Claims Administrator.

6.5     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by

- 24 -

the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action, claim, or other proceeding of any kind against the Released Defendant Parties asserting, concerning, arising out of, or relating to the Released Plaintiffs' Claims. Notwithstanding the foregoing, Co-Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims, so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiffs, Co-Lead Counsel, the Claims Administrator or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

6.6    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Co-Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to the review by the Court pursuant to ¶6.7 below.

6.7    Proofs of Claim that do not meet the submission requirement may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Co-Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶6.8 below.

6.8    If any Claimant whose timely claim has been rejected in whole or in part for curable deficiency, desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the mailing of the notice required in ¶6.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the Claimant's request for review to the Court.

6.9    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Action or the Settlement. All Settlement Class Members, other Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.10    Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00. These redistributions shall be repeated so long as they are economically feasible. Any balance that still remains in the Net Settlement Fund after such

- 26 -

reallocation(s) and payments, which is not economical to reallocate, shall be donated to Consumer Federation of America, or such other non-profit, charitable organization serving the public interest approved by the Court.

6.11    This Settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement reaches its Effective Date, no portion of the Settlement Fund will be returned to the Defendants or their insurers.

6.12    The Released Defendant Parties, including their respective counsel, shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution and investment of the Settlement Fund or Net Settlement Fund, the Plan of Allocation, the determination, administration, calculation, or payment of claims, or non-performance of the Claims Administrator, the payment or withholding of Taxes or Tax Expenses (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

6.13    No Person shall have any claim against Plaintiffs, Co-Lead Counsel, their Related Parties and/or their respective counsel, the Claims Administrator or other entity designated by Co-Lead Counsel, with respect to the distribution and investment of the Settlement Fund or Net Settlement Fund; the determination, administration, or calculation of claims; the payment or withholding of Taxes or Tax Expenses (including interest and penalties) owed by the Settlement Fund; or any losses incurred in connection therewith, based on actions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

6.14    It is understood and agreed by the Parties that any proposed Plan of Allocation is not a part of this Stipulation and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's

Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

### 7. Plaintiffs' Counsel's Attorneys' Fees and Expenses

7.1    Co-Lead Counsel may submit an application or applications on behalf of Plaintiffs' Counsel (the "Fee and Expense Application") for distributions from the Settlement Fund of (a) an award of attorneys' fees to be paid out of the Settlement Fund plus (b) expenses in connection with pursuing the Action, plus interest on both amounts.  In addition, Plaintiffs may submit a request for awards in connection with their representation of the class pursuant to 15 U.S.C. §78u-4(a)(4). Any and all such fees, expenses and costs awarded by the Court (whether payable to Co-Lead Counsel or Plaintiffs) shall be payable solely out of the Settlement Fund.

7.2    The Fee and Expense Award shall be paid to Co-Lead Counsel from the Settlement Fund as ordered by the Court, immediately following the Final Approval Hearing and any order by the Court awarding such fees and expenses.  This provision shall apply notwithstanding timely objections to, potential for appeal from, or collateral attack on, the Settlement or the Fee and Expense Award.  Co-Lead Counsel shall thereafter allocate the attorneys' fees amongst other Plaintiffs' Counsel in a manner that Co-Lead Counsel in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.  In the event that the Judgment or the order awarding such fees and expenses paid to Co-Lead Counsel pursuant to ¶7.1 is reversed or modified by a Final order, or if the Settlement is cancelled or terminated for any reason, then Co-Lead Counsel shall, in an amount consistent with such reversal or modification, refund such fees or expenses to the Settlement Fund, plus interest earned thereon at the same rate as earned on the Settlement Fund, within thirty (30) calendar days from receiving notice from Defendants' counsel of termination of the Settlement or from a court of competent jurisdiction of a final non-appealable order reversing or modifying the amount of attorneys' fees and/or expenses

awarded. Each Plaintiffs' Counsel, as a condition of receiving such fees, expenses and/or costs on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners and/or shareholders are subject to the jurisdiction by the Court for the purpose of enforcing the provisions of this paragraph.

