UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OAK STREET HEALTH, INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 1:22-cv-00149

<u>CLASS ACTION</u>

Judge Jeffrey I. Cummings

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION

4867-7664-9712.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................1

II. OVERVIEW OF THE LITIGATION ......................................................................3

III. PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS ...............................................................................................4

IV. ARGUMENT.............................................................................................................5

    A.    The Proposed Settlement Warrants Final Approval ......................................5

        1.    Plaintiffs and Co-Lead Counsel Adequately Represented the Settlement Class.................................................................................6

        2.    The Settlement Resulted from Extensive Arm's-Length Negotiations .......................................................................................7

        3.    The Settlement Provides a Favorable Benefit Considering the Costs, Risks, and Delay of Trial and Appeal ....................................8

            a.    Risks to Establishing Liability ...........................................9

            b.    Risks Related to Proving Damages.................................10

        4.    The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors .................................................................12

        5.    The Endorsement of Co-Lead Counsel and the Reaction of the Settlement Class Favor Approval ...................................13

    B.    The Plan of Allocation Warrants Final Approval.......................................14

    C.    Class Certification Remains Warranted.....................................................14

V. CONCLUSION........................................................................................................15

- i -

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allison v. Oak Street Health, Inc.*,
2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ............................................................9

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ...............................................................................12

*In re Career Educ. Corp. Sec. Litig.*,
2008 WL 8666579 (N.D. Ill. June 26, 2008) ...........................................................8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ................................................................................5

*Macovski v. Groupon, Inc.*,
2022 WL 17256387 (N.D. Ill. Oct. 28, 2022).........................................................14

*Macovski v. Groupon, Inc.*,
No. 1:20-cv-02581, ECF No. 110-1 (N.D. Ill. June 27, 2022) .................................14

*Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
No. 1:16-cv-10632, ECF No. 191 (N.D. Ill. Nov. 17, 2021) ....................................11

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)....................................................11, 14

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ......................................................................... *passim*

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77k...................................................................................................................3
§77l ...................................................................................................................3
§77o...................................................................................................................3
§78j(b)................................................................................................................3
§78t(a)................................................................................................................3

**Page**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................4, 5, 13, 14
    Rule 23(a)...........................................................................................14, 15
    Rule 23(b)(3)......................................................................................14, 15
    Rule 23(c)(2)(B).......................................................................................5
    Rule 23(e)(2) ..................................................................................... *passim*
    Rule 23(e)(2)(A) ................................................................................. 5-7
    Rule 23(e)(2)(B)....................................................................................5, 7
    Rule 23(e)(2)(C).....................................................................................5, 8
    Rule 23(e)(2)(C)(ii)................................................................................12
    Rule 23(e)(2)(C)(iii)..............................................................................12
    Rule 23(e)(2)(C)(iv)..............................................................................12
    Rule 23(e)(2)(D) .................................................................................5, 12
    Rule 23(e)(3)..........................................................................................12

17 C.F.R.
    §240.10b-5 ..............................................................................................3

4867-7664-9712.v1

## I. INTRODUCTION

Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 ("CPTPF Plans"), and Boston Retirement System ("BRS" and collectively, "Lead Plaintiffs"), and additionally named plaintiff City of Dearborn Police & Fire Revised Retirement System ("Dearborn" and together with Lead Plaintiffs, "Plaintiffs"), respectfully submit this memorandum in support of their motion for final approval of the Settlement of the claims in this Action against Defendants.[1]  The $60 million all-cash settlement is the result of Plaintiffs' and Co-Lead Counsel's diligent efforts in litigating this matter and the Parties' arm's-length settlement negotiations with the assistance of an experienced and well-respected mediator, Robert A. Meyer of JAMS.  Lead Plaintiffs and Co-Lead Counsel believe the Settlement is a highly-favorable result for the Settlement Class and therefore merits approval.

