UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OAK STREET HEALTH, INC., et al., <br><br> Defendants. | Case No. 1:22-cv-00149 <br><br> <u>CLASS ACTION</u> <br><br> Judge Jeffrey I. Cummings |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
AWARDS TO PLAINTIFFS PURSUANT TO THE PSLRA

4886-0255-1026.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. AWARD OF ATTORNEYS' FEES .......................................................................3

    A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases...........................3

    B. The Requested Fee Is Reasonable and Appropriate ................................................4

        1. The 29% Attorneys' Fee Request Is Consistent with Fees Awarded in This District ......................................................................................5

        2. Co-Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Settlement Class...................................................7

        3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation .........................................9

        4. The Stakes of the Action Favor a 29% Fee Award....................................11

        5. The Reaction of the Settlement Class Supports the Requested Award.......................................................................................................11

        6. Plaintiffs Approved the 29% Fee Request .................................................12

III. CO-LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE..................12

IV. AWARDS TO PLAINTIFFS PURSUANT TO THE PSLRA ...........................................13

V. CONCLUSION.....................................................................................................14

4886-0255-1026.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
   2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................13

*Azar v. Grubhub Inc.*,
   No. 1:19-cv-07665, ECF 118 (N.D. Ill. Jan. 12, 2023) ............................................6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ............................................................4

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
   No. 1:12-cv-03297, ECF No. 130 (N.D. Ill. July 22, 2015) ....................................13

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
   2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ..................................................6, 9, 14

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*
   2014 WL 4950173 (N.D. Ill. July 8, 2014).............................................................14

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .....................................................................................4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .....................................................................................8

*In re Akorn, Inc. Sec. Litig.*,
   2018 WL 2688877 (N.D. Ill. June 5, 2018)..............................................................14

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010).......................................................................10

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..............................................................................12, 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................4, 6

*In re GoHealth, Inc. Sec. Litig.*,
   2024 WL 3647088 (N.D. Ill. May 22, 2024)....................................................4, 6, 13

*In re Groupon, Inc. Sec. Litig.*,
   2016 WL 3896839 (N.D. Ill. July 13, 2016)...............................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................................................10

- ii -

**Page**

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...................................................................3, 11, 12

*Jorling v. Anthem, Inc.*,
    836 F. Supp. 2d 821 (S.D. Ind. 2011) ...................................................................7

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...................................................................3, 5, 6

*Macovski v. Groupon, Inc.*,
    2022 WL 17256417 (N.D. Ill. Oct. 28, 2022)....................................................4, 12

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)...................................................................5

*Pierrelouis v. Gogo Inc.*,
    2022 WL 7950362 (N.D. Ill. Oct. 13, 2022)...........................................................14

*Ronge v. Camping World Holdings, Inc.*,
    No. 1:18-cv-07030, ECF No. 158 (N.D. Ill. Aug. 5, 2020) ......................................13

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................6, 9, 11

*Silverman v. Motorola, Inc.*,
    2012 WL 1597388 (N.D. Ill. May 7, 2012),
    *aff'd*, 739 F.3d 956 (7th Cir. 2013)...................................................................4, 7, 13

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) .................................................................... *passim*

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ...................................................................3, 10

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...................................................................5, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................5

*Trustees v. Greenough*,
    105 U.S. 527 (1881)...................................................................3

*Will v. Gen. Dynamics Corp.*,
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..........................................................3

4886-0255-1026.v1

**Page**

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) ........................................................................4

*Wolff v. Cash 4 Titles*,
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..............................................5

*Wong v. Accretive Health, Inc.*,
   2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ...............................................13

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §77z-1(a)(4) .............................................................................................2, 14
   §78u-4(a)(4) ............................................................................................2, 14

4886-0255-1026.v1

## I.  INTRODUCTION

Co-Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Labaton Keller Sucharow LLP ("Labaton") have obtained a significant Settlement[1] consisting of $60 million, plus interest earned thereon.  For the reasons set forth herein and in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Settlement is a very favorable result.  It was achieved through Co-Lead Counsel's skill and advocacy, as well as their vigorous litigation of this matter that included, among other things, overcoming Defendants' omnibus motion to dismiss (in large part), building the case through extensive fact discovery, and negotiating aggressively against widely recognized defense firms on a fully contingent basis.  As compensation for their efforts in achieving this result, Co-Lead Counsel seek an award of attorneys' fees of 29% of the $60 million Settlement Amount, plus expenses/charges ("expenses") incurred in the prosecution of the Action in the amount of $888,947.35, plus interest on both amounts at the same rate and for the same period as that earned by the Settlement Fund.  As detailed in §II.B.1. below, the 29% fee request is consistent with the fees often awarded in comparable securities class action settlements.

