# EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD T. ALLISON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OAK STREET HEALTH, INC., et al., <br><br> Defendants. | Case No. 1:22-cv-00149 <br><br> <u>CLASS ACTION</u> <br><br> Judge Jeffrey I. Cummings |

**DECLARATION OF JAMES E. BARZ IN SUPPORT OF: (1) LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION; AND (2) CO-LEAD COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
AWARDS TO PLAINTIFFS PURSUANT TO THE PSLRA**

4873-9562-6486.v1

I, JAMES E. BARZ, declare as follows:

1.      I am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  Robbins Geller and Labaton Keller Sucharow LLP ("Labaton") serve as Court-approved Co-Lead Counsel for the Court-appointed Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Boston Retirement System (collectively, "Lead Plaintiffs"), and the proposed Settlement Class in the Action.[1]  I have been actively involved in prosecuting and resolving the Action, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my participation in this Action and my supervision of, or communications with, other lawyers and staff assigned to this matter.  This declaration was prepared with the assistance of other lawyers at Robbins Geller, reviewed by me before signing, and the information contained herein is believed to be accurate based on what I know and what I have been told by others.

2.      I submit this declaration in support of: (1) Lead Plaintiffs' motion for approval of the $60,000,000 all-cash Settlement and the proposed Plan of Allocation; and (2) Co-Lead Counsel's motion for an award of attorneys' fees and expenses.  Both motions have the support of Plaintiffs, as set forth in their concurrently filed declarations.

## I.      THE SETTLEMENT

3.      The relevant facts and allegations are set forth in Lead Plaintiffs': (i) Complaint for Violations of the Federal Securities Laws (ECF 40) (the "Complaint"); (ii) concurrently filed Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"); and (iii) concurrently filed Memorandum of Points and Authorities in Support of Co-Lead Counsel's

---

[1]      Capitalized terms used herein that are not otherwise defined shall have the meanings as provided in the Stipulation and Agreement of Settlement executed on August 13, 2024 (ECF 174).

- 1 -

Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to the PSLRA ("Fee Memorandum").

4. Securities class actions are complex cases that are challenging to prevail upon and, given the stakes involved, result in defendants hiring some of the largest law firms and vigorously disputing liability and damages. This case was no exception. The legal risks to continued litigation are discussed in the Settlement Memorandum and Fee Memorandum and include Defendants' challenges to: (i) Plaintiffs' ability to prove the elements of their claims, including falsity, materiality, and scienter; and (ii) Plaintiffs' ability to establish loss causation and damages for the fraud claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and to refute Defendants' negative causation defense for the non-fraud claims brought pursuant to the Securities Act of 1933 ("Securities Act").

5. The Settlement was reached in principle on May 16, 2024. Prior to that date, Co-Lead Counsel and Plaintiffs had engaged in litigation and negotiations that allowed them to be informed about the benefits of settlement and risks of ongoing litigation. For example:

(a) Co-Lead Counsel conducted a comprehensive investigation into the facts, circumstances, and potential claims and defenses that included analysis of SEC filings, media and analyst reports, press releases, shareholder communications, and other publicly-available information; interviews with former Oak Street employees; consultation with experts; and research and analysis of relevant case law and authorities;

(b) Co-Lead Counsel used the materials obtained from their investigation in preparing the 106-page Complaint, and then prepared an extensive brief (ECF 63) in opposition to Defendants' motion to dismiss, which was denied in large part;

(c) Co-Lead Counsel issued document requests on all Defendants and 15 third parties, and served interrogatories on Defendants Oak Street, Pykosz, and Cook;

- 2 -

4873-9562-6486.v1

(d)     Co-Lead Counsel negotiated discovery and privilege disputes in more than 30 meet and confers, and obtained and analyzed more than 3.5 million pages of documents from Defendants and third parties;

(e)     Each Plaintiff, working with Co-Lead Counsel, responded to interrogatories, produced documents, submitted declarations in support of class certification, and prepared for and sat for a deposition;