7.3    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation or a condition of the Settlement embodied herein, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action. Neither Plaintiffs nor Co-Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

7.4    Released Defendant Parties shall have no responsibility or liability for any payment of attorneys' fees and expenses to Plaintiffs' Counsel or any Settlement Class Member's counsel. Neither Defendants nor Defendants' insurers shall have any responsibility or liability for any payment of attorneys' fees and expenses, or any other Fee or Expense Awards that the Court may make in this Action, to Plaintiffs' Counsel or any Settlement Class Member's counsel, or to any other Person or entity who may assert some claim thereto, apart from payment of the Settlement Amount pursuant to ¶2.1.

7.5    Released Defendant Parties shall have no responsibility for the allocation among Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

8.  **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Notice Order, as required by ¶4.1 hereof;

(b)     the Settlement Amount has been deposited by Defendants or their insurers into the Escrow Account maintained by the Escrow Agent, as required by ¶2.1 hereof;

(c)     Plaintiffs and Defendants have not exercised their option to terminate the Stipulation pursuant to ¶¶8.3-8.4 hereof;

(d)     the Court has entered the Judgment, in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Parties; and

(e)     the Judgment has become Final, as defined in ¶1.13 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.3 hereof unless Co-Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

8.3     Plaintiffs and each of the Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) calendar days of: (a) a final order of the Court refusing to enter the Notice Order in any material respect; (b) a final order of the Court refusing to approve the Settlement or any material part thereof; (c) a final order of the Court refusing to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is reversed or vacated or altered in any material respect as to the Settlement following any appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to

occur for any reason. However, any decision or proceeding, whether in this Court or any appellate court, with respect to the Fee or Expense Application or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment and shall not be grounds for termination of the Settlement. For avoidance of doubt, Defendants shall deem any decision, ruling, or order that purports to materially limit the scope of the Released Plaintiffs' Claims or the Released Defendant Parties to constitute a material change for the purposes of the foregoing.

8.4     The Company shall have the option to terminate the Settlement in the event that Persons, who otherwise would be Members of the Settlement Class timely choose to exclude themselves from the Settlement Class in accordance with the provisions of the Notice Order and Notice given pursuant thereto, purchased more than a certain number of shares of Oak Street Health common stock during the Class Period ("Opt-Out Threshold"), as set forth in a separate confidential agreement (the "Supplemental Agreement") executed between Co-Lead Counsel and the Company's counsel, which is incorporated by reference into this Stipulation. The Parties shall not file the Supplemental Agreement with the Court unless instructed to do so by the Court, in which case they shall seek to file the Supplemental Agreement under seal or to provide it to the Court *in camera*, and request that the Court afford it confidential treatment. The Opt-Out Threshold may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential.

8.5     If, before the Settlement reaches its Effective Date, any Defendant files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under Bankruptcy, or any similar law, and in the event of the entry of a Final order of a court of competent jurisdiction determining the transfer of money or any portion

thereof to the Settlement Fund by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs, the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of that Defendant and that Defendant and Plaintiffs and the members of the Settlement Class shall be restored to their litigation positions as of May 16, 2024. All releases and the Judgment as to other Defendants shall remain unaffected.

8.6    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within thirty (30) calendar days after written notification of such event is sent by counsel for Defendants or Co-Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less any Notice and Administration Costs incurred pursuant to ¶2.7 and paid from the Settlement Fund and Taxes and Tax Expenses that have been paid pursuant to ¶2.8 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from counsel for Defendants.

8.7    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Parties shall be restored to their respective positions in the Action as of May 16, 2024. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.7-2.9, 8.3-8.4, 8.6-8.7, 9.3 and 9.4 hereof, shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

8.8    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Plaintiffs nor Co-Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed for Notice and Administration Costs and Taxes and Tax Expenses pursuant to ¶¶2.7-2.8 hereof. In addition, any expenses already incurred and properly chargeable pursuant to ¶2.7 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.9 and 8.6 hereof.

**9.    Miscellaneous Provisions**

9.1    The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

9.2    The Parties intend this Settlement to be a final and complete resolution of all disputes asserted or which could be asserted between them with respect to the Action. The Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action, and the Judgment shall contain a finding, pursuant to the PSLRA, that all Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action. The Settlement shall not be deemed an admission by any Party or any of the Released Parties as to the merits of any claim or defense. The Parties agree that the amount to be paid into the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's-length by the Parties, including through a mediation process supervised and conducted by Robert A. Meyer of JAMS, and reflect a settlement that was reached voluntarily after extensive negotiations and consultation with competent legal counsel, who were fully

- 33 -

competent to assess the strengths and weaknesses of their respective clients' claims or defenses. The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Action, including that the Action was brought or defended in bad faith or without a reasonable basis.