This case has been vigorously litigated from its commencement, and the Settlement is the result of two years of substantial efforts.  Prior to reaching an agreement, Co-Lead Counsel: conducted a thorough investigation that included analysis of SEC filings, media and analyst reports, press releases, shareholder communications, relevant case law and authorities, and other publicly-available information, and consulting with experts; prepared the detailed, 296-paragraph Complaint; prepared an extensive brief in opposition to Defendants' omnibus motion to dismiss (which Judge Kennelly denied in large part); prepared for and defended three Plaintiffs' representative depositions

---

[1]    Defendants include Oak Street Health, Inc. ("Oak Street Health" or the "Company"); Michael Pykosz; Timothy Cook; Geoff Price; Griffin Myers; General Atlantic LLC n/k/a General Atlantic, L.P.; General Atlantic (OSH) Interholdco, L.P.; Newlight Partners LP; Newlight Harbour Point SPV LLC; Regina Benjamin; Carl Daley; Cheryl Dorsey; Mohit Kaushal; Kim Keck; Julie Klapstein; Paul Kusserow; Robbert Vorhoff; Srdjan Vukovic; J.P. Morgan Securities, Inc.; Goldman Sachs & Co. LLC; Morgan Stanley & Co. LLC; William Blair & Company, LLC; and Piper Sandler Companies (collectively, "Defendants" and together with Plaintiffs, the "Parties").  Capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated August 13, 2024 (ECF No. 174) (the "Stipulation").  Citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

and worked with a market efficiency expert and defended that expert's deposition in connection with Plaintiffs' motion for class certification; engaged in fact discovery that included serving and negotiating discovery requests and obtaining and analyzing more than 3.5 million pages of documents from Defendants and third parties, negotiating discovery and privilege disputes in numerous meet and confers with Defendants, and taking, defending, or participating in 15 additional depositions; consulted with experts; prepared for mediation, including consultation with a damages expert and the exchange of briefs detailing the Parties' respective positions; and participated in a mediation session before Mr. Meyer. *See generally* Declaration of Christine M. Fox in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Plaintiffs Pursuant to the PSLRA ("Fox Declaration"), submitted herewith.[2]

The $60 million Settlement provides the Settlement Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Co-Lead Counsel, who are well-respected and have substantial experience in prosecuting securities class actions, have concluded that the Settlement is a significant result for the Settlement Class. This conclusion is based on their diligent prosecution of the Action, as well as the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the likelihood of obtaining a larger judgment against Defendants after trial, and past experience in litigating similar actions. Plaintiffs, who have a significant stake in the Action, also believe that the Settlement is in the best interest of the Settlement Class. *See* Ex. 1, ¶5 (CPTPF Plans

---

[2]    For the sake of brevity in this memorandum, the Court is respectfully referred to the Fox Declaration for additional information concerning, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation. Citations to "¶" herein refer to the Fox Declaration. All exhibits herein are annexed to the Fox Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first reference is to the designation of the entire exhibit attached to the Fox Declaration and the second reference is to the exhibit designation within the exhibit itself.

- 2 -

declaration supporting final approval); Ex. 2, ¶7 (BRS declaration supporting final approval); Ex. 3, ¶7 (Dearborn declaration supporting final approval).

For all the reasons discussed herein and in the concurrently-filed declarations, Plaintiffs respectfully submit that the Settlement is a very good recovery for the Settlement Class and should be approved by the Court. Likewise, the proposed Plan of Allocation, which was developed by Co-Lead Counsel and their damages expert based on an assessment of the damages theories asserted in the Action, is fair, reasonable, and adequate, and also should be approved by the Court.

## II. OVERVIEW OF THE LITIGATION

The operative complaint in the Action is Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (the "Complaint") filed on May 25, 2022. ECF No. 40. The Complaint alleges violations of §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 promulgated thereunder. The Complaint alleges, *inter alia*, that during the Class Period, Defendants made false and misleading statements and omissions to investors concerning certain of Oak Street Health's patient acquisition tactics and that Defendants allegedly concealed that Oak Street Health was paying for referrals for prospective patients on a per patient basis and marketing free transportation to prospective patients, which Plaintiffs claim violates the federal Anti-Kickback Statute and/or False Claims Act. Plaintiffs allege the false statements artificially inflated Oak Street Health's stock price, and when the truth was eventually disclosed, the stock declined, resulting in damages to the Settlement Class. ECF No. 40.

On July 25, 2022, Defendants filed their omnibus motion to dismiss the Action. ECF No. 59. On February 10, 2023, after the motion was fully briefed, Judge Kennelly issued an Order granting Defendants' motion with respect to the §12(a)(2) claim in its entirety and the §11 claim only with

4867-7664-9712.v1

respect to the May 2021 Offering.  ECF No. 74.  Defendants' motion was otherwise denied.  *Id.*  On October 26, 2023, the case was reassigned to Judge Cummings.  ECF No. 123.