The 29% fee requested is warranted in light of the contingent nature of counsel's representation, the efforts of counsel in obtaining this favorable result, and the risks faced in the prosecution and settlement of the Action.  Absent the Settlement, and assuming Plaintiffs prevailed

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation and Agreement of Settlement dated August 13, 2024, ECF No. 174 (the "Stipulation").  Citations are omitted and emphasis is added unless otherwise noted.  Additional support is not repeated but found in the Declaration of Christine M. Fox in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Plaintiffs Pursuant to the PSLRA ("Fox Declaration"), submitted herewith.  Citations to "¶" herein refer to the Fox Declaration, and all exhibits herein are annexed to the Fox Declaration.  Citations to exhibits will be referenced as "Ex. ___ - ___."  The first reference is to the exhibit and the second reference is to the exhibit designation within the exhibit.

on Defendants' anticipated motion for summary judgment, the claims against Defendants could have continued for many years through trial and likely appeals. As a result of Co-Lead Counsel's diligent prosecution of this Action, a favorable settlement was achieved that provides Settlement Class Members with a substantial cash benefit now, rather than a potential recovery after several years of continued litigation, and eliminates the possibility of no recovery at all or of the costs of litigation diminishing the recovery.

Each of the Plaintiffs, Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 ("CPTPF Plans"), the Boston Retirement System ("BRS"), and the City of Dearborn Police & Fire Revised Retirement System ("Dearborn," and together "Plaintiffs"), are sophisticated institutional investors that were actively involved in the Action, and they have approved the requested fee and expenses. *See* Ex. 1, ¶6 (CPTPF Plans declaration approving requested fee and expenses); Ex. 2, ¶8 (BRS declaration approving requested fee and expenses); Ex. 3, ¶8 (Dearborn declaration approving requested fee and expenses). Separately, Plaintiffs seek awards of $12,500 for the CPTPF Plans, $6,000 for the BRS, and $2,805 for Dearborn, pursuant to 15 U.S.C. §77z-1(a)(4) & §78u-4(a)(4) in connection with their representation of the Settlement Class. Plaintiffs support their applications with declarations setting forth the basis for the awards, which are consistent with those in other recent cases.

For all the reasons set forth herein and in the accompanying declarations, Co-Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable and should be awarded by the Court.

## II.     AWARD OF ATTORNEYS' FEES

### A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Settlement Class, Co-Lead Counsel seek as attorneys' fees a reasonable percentage of the fund recovered.  Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund.  Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common fund for a class are entitled to an award of fees and expenses from that fund as compensation for their work.  *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

The "lodestar" method (multiplying reasonable hours by reasonable rates) to assess attorneys' fees is an additional method for assessing an appropriate fee award and is often used in fee-shifting cases or cases involving statutory fee awards.  While it can be used in securities class actions as a cross-check on fee awards, courts have recognized it can create perverse incentives that reward inefficient staffing of cases, discourage early settlement talks, cause unnecessary delay in resolving disputes, and thereby increase the burden on the judicial system.  *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours"); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in civil rights fee-shifting case the challenge of judicial review of attorney time because the "judge cannot readily see what legal work was reasonably necessary at the time" and that rewarding lawyers for hours billed can create a "conflict of interests"); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.").

4886-0255-1026.v1

Thus, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis" to award attorneys' fees." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion on the appropriate method for a given case, "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award).