(f)     Co-Lead Counsel retained market efficiency and damages expert Chad Coffman (CFA), the President of Peregrine Economics, who provided an expert market efficiency declaration and a rebuttal expert market efficiency declaration that Lead Plaintiffs submitted in support of their motion for class certification, which was fully briefed;

(g)     Co-Lead Counsel retained Professor Joshua Mitts (Ph.D.), the David J. Greenwald Professor of Law at Columbia University, to rebut Defendants' "tracing" arguments and expert report, and Lead Plaintiffs submitted Professor Mitts' expert declaration in support of their reply in support of class certification;

(h)     Co-Lead Counsel assisted in the preparation for and defended the deposition of Mr. Coffman and the three Plaintiff representatives, and Co-Lead Counsel participated in depositions, noticed by Defendants, of Lead Plaintiffs' two investment advisors and two witnesses that were referenced in the Complaint;

(i)     Co-Lead Counsel prepared for, noticed, and took 10 fact depositions and one expert deposition, and prepared for many other depositions that were not taken because the case settled;

(j)     Co-Lead Counsel prepared for mediation, including preparing an extensive mediation brief that detailed Lead Plaintiffs' positions on liability and damages, and reviewing Defendants' brief outlining their positions;

- 3 -

4873-9562-6486.v1

(k)     Co-Lead Counsel participated in (and Plaintiffs participated in or received updates regarding) a mediation before mediator Robert Meyer of JAMS, and Co-Lead Counsel and Plaintiffs continued to engage in extensive settlement negotiations with Defendants for roughly two months after the mediation; and

(l)     Co-Lead Counsel and Plaintiffs communicated before and during the settlement negotiations and exchange of information.

6.     The litigation and settlement negotiations were hard-fought, as reflected by the extensive motion to dismiss and class certification briefings, extensive document discovery and depositions, failed mediation before an experienced mediator, and continued settlement negotiations for two months after the mediation.

7.     The $60,000,000 all-cash Settlement is a very favorable result considering the benefit to the Settlement Class and risks posed by continuing litigation.  As set forth more fully in the Settlement Memorandum, the Settlement was reached after more than two years of litigation, briefing, and negotiations; the Settlement was the result of an arm's-length settlement process between experienced parties and counsel, overseen by Robert Meyer who has substantial experience conducting mediations; and the Settlement provides immediate resolution and a guaranteed recovery without the risks, uncertainties, and delay of continued litigation.  For the reasons set forth in the Settlement Memorandum, Co-Lead Counsel believe that the Settlement is fair, reasonable, and in the best interest of the Settlement Class.

## II.     THE PLAN OF ALLOCATION

8.     Upon approval by the Court, the Plan of Allocation governs the method by which the Net Settlement Fund will be distributed on a *pro rata* basis to Settlement Class Members who submit valid, timely Proof of Claim and Release forms.  The proposed Plan of Allocation is set forth in the Notice.

- 4 -

4873-9562-6486.v1

9. The proposed Plan of Allocation was developed in consultation with Mr. Coffman, a damages expert, reflects the statutory schemes and damages theories for the claims alleged, and is similar to plans of allocation used in other settlements resolving Securities Act and Exchange Act claims.

10. Thus, the Plan of Allocation is designed to fairly and reasonably allocate the Net Settlement Fund among eligible Settlement Class Members. For the reasons set forth in the Settlement Memorandum, Co-Lead Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved.

## III. THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

11. Co-Lead Counsel respectfully request that the Court award 29% of the $60,000,000 Settlement Amount for attorneys' fees. For the reasons set forth in the Fee Memorandum, Co-Lead Counsel believe such a fee is reasonable and appropriate. The fee request is also consistent with fees awarded in similar cases in this District as set forth in the Fee Memorandum. Co-Lead Counsel further request an award of $888,947.35 in litigation expenses and charges in connection with the prosecution of this Action. Arguments and authorities supporting the requested fees and expenses are set forth in more detail in the Fee Memorandum.

12. The time and resources in the research, investigation, and prosecution of this Action are set forth in the concurrently submitted declarations on behalf of Robbins Geller and Labaton. Included in those declarations are summaries of the time and expenses incurred in this Action.