9.3     Neither the Term Sheet, nor the Stipulation (whether or not consummated), including any exhibits hereto and the Plan of Allocation (or any other plan of allocation that may be approved by the Court), nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, including the Parties' mediation and subsequent Settlement, the communications and/or discussions leading to the execution of the Term Sheet and this Stipulation, and/or the approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered or received against any Released Defendant Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Defendant Party of the truth of any allegations by Plaintiffs or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action, or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Released Parties or in any way referred to for any other reason as against any of the Released Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or (b) shall be offered or received against any Released Defendant Party as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Released Defendant Party, or against Plaintiffs, Plaintiffs' Counsel, or any Settlement Class Member as evidence of any infirmity in the claims of Plaintiffs

- 34 -

and the Settlement Class; (c) shall be offered or received against any Released Defendant Party as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Released Parties, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the releases granted them hereunder; or (d) shall be construed against Defendants, Plaintiffs, or the Settlement Class as evidence of a presumption, concession or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement. The Released Parties may file the Stipulation and/or the Judgment in any action that has been or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the protections from liability granted hereunder or otherwise enforce the terms of this Settlement.

9.4    The Defendants' and Plaintiffs' Related Parties are intended third-party beneficiaries of this Stipulation, and this Stipulation may be enforced by such Persons.

9.5    All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation. For the avoidance of doubt, this provision includes the obligation of each Party to return or destroy all documents or electronic data in its or its representatives' possession that the opposing Party produced to it in this litigation in accordance with the Confidentiality Order entered in the Action. ECF No. 85. The Parties reserve all rights, and release none in this Stipulation, regarding any subsequent disclosure of their protected information by the opposing Party or its representatives.

9.6     All of the Exhibits to the Stipulation are fully incorporated herein by this reference. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and of any exhibit attached hereto, the terms of this Stipulation shall prevail.

9.7     It is agreed that none of the Parties shall disparage any other Party in any form or through any medium. Defendants shall comment, if asked about the Settlement, in substance that while they vigorously disputed the allegations in the Complaint, they are pleased to have resolved the matter. Any public comment by Parties or their counsel shall be consistent with the materials publicly-field with the Court.  For example, Parties and their counsel may make statements or express their belief concerning: (i) the merits of the claims or defenses in the Litigation; (ii) the terms and conditions, amount, benefits, or favorable nature of the Settlement; and (iii) the reasons and support for the Settlement, Plan of Allocation, and any application or applications described in ¶7.1 above.  Plaintiffs and Co-Lead Counsel and Defendants and Defendants' Counsel shall not make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

9.8     Whether or not the Stipulation is approved by the Court and whether or not the Settlement is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and all proceedings in connection with the Stipulation confidential.

9.9     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Stipulation is the result of arm's-length negotiations

between the Parties and that all Parties have contributed substantially and materially to the preparation of this Stipulation.

9.10    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.11    No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.12    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Parties hereto and no representations, warranties or inducements have been made to any Party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear its own costs.

9.13    Co-Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class that it deems appropriate.

9.14    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.15    The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in pdf format. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

9.16    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

9.17    Subject to entry of the Judgment, substantially in the form of Exhibit B hereto, all Parties hereto submit to the jurisdiction of the Court for purposes of implementing the Settlement embodied in the Stipulation.

9.18    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

9.19    Pending approval of the Court of this Stipulation and its Exhibits, all non-settlement-related proceedings in this Action shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Plaintiffs' Claims against any of the Released Defendant Parties.

9.20    Unless otherwise provided, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

9.21    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their

counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF**, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

DATED: August 13, 2024

**ROBBINS GELLER RUDMAN & DOWD LLP**
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)


JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

*Counsel for Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 and Co-Lead Counsel for the Class*

- 39 -

**LABATON KELLER SUCHAROW LLP**
CHRISTINE M. FOX (*pro hac vice*)
JAMES M. FEE (*pro hac vice*)

_____
            CHRISTINE M. FOX

140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
cfox@labaton.com
jfee@labaton.com

*Counsel for Boston Retirement System and City
of Dearborn Police & Fire Revised Retirement
System, and Co-Lead Counsel for the Class*

**LAW OFFICE OF RACINE &
ASSOCIATES**
MARIE T. RACINE
1001 Woodward Avenue, Suite 1100
Detroit, MI 48226
Telephone: 313/961-8930
313/961-8945 (fax)
mracine@racinelaw.us

*Additional Counsel for Dearborn Police & Fire
Revised Retirement System*

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
ANDREW J. EHRLICH (*pro hac vice*)
STACI YABLON (*pro hac vice*)
ALISON R. BENEDON (*pro hac vice*)

_____
ANDREW J. EHRLICH

1285 Avenue of the Americas
New York, NY 10019
Telephone: 212/373/3166
aehrlich@paulweiss.com
syablon@paulweiss.com
abenedon@paulweiss.com

**SMITH, GAMBRELL & RUSSELL, LLP**
PETER A. SILVERMAN (IL Bar # 6196081)
LISA M. MAZZONE (IL Bar #6303922)
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: 312/264-1004
psilverman@sgrlaw.com
lmazzone@sgrlaw.com

*Counsel for Oak Street Health, Inc.; Michael
Pykosz; Timothy Cook; Geoff Price; Griffin
Myers; General Atlantic LLC; General Atlantic
(OSH) Interholdco, L.P.; Newlight Partners LP;
and Newlight Harbour Point SPV LLC*

**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**
MARCELLA L. LAPE
CLARE LILEK


_____
MARCELLA L. LAPE

320 South Canal Street, Suite 4700
Chicago, IL 60606
Telephone: 312/407-0700
marcie.lape@skadden.com
clare.lilek@skadden.com

- 41 -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
ANDREW J. EHRLICH (*pro hac vice*)
STACI YABLON (*pro hac vice*)
ALISON R. BENEDON (*pro hac vice*)

_____
ANDREW J. EHRLICH

1285 Avenue of the Americas
New York, NY 10019
Telephone: 212/373/3166
aehrlich@paulweiss.com
syablon@paulweiss.com
abenedon@paulweiss.com

**SMITH, GAMBRELL & RUSSELL, LLP**
PETER A. SILVERMAN (IL Bar # 6196081)
LISA M. MAZZONE (IL Bar #6303922)
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: 312/264-1004
psilverman@sgrlaw.com
lmazzone@sgrlaw.com

*Counsel for Oak Street Health, Inc.; Michael Pykosz; Timothy Cook; Geoff Price; Griffin Myers; General Atlantic LLC; General Atlantic (OSH) Interholdco, L.P.; Newlight Partners LP; and Newlight Harbour Point SPV LLC*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
MARCELLA L. LAPE
CLARE LILEK

_____
MARCELLA L. LAPE

320 South Canal Street, Suite 4700
Chicago, IL 60606
Telephone: 312/407-0700
marcie.lape@skadden.com
clare.lilek@skadden.com

- 41 -

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
SCOTT MUSOFF (*pro hac vice*)
One Manhattan West
395 9th Avenue
New York, NY 10001-8602
Telephone: 212/735-3000
scott.musoff@skadden.com

*Counsel for J.P. Morgan Securities, Inc.,
Goldman Sachs & Co. LLC; Morgan Stanley &
Co. LLC, William Blair & Company, LLC; and
Piper Sandler Companies*

SIDLEY AUSTIN LLP
SARA B. BRODY (*pro hac vice*)
JOHN M. SKAKUN III (IL Bar # 6297636)
JARRETT H. GROSS (IL Bar # 6323993)


_____
SARA B. BRODY

One South Dearborn Street
Chicago, IL 60603
Telephone: 312/853-7000
sbrody@sidley.com
jskakun@sidley.com
jarrett.gross@sidley.com

*Counsel for Regina Benjamin, Carl Daley,
Cheryl Dorsey, Mohit Kaushal, Kim Keck, Julie
Klapstein, Paul Kusserow, Robbert Vorhoff, and
Srdjan Vukovic*

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 16, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

*/s/ Christine M. Fox*
CHRISTINE M. FOX