On December 15, 2023, Plaintiffs filed a motion for class certification seeking to certify a class and appoint BRS, CPTPF Plans, and Dearborn as class representatives and Robbins Geller and Labaton as Class Counsel.  ECF Nos. 134-135.  On February 20, 2024, after deposing representatives from BRS, CPTPF Plans, Dearborn, and the investment managers that executed Plaintiffs' investments in Oak Street Health, Defendants filed their opposition.  ECF Nos. 145-146.  Plaintiffs filed their reply brief on April 22, 2024.  ECF No. 162.

On March 12, 2024, certain of the Parties participated in an in-person mediation session with mediator, Robert A. Meyer of JAMS, who has extensive experience mediating complex securities class action litigations.  Following the mediation session, which did not result in an agreement, Mr. Meyer and those Parties continued to negotiate a potential settlement as Plaintiffs and Co-Lead Counsel pursued extensive document and deposition discovery.  On May 16, 2024, the Parties agreed to settle the Action based on a mediator's proposal issued by Mr. Meyer, subject to Defendants obtaining certain approvals.  The Parties then negotiated the Stipulation and supporting exhibits and executed them on August 13, 2024.  ECF No. 174.  This Court preliminarily approved the Settlement on September 19, 2024 ("Notice Order").  ECF No. 184.

## III.  PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved the form and content of the Notice and Proof of Claim ("Notice Packet"), and Summary Notice, as well as Lead Plaintiffs' proposed plan for the distribution and mailing of the Notice Packet, which included all the information required by Rule 23 and the PSLRA.  As detailed in the accompanying declaration of the Claims Administrator, JND Legal Administration ("JND"), as of November 4, 2024, more than

- 4 -

31,600 copies of the Notice Packet have been mailed or emailed to potential Settlement Class Members, brokers, and nominees. *See* Declaration of Luiggy Segura Regarding: (A) Dissemination of the Notice Packet; (B) Publication/Transmission of the Summary Notice; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, dated November 6, 2024, ¶8 ("Mailing Decl."), Ex. 6. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on October 16, 2024. *Id.*, ¶9. JND has also established a dedicated Settlement website, www.OakStreetHealthSecuritiesSettlement.com, to provide potential Settlement Class Members with information concerning the Settlement, access to copies of the Notice and other important documents, and an online claim portal. *Id.*, ¶11. This combination of individual notice by first-class mail to Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over a newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV.    ARGUMENT

### A.    The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under Rule 23, as amended in 2018, a district court may approve a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

4867-7664-9712.v1

(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). The Advisory Committee Notes to the 2018 amendments indicate that Rule 23(e)(2) is not intended to "displace" any factor previously adopted by the courts, but rather to focus litigants and courts on the core concerns.

Given the $60 million all-cash recovery obtained, the risks faced, and the extensive arm's-length negotiations and efforts of Plaintiffs and Co-Lead Counsel that led to the agreement, the Settlement satisfies each of the Rule 23(e)(2) and *Accretive* factors.

> **1. Plaintiffs and Co-Lead Counsel Adequately Represented the Settlement Class**

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As detailed herein, in the accompanying declarations, and in the Memorandum of Points and Authorities in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to the PSLRA ("Fee Memorandum"), Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class by diligently prosecuting this litigation and securing the favorable Settlement, through, for example:

- Co-Lead Counsel's extensive investigation in connection with preparing Plaintiffs' detailed, 296-paragraph Complaint (¶¶14-15);

- full briefing on Defendants' omnibus motion to dismiss, followed by the Court's February 10, 2023 order largely denying the motion (¶¶17-23);

- full briefing on Plaintiffs' motion for class certification, including related discovery (¶¶25-27, 40, 43, 45);

- retention of a market efficiency and damages expert, Chad Coffman, CFA, in connection with class certification (¶25);

- retention of Professor Joshua Mitts (Ph.D.), the David J. Greenwald Professor of Law at Columbia University, to rebut Defendants' "tracing" arguments and expert report, in connection with class certification (¶27);

- engaging in robust discovery, which included serving and negotiating discovery requests, obtaining and analyzing more than 3.5 million pages of documents from Defendants and third parties, negotiating discovery and privilege disputes in numerous meet and confers, and taking, defending, or participating in 19 depositions (¶¶29, 32-48); and

- preparation for and attending a mediation, including the exchange of mediation briefs detailing the Parties' respective positions on liability and damages and settlement demands (¶¶49-50).[3]

Further, in actively overseeing and participating in this litigation, each Plaintiff, working with Co-Lead Counsel, responded to interrogatories, produced documents, submitted declarations in support of class certification, and prepared for and sat for a deposition. *See* ¶¶42-45; Exs. 1-3. Lead Plaintiffs also retained highly experienced and well-respected counsel, who not only zealously prosecuted the litigation from investigation through negotiations, but who were able to secure a very favorable settlement. ¶¶6-7, 94-95; Barz Decl., ¶¶13-18. This diligent and adequate representation of the Settlement Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Resulted from Extensive Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Parties reached the Settlement only after protracted, arm's-length negotiations between experienced counsel, including a mediation session with Mr. Meyer, an experienced mediator. ¶¶49-51; Barz Decl., ¶¶5-7. At the time of the March 12, 2024 mediation, Lead Plaintiffs and Co-Lead Counsel had achieved a substantial litigation victory early in the case, were well into

---

[3] *See also* Declaration of James E. Barz in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to the PSLRA ("Barz Decl."), submitted herewith as Ex. 4, ¶¶5-6.

4867-7664-9712.v1

discovery, had fully briefed Plaintiffs' class certification motion, and were therefore well-informed of the strengths and weaknesses of the claims. The mediation involved the further exchange of the Parties' respective views. ¶49. The Parties participated in a thorough, hard-fought mediation session and additional discussions with Mr. Meyer over the course of two months, after which the Parties were only able to reach an agreement after the issuance of a "mediator's proposal" by Mr. Meyer to settle the litigation for $60 million. ¶¶49-51. This well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (approving settlement that "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Provides a Favorable Benefit Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Accretive*, 773 F.3d at 863-64. The $60 million cash recovery obtained for the benefit of the Settlement Class provides highly favorable relief considering the legal, factual, and practical risks of continued litigation against the Defendants. Additionally, the "stage of the proceedings and the amount of discovery completed" strongly weigh in favor of approval as Plaintiffs had largely prevailed on Defendants' omnibus motion to dismiss after extensive briefing, conducted a substantial amount of discovery, and fully briefed Plaintiffs' motion for class certification by the time of settlement. *See* §§IV.A.1-2.

### a. Risks to Establishing Liability

While Plaintiffs believe that they had assembled a strong case against Defendants on liability, a finding in favor of the Settlement Class at trial was never assured. Plaintiffs would need to prove to the satisfaction of the Court and jury that Defendants made false and misleading statements, with scienter, that were material to a reasonable investor. Defendants have adamantly denied liability.

For example, regarding falsity, the Court previously found that *if* Oak Street Health had been employing the alleged patient acquisition tactics and concealed them from investors, this could render the alleged statements false and misleading. *See Allison v. Oak Street Health, Inc.*, 2023 WL 1928119, at *6 (N.D. Ill. Feb. 10, 2023). However, for Plaintiffs to prevail against the Defendants on their claims at summary judgment and at trial, they would have to marshal persuasive evidence to establish that the Defendants made material misrepresentations or omitted to disclose material information. Defendants would likely have continued to argue, among other things, that none of the alleged statements were false or misleading and the Company had no independent duty to disclose the allegedly improper patient acquisition tactics before they were even the subject of an investigation by the DOJ, emphasizing that neither the DOJ nor any other regulatory entity had filed any complaint or action against Oak Street Health. ¶67. Defendants would also likely continue to argue that Oak Street Health disclosed the practices Plaintiffs claim were concealed, arguing that in the IPO Registration Statement, and consistently thereafter, Oak Street Health disclosed that it worked with insurance agents to recruit patients. ¶68.

Regarding scienter with respect to the Exchange Act claims, Defendants would no doubt seek to set forth evidence showing that Defendants sincerely believed that Oak Street Health's patient acquisition strategies complied with applicable law. Defendants would also argue that there is no evidence to show that any Defendant was motivated to mislead shareholders when making any of the challenged statements. ¶71.

- 9 -

### b.     Risks Related to Proving Damages

Even if Plaintiffs established liability, they faced further risks and uncertainty in proving damages. Defendants likely would retain experts to opine and build on loss causation arguments made in their motion to dismiss (ECF No. 59 at 34-35), and thereafter, that the alleged losses did not correlate to damages attributable to the alleged misstatements. ¶¶74-76.

Among other things, Defendants would likely argue that with respect to the Exchange Act claims, loss causation could not be established because the Company's disclosure after market close on November 8, 2021 that, *inter alia*, the DOJ was investigating Oak Street Health's patient acquisition tactics, could not support Plaintiffs' claims because "courts have explicitly held that 'the announcement of an investigation, standing alone, is insufficient to establish loss causation.'" ECF No. 59 at 35; ¶74. Even if a jury were to determine that the disclosure did support loss causation, Defendants were likely to continue to argue that the subsequent stock price decline was caused by "other events, such as an earnings announcement" on the same evening of the alleged corrective disclosure. ¶¶74-75. Regarding Plaintiffs' §11 claims, Defendants would likely argue that the claims fail on the basis that Defendants would be able to establish negative causation. Defendants would also likely continue to argue that Plaintiffs who purchased after December 6, 2020 lacked standing because they could not trace their shares to a specific registration statement. ¶76.

Although Lead Plaintiffs had retained experts to opine in support of their causation and damages theories, there is no guarantee that this "battle of the experts" would result in a favorable outcome for the Settlement Class at summary judgment, trial, or on appeal. *See Accretive*, 773 F.3d at 863 (noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling"); *see also* ¶77.

Indeed, Plaintiffs' damages expert has estimated that, the likely recoverable class wide damages, consistent with the Plan of Allocation and factoring in certain negative causation defenses and certain disaggregation of the abnormal price decline on November 9, 2021, would be approximately $386 million. *See* ¶¶77-78 (providing additional detail regarding the estimates). Ultimately the amount of damages awarded would be determined after trial and they could be less. They could also be more, if, for example, Defendants failed to establish a negative causation defense for the Securities Act claims, meaning §11 damages could be recovered for stock declines beyond the November 9, 2021 decline, the estimated $386 million in damages could increase to approximately $542 million or more. *See id*.

The $60 million settlement, at this juncture, results in a certain and favorable recovery representing approximately 15.5% of Plaintiffs' estimate of likely recoverable damages if the case had not settled. ¶78. This provides a significant recovery to the Settlement Class. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, No. 1:16-cv-10632, ECF No. 191 (N.D. Ill. Nov. 17, 2021) (approving $27 million settlement, which briefing (ECF No. 185 at 14-15) estimated at 9.4% of damages). The Settlement Amount is also ***four times greater*** than the median settlement value in securities class action settlements in 2023, which was reported by Cornerstone Research to be $15 million. Ex. 5 at 1.

Moreover, the likely "complexity, length, and expense of further litigation" would have been substantial, which weighs in favor of settling the claims. *Accretive*, 773 F.3d at 863; *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."). Even if Plaintiffs were able to win on every issue, the entire litigation process could span several years, with costs of defense reducing available insurance. ¶79. This factor strongly supports final approval.

4867-7664-9712.v1

### 4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors also weighs in favor of final approval.

First, as explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are well-established and effective and they provide Settlement Class Members with the necessary information to receive their *pro rata* share of the Settlement. The claims process provides for cash payments based on the trading information provided by Claimants, and gives them an opportunity to cure any deficiencies or request review of the denial of their claims by the Court. Stipulation, ¶6.7.

Second, as detailed in the Fee Memorandum, the proposed attorneys' fees of 29% of the Settlement Amount and litigation expenses, plus accrued interest on both amounts, are reasonable under the common fund doctrine, in light of the efforts of Co-Lead Counsel, the contingent nature of their representation, and the risks in the litigation.[4]

Third, in addition to the Stipulation, the Parties entered into a confidential Supplemental Agreement that establishes the conditions under which Oak Street Health may terminate the Settlement based on whether requests for exclusion from the Settlement Class reach a specified threshold. *See* Stipulation, ¶8.4. This type of agreement is standard in securities class actions. *See,*

---

[4] Since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Settlement Class Members until it is no longer economically feasible, so there is no risk that counsel will be paid but Settlement Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

- 12 -

*e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Stipulation of Settlement, ECF No. 274-1 at ¶8.3 (N.D. Ill. June 19, 2019). The Parties have no other agreements with each other.

And fourth, under the proposed Plan of Allocation, discussed below, eligible Claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. Mailing Decl., Ex. A at 8-15. Plaintiffs will receive the same type of recovery (based on their calculated Recognized Claims) as all other similarly situated Oak Street Health share purchasers.

### 5. The Endorsement of Co-Lead Counsel and the Reaction of the Settlement Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "opinion of competent counsel," the "amount of opposition to the settlement," and "the reaction of members of the class to the settlement" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the settled claims have been litigated and settled by experienced and competent counsel on both sides of the case. Co-Lead Counsel are well known for their many years of experience and success in complex class action litigation. ¶¶94-95; Barz Decl., ¶¶13, 17-18; http://rgrdlaw.com; http://www.labaton.com. Based on their extensive experience and expertise, Co-Lead Counsel have determined that the Settlement is in the best interest of the Settlement Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation. ¶¶7, 65, 115; Barz Decl., ¶¶7, 20. This endorsement favors final approval. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011) (holding opinion of counsel with "extensive experience" that the settlement was beneficial to the class and met the requirements of Rule 23 "supports [the court's] approval of the Settlement").

Moreover, as discussed above, JND has sent notice to over 31,600 potential Settlement Class Members in accordance with the Notice Order. While the deadline for the Settlement Class

Members to exclude themselves or object is November 21, 2024, to date no objections or requests for exclusion have been received. Mailing Decl., ¶12. Plaintiffs are Settlement Class Members with significant losses who participated in and oversaw the litigation, and they endorse the Settlement. *See* Ex. 1 (CPTPF Plans declaration), ¶5; Ex. 2 (BRS declaration), ¶7; Ex. 3 (Dearborn declaration), ¶7.

Thus, each Rule 23(e)(2) and *Accretive* factor is satisfied. Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and request that the Court grant final approval.

### B. The Plan of Allocation Warrants Final Approval

Lead Plaintiffs also seek approval of the proposed Plan of Allocation, which is set forth in full in the Notice. Mailing Decl., Ex. A at 8-15. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3. Here, the Plan of Allocation was developed by Co-Lead Counsel in conjunction with their damages expert and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. *See* ¶¶81-87. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants. Calculation of a Claimant's Recognized Claim will depend upon several factors, including when the shares were held, purchased, or sold. This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Macovski v. Groupon, Inc.*, No. 1:20-cv-02581, Notice, ECF No. 110-1 (N.D. Ill. June 27, 2022) (setting forth similar plan of allocation); *Macovski v. Groupon, Inc.*, 2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) (approving plan of allocation).

### C. Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily certified the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 184, ¶¶3-

4867-7664-9712.v1

5. None of the facts regarding certification have changed, and there has been no objection to certification. Accordingly, Lead Plaintiffs respectfully request that the Court finally certify the Settlement Class and appoint Plaintiffs as class representatives and Co-Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V. CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiffs respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class. Proposed orders will be submitted with Plaintiffs' reply papers after the objection and exclusion deadlines.

DATED: November 7, 2024          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)

                                 */s/ James E. Barz*
                                JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

*Counsel for Central Pennsylvania Teamsters*
*Pension Fund – Defined Benefit Plan and Central*
*Pennsylvania Teamsters Pension Fund –*
*Retirement Income Plan 1987 and Co-Lead*
*Counsel for the Class*

- 15 -

DATED: November 7, 2024

LABATON KELLER SUCHAROW LLP
CAROL C. VILLEGAS (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
JAMES M. FEE (*pro hac vice*)


*/s/ Christine M. Fox*
CHRISTINE M. FOX

140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
cfox@labaton.com
jfee@labaton.com
cvillegas@labaton.com

*Counsel for Boston Retirement System and City of Dearborn Police & Fire Revised Retirement System, and Co-Lead Counsel for the Class*

LAW OFFICE OF RACINE & ASSOCIATES
MARIE T. RACINE
1001 Woodward Avenue, Suite 1100
Detroit, MI  48226
Telephone:  313/961-8930
313/961-8945 (fax)
mracine@racinelaw.us

*Additional Counsel for City of Dearborn Police & Fire Revised Retirement System*

- 16 -

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on November 7, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

*/s/ James E. Barz*
JAMES E. BARZ