Consistent with this case law, judges in this District routinely award a reasonable percentage-of-the-fund as fees without any regard to lodestar. *See, e.g.*, *In re GoHealth, Inc. Sec. Litig.*, 2024 WL 3647088, at *1 (N.D. Ill. May 22, 2024) (fees awarded as a percentage of the settlement fund); *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (same); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (stating it was unnecessary to consider lodestar and citing cases), *aff'd*, 739 F.3d 956 (7th Cir. 2013) (affirming percentage award without any discussion of lodestar); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and stating "the Court sees no utility in considering" counsel's submitted lodestar). Accordingly, Co-Lead Counsel request a 29% fee award.

### B.      The Requested Fee Is Reasonable and Appropriate

The Supreme Court has emphasized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'"

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). It is well documented in publicly-available media that large defense firms representing corporations attract talented lawyers with very high compensation, and fee awards should serve to attract equally talented lawyers to plaintiff firms to take on the risks of contingent fee representation of plaintiffs in class action cases. *See, e.g.*, *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (approving fee award and noting that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel"); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) ("Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively.").

The percentage method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *See Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (stating "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services").

Here, the requested 29% fee appropriately compensates Co-Lead Counsel for the quality of services provided and the risks of obtaining no compensation at all.

### 1. The 29% Attorneys' Fee Request Is Consistent with Fees Awarded in This District

The Seventh Circuit has held that, in deciding common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. Aon Corp.*, 415 F.3d 597,

- 5 -

599 (7th Cir. 2005); *see also Silverman*, 739 F.3d at 957, 958 (holding attorneys' fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). Had this case been litigated on an individual rather than class basis, the customary fee arrangement would be in the range of 33% to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled before trial). Moreover, in common fund cases, "an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011).

The percentage sought here, 29% of the $60 million Settlement Amount is consistent with percentages awarded to Co-Lead Counsel in other securities class action cases in this District. *See, e.g.*, *GoHealth*, 2024 WL 3647088, at *1 (awarding Robbins Geller 30% on $29.25 million settlement); *Azar v. Grubhub Inc.*, No. 1:19-cv-07665, ECF 118 at 1-2 (N.D. Ill. Jan. 12, 2023) (awarding Robbins Geller 30% on $42 million settlement); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement). The 29% fee request is also consistent with fee percentages often awarded in this District to other law firms in securities and other complex class actions. *See, e.g.*, *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement); *Dairy Farmers of Am.*, 80 F. Supp. 3d at 862 (awarding 33.3% of $46 million antitrust settlement). Thus, Co-Lead Counsel's request of 29% of the Settlement Amount is fair and reasonable and consistent with the "market rate" based on prior fee awards in this District.

- 6 -

4886-0255-1026.v1

## 2. Co-Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Settlement Class

In evaluating counsel's fee request, courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Silverman*, 2012 WL 1597388, at *3 (noting that "[t]he representation that Class Counsel provided to the class was significant, both in terms of quality and quantity"). From the outset, Co-Lead Counsel sought to obtain the best possible recovery for the class. Securities cases are well known to be complex and recovery is far from certain due to the heightened pleading standards, which has made it harder for investors to bring and successfully conclude securities class actions. *See, e.g.*, *Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process").

This case required a determined investigation and the skill to respond to a host of legal and factual defenses raised by Defendants in connection with both their motion to dismiss and Plaintiffs' class certification motion. During the course of the Action, Co-Lead Counsel spent over 25,900 hours of attorney and professional staff time: (i) investigating the claims; (ii) drafting the detailed Complaint; (iii) preparing an extensive opposition to Defendants' omnibus motion to dismiss (which was denied in large part); (iv) conducting substantial discovery that included analyzing more than 3.5 million pages of documents, preparing for and taking ten fact depositions, participating in an additional two fact depositions noticed by Defendants, taking the deposition of Defendants' market efficiency expert, defending Plaintiffs' market efficiency expert deposition, participating in the depositions of Plaintiffs' two investment managers, defending the three representative depositions of Plaintiffs, and preparing for the 17 depositions that were scheduled to take place throughout the middle of May through the end of June 2024; (v) fully briefing Plaintiffs' motion for class

certification; and (vi) preparing for and participating in the mediation session that included the exchange of mediation statements regarding the Parties' respective positions on the claims and defenses, and damages. *See* ¶¶6, 14-15, 18, 25-51, 91-93.[2] During settlement negotiations, Co-Lead Counsel demonstrated their willingness to continue to litigate the claims rather than accept a settlement that was not in the best interest of the Settlement Class. Notably, the case did not settle at the mediation, but rather Co-Lead Counsel pressed forward with the litigation and negotiations. ¶¶50-51; *see also* Barz Decl., ¶¶6-7, 17-18.

Moreover, given the stakes involved, it can be difficult to settle these cases prior to defendants exhausting all their legal challenges through summary judgment. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities action prosecuted by Robbins Geller that was filed in 2002, resulted in jury verdict for plaintiffs in 2009, remanded after appeal and settled in 2016). Not only were Co-Lead Counsel, based on their reputations and willingness to litigate the case as long as necessary, able to secure a (relatively) prompt resolution less than three years after the case was filed, but they were also able to obtain a very favorable result. The $60 million Settlement results in a certain and favorable recovery of approximately 15.5% of Plaintiffs' expert's estimate of likely recoverable damages. *See* Settlement Memorandum, §IV.A.3.b.; ¶¶77-78. The Settlement Amount is also ***four times*** greater than the median settlement value in securities class action settlements in 2023, which was reported by Cornerstone Research to be $15 million. Ex. 5 at 1.

This result is all the more impressive given Co-Lead Counsel were opposed in this Action by counsel from Paul, Weiss, Rifkind, Wharton & Garrison LLP; Skadden, Arps, Slate, Meagher &

---

[2]     *See also* Declaration of James E. Barz in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, and Approval of Plan of Allocation; and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to the PSLRA ("Barz Decl."), submitted herewith as Ex. 4, ¶¶5-6.

4886-0255-1026.v1

Flom LLP; and Sidley Austin LLP, all of which have reputations for being leading defense firms in complex civil cases. In the face of this formidable opposition, Co-Lead Counsel developed their case so as to persuade Defendants to settle the Action on terms favorable to the Settlement Class. ¶96. Co-Lead Counsel's skill, expertise, and excellent advocacy in representing the Settlement Class is reflected in this favorable result. *See* ¶¶94-96; Barz Decl., ¶¶5-7, 13-19.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958.[3] Co-Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. Unlike counsel for defendants, who are often paid an hourly rate and paid for their expenses on a regular (*e.g.*, monthly) basis, regardless of success, Co-Lead Counsel had no such guarantee of payment, had to wait for any payment while the case was prosecuted for several years, and had to incur unpaid expenses while the case was ongoing. *See* ¶¶97-99; Barz Decl., ¶¶15-16. While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case.

Co-Lead Counsel had to build this case from their investigation without the benefit of any SEC or other government findings or settlements. Even though Lead Plaintiffs successfully opposed Defendants' motion to dismiss, they still faced obstacles. Assuming Plaintiffs were successful in certifying a class and able to overcome summary judgment after costly, additional discovery efforts,

---

[3]     *See also Schulte*, 805 F. Supp. 2d at 598 ("All contingent fee class action cases involve some degree of risk for plaintiffs' counsel."); *Taubenfeld*, 415 F.3d at 600 (stating courts should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"); *Hospira*, 2014 WL 12767763, at *1 (finding "the contingent nature of the Action favors a fee award of 30%").

- 9 -

they still would have faced risks in proving falsity, materiality, scienter, and loss causation before a jury. *See* Settlement Memorandum §IV.A.3; ¶¶66-76. Moreover, even apart from proving liability, proving damages in securities cases is complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. Here, the damages assessments of the Parties' respective experts would be heavily disputed, and the determination of the amount of damages, if any, suffered by the Settlement Class at trial would have turned into a "battle of the experts." §IV.A.3.b.; ¶¶77-79.

There are numerous examples where plaintiffs' counsel in contingent cases such as this, after the expenditure of significant time and expenses, have received no compensation. Securities cases have been dismissed at the pleading stage, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial conducted by Labaton); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by "new 'transactional' rule" of the Supreme Court); *see also* ¶¶100-101. Quite simply, "Defendants prevail outright in many securities suits." *Silverman*, 739 F.3d at 958.

Because the fee in this matter was entirely contingent, the only certainty was that Co-Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. The contingent nature of counsel's representation here strongly favors approval of the requested fee. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's reduced fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

- 10 -

4886-0255-1026.v1

**4.     The Stakes of the Action Favor a 29% Fee Award**

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598. In this high stakes litigation, Co-Lead Counsel successfully obtained a favorable recovery even before the completion of fact discovery. ¶¶6-7, 51, 79. A settlement now is more beneficial to the Settlement Class than waiting several more years to obtain a recovery, not only because of the time value of money but also because the increased expenses of continued litigation could have reduced the amount of any available insurance to fund a recovery. As the litigation advances, the risks can also increase. And, even if Plaintiffs prevailed at trial, Defendants would have the opportunity to appeal any judgment obtained, possibly delaying a favorable resolution for years. *See supra*, §II.B.2-3. Co-Lead Counsel undertook this case fully prepared to litigate against these obstacles.

**5.     The Reaction of the Settlement Class Supports the Requested Award**

Pursuant to the Court's September 19, 2024 Notice Order (ECF No. 184), more than 31,600 copies of the Notice have been disseminated to potential Settlement Class Members and nominees. *See* Declaration of Luiggy Segura Regarding: (A) Dissemination of the Notice Packet; (B) Publication/Transmission of the Summary Notice; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, dated November 6, 2024, ¶8 ("Mailing Decl."), Ex. 6. Settlement Class Members were informed in the Notice that Co-Lead Counsel would apply for attorneys' fees not to exceed 29% of the Settlement Amount, litigation expenses in an amount not to exceed $1 million, and PSLRA awards for Plaintiffs. Ex. 6 - A. Settlement Class Members were also advised of their right to object to Co-Lead Counsel's fee and expense request

- 11 -

and the procedure for doing so. *Id*. While the deadline to file objections – November 21, 2024 – has not yet passed, to date, no objection to any aspect of the Settlement, including the fee and expense request, has been received. Co-Lead Counsel will address any objections received in their reply brief to be filed on December 5, 2024.

### 6. Plaintiffs Approved the 29% Fee Request

Plaintiffs, who worked with counsel throughout the Action, have approved the 29% fee request. *See* Ex. 1 (CPTPF Plans), ¶6; Ex. 2 (BRS), ¶8; Ex. 3 (Dearborn), ¶8. Unlike consumer and other class action cases where lead plaintiffs may have little or no stake in the litigation, securities fraud cases have unique procedures for appointing as lead plaintiff the movant(s) with the largest financial interest, which serve to protect class members. *See Silverman*, 739 F.3d at 959 (stating it is "a premise of several rules in the [PSLRA]" that investors with a large stake in the settlement fund, in "looking out for themselves, help to protect the interests of class members with smaller stakes"). That Plaintiffs, three sophisticated institutional investors, approved the fee request weighs in favor of its reasonableness. *See Groupon*, 2022 WL 17256417, at *2 ("The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who oversaw the prosecution and resolution of the Action.").

## III. CO-LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *Synthroid*, 264 F.3d at 722; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized

- 12 -

4886-0255-1026.v1

research; court reporters; travel expense; copy, phone and facsimile expenses and mediation."

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015).[4]

As set forth in the accompanying firm declarations, Co-Lead Counsel are requesting payment of expenses in the total amount of $888,947.35. As described, the expenses were reasonably incurred in the prosecution of this Action and are of the type regularly incurred in complex commercial litigation like this. *See* Declaration of Frank A. Richter Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. 7; Declaration of Christine M. Fox Filed on Behalf of Labaton Keller Sucharow LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. 8; *see also* Ex. 9 (Summary Table).[5]

Thus, Co-Lead Counsel respectfully request payment of these reasonable litigation expenses from the Settlement Fund.

## IV. AWARDS TO PLAINTIFFS PURSUANT TO THE PSLRA

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §78u-4(a)(4); 15 U.S.C.

---

[4] Although at least one court addressing a securities class action has excluded electronic legal research expenses from a fee and expense request (*Silverman*, 2012 WL 1597388, at *4) more current cases have continued to approve electronic legal research expenses. *See Wong v. Accretive Health, Inc.*, 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) (awarding legal research expenses); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, ECF No. 130 at ¶4 (N.D. Ill. July 22, 2015) (awarding legal research expenses); *Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030, ECF No. 158 at ¶4 (N.D. Ill. Aug. 5, 2020) (awarding expenses); *GoHealth*, 2024 WL 3647088, at *1 (awarding expenses). Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market. *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market reimburses lawyers' LEXIS and WESTLAW expenses."). In this case, legal research expenses amount to $63,961.91 of the total $888,947.35 in expenses for which an award is being sought.

[5] In addition to expenses already incurred, Labaton has reserved up to $3,000 for estimated travel expenses for the final approval hearing.

§77z-1(a)(4). Pursuant to these provisions, courts in this District have granted awards, for example, reflecting time spent on the litigation based on estimated rates. *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 4950173 (N.D. Ill. July 8, 2014) (requesting award for estimated employee time and estimated appropriate rate); *Hospira*, 2014 WL 12767763, at *1 (St. Eve., J.) (awarding more than $25,000 to four institutional representatives); *see also Pierrelouis v. Gogo Inc.*, 2022 WL 7950362, at *2 (N.D. Ill. Oct. 13, 2022) (awarding $20,000 to single lead plaintiff).[6]

Here, Plaintiffs have submitted accompanying declarations seeking awards of $12,500, $6,000, and $2,805 for CPTPF Plans, BRS, and Dearborn, respectively, for the time they dedicated to pursuing the claims and, as to the CPTPF Plans, for expenses paid in connection with the Action. *See* Ex. 1 (CPTPF Plans), ¶¶7-9; Ex. 2 (BRS), ¶10; Ex. 3 (Dearborn), ¶10. The requests of $21,305, combined, are well below the $40,000 maximum combined award amount set forth in the Notice, below amounts awarded in other cases in this District, and there has been no objection to date.

## V. CONCLUSION

For all the reasons stated herein, and in the accompanying Settlement Memorandum and declarations, Co-Lead Counsel submit that the Court should approve the fee and expense application. Co-Lead Counsel also submit that Plaintiffs' request for awards totaling $21,305 are reasonable and should be awarded pursuant to the PSLRA. A proposed order will be submitted with Plaintiffs' reply papers after the deadline for objecting has passed.

---

[6] Also pursuant to these provisions, courts in this District have granted awards reflecting time spent on the litigation that could have been spent on other matters without consideration of an hourly rate or the exact time spent. *See, e.g.*, *In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, ECF Nos. 174-5, ¶7 (N.D. Ill. Feb. 19, 2018) (requesting PSLRA award for time devoted to the "representation of the Settlement Class" that could have otherwise been dedicated to tennis business); *In re Akorn, Inc. Sec. Litig.*, 2018 WL 2688877, at *4-*5 (N.D. Ill. June 5, 2018) (awarding $10,000 each to three class representatives, $30,000 total).

- 14 -

4886-0255-1026.v1

DATED:  November 7, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)


*/s/ James E. Barz*
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

*Counsel for Central Pennsylvania Teamsters
Pension Fund – Defined Benefit Plan and Central
Pennsylvania Teamsters Pension Fund –
Retirement Income Plan 1987 and Co-Lead
Counsel for the Class*

DATED:  November 7, 2024

LABATON KELLER SUCHAROW LLP
CAROL C. VILLEGAS (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
JAMES M. FEE (*pro hac vice*)


*/s/ Christine M. Fox*
CHRISTINE M. FOX

140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
cfox@labaton.com
jfee@labaton.com
cvillegas@labaton.com

*Counsel for Boston Retirement System and City of
Dearborn Police & Fire Revised Retirement
System, and Co-Lead Counsel for the Class*

- 15 -

4886-0255-1026.v1

LAW OFFICE OF RACINE & ASSOCIATES
MARIE T. RACINE
1001 Woodward Avenue, Suite 1100
Detroit, MI  48226
Telephone:  313/961-8930
313/961-8945 (fax)
mracine@racinelaw.us

*Additional Counsel for City of Dearborn Police &
Fire Revised Retirement System*

- 16 -

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on November 7, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

*/s/ James E. Barz*
JAMES E. BARZ