13. As set forth in the Fee Memorandum, Co-Lead Counsel worked diligently to obtain a favorable result for the Settlement Class. The recovery obtained for the Settlement Class is the direct result of the significant efforts of attorneys who possess substantial experience in the prosecution of complex securities class actions. *See* www.rgrdlaw.com; www.labaton.com.

14.     On the other side, Defendants were represented by experienced lawyers from large and well-known defense firms: Paul, Weiss, Rifkind, Wharton & Garrison LLP; Skadden, Arps, Slate, Meagher & Flom LLP; and Sidley Austin LLP.  The ability of Co-Lead Counsel to obtain the Settlement in the face of such opposition confirms the quality of Co-Lead Counsel's representation.

15.     From the outset, Co-Lead Counsel understood that their attorneys and paraprofessionals would have to devote a significant amount of time and effort to the prosecution of this case.  The time spent by Co-Lead Counsel on this case was at the expense of the time that they could have devoted to other matters.  Co-Lead Counsel undertook this case solely on a contingent fee basis, assuming a risk that the case would yield no recovery and leave them uncompensated.  The only way Co-Lead Counsel would be compensated was to achieve a successful result.

16.     Unlike counsel for Defendants, who are generally paid an hourly rate and paid for their time and expenses on a monthly or other regular basis, Co-Lead Counsel have not been compensated for any time or expenses since this case was initiated.  To date, Co-Lead Counsel have litigated and negotiated the Action without any payment, during which time they, *inter alia*, conducted a thorough investigation, filed the Complaint, consulted with experts, opposed Defendants' motions to dismiss, conducted extensive document discovery, took, participated in, or defended 19 depositions, briefed a motion for class certification supported by expert declarations, and engaged in extensive settlement negotiations, including an in-person mediation.

17.     Co-Lead Counsel's substantial experience and advocacy was required in presenting the strengths of this case in pleadings, briefing, and at the mediation in an effort to achieve a favorable settlement and convince Defendants, their insurers, defense counsel, and the mediator of the risks Defendants faced from not settling and proceeding to trial.  To that end, Co-Lead Counsel assembled an experienced litigation team, as set forth in the firms' respective resumes.

4873-9562-6486.v1

18.     The undersigned was the lead attorney assigned to this matter from Robbins Geller and is an experienced trial attorney, former Assistant United States Attorney, registered CPA, adjunct professor of law at Northwestern University Pritzker School of Law for over fifteen years (teaching courses on trial advocacy and class action litigation), and had previously been a partner in one of the largest national defense firms that, among other things, defended securities class action cases. Since joining Robbins Geller in 2011, the undersigned has been lead trial counsel in many securities class actions that resulted in substantial and favorable recoveries, including those that proceeded to within days or weeks of trial prior to settling, and including a settlement that is reportedly the ninth largest securities class action settlement in history. If the Action had not settled, Co-Lead Counsel were fully prepared to litigate this case through the complex stages of summary judgment, trial, and appeal. Co-Lead Counsel only recommended settlement after extensive efforts to obtain the best possible result for the Settlement Class.

19.     As detailed in the Fee Memorandum, in light of the favorable recovery obtained, the complexity of the issues presented, the effort and skill exhibited by Co-Lead Counsel, the contingent nature of Co-Lead Counsel's representation, the fee awards in comparable class actions, and Plaintiffs' endorsement of the requested fee, Co-Lead Counsel believe the requested fee and litigation expense awards are reasonable and appropriate, particularly when considering the policy of incentivizing counsel to take on and diligently pursue meritorious securities class actions.

## IV.     CONCLUSION

20.     In view of the certain and favorable recovery to the Settlement Class and the challenges presented by the claims against the Defendants and facts of this case, as described above and in the accompanying Settlement Memorandum, Co-Lead Counsel submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate. In view of the recovery achieved and the

- 7 -

quality of work performed, among other things, as described above and in the accompanying Fee Memorandum, Co-Lead Counsel submit that the fee and expense application should be approved.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of November, 2024.

/s/ James E. Barz
JAMES E. BARZ

4873-9562-6486